IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NIC SALOMON, § <br> § <br> Plaintiff, § <br> v. § <br> § <br> KROENKE SPORTS & § <br> ENTERTAINMENT, LLC, OUTDOOR § <br> CHANNEL HOLDINGS, INC., and § <br> PACIFIC NORTHERN CAPITAL, LLC, § <br> § <br> Defendants. | CIVIL ACTION NO. 3:15-CV-0666-M |

## MEMORANDUM OPINION AND ORDER

Before the Court are separate Motions to Dismiss Plaintiff Nic Salomon's Amended Complaint, filed by (1) Defendant Pacific Northern Capital, LLC ("PNC") [Docket Entry #33] and (2) Defendants Kroenke Sports & Entertainment, LLC ("KSE") and Outdoor Channel Holdings, Inc. ("Outdoor") [Docket Entry #35]. For the reasons stated, Defendants' Motions are GRANTED, and Plaintiff's claims are DISMISSED.

### Background

On September 29, 2015, the Court dismissed Plaintiff Nic Salomon's claims against Outdoor and KSE on the ground that Plaintiff's Original Complaint failed to allege facts sufficient to establish that Plaintiff has prudential standing or is the real party in interest to bring the claims asserted in this lawsuit. *See* Mem. Opn. [Docket Entry #30]. Plaintiff, with the Court's permission, subsequently filed an Amended Complaint. Defendants now challenge the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that

Plaintiff failed to cure the deficiencies that resulted in the earlier dismissal of his claims against Outdoor and KSE and the Amended Complaint fails to state a claim for relief.

In his Amended Complaint, Plaintiff alleges that he worked as an executive for two aerial camera businesses owned by Outdoor—known as SkyCam, LLC and CableCam, LLC—from July 2006 to May 2014. *See* Pl. Am. Compl. [Docket Entry #31] at 4, ¶10. Plaintiff alleges that Outdoor agreed in principle to sell the aerial camera businesses to a purchasing entity (the "Purchaser") to be formed by Plaintiff and his investor group, PNC. *See id.* at 3, ¶8. On February 26, 2013, Plaintiff and PNC, on the one hand, and Outdoor, on the other, executed a "Term Sheet" as evidence of their agreement. *Id.* at 7, ¶22; *see also id.*, Ex. A. According to Plaintiff, he and PNC were the intended owners of the purchasing entity and signed the Term Sheet "for the Purchaser." *See id.* at 7, ¶22. Plaintiff alleges that the Term Sheet included a legally binding "Exclusivity" provision, which obligated Outdoor, until April 15, 2013, (1) to deal exclusively with Plaintiff and PNC regarding the potential sale of the aerial camera businesses; (2) not to entertain any competing offers to purchase the aerial camera businesses; and (3) not to disclose to any third party the details of the exclusive negotiations. *See id.* at 3, ¶8; *see also id.* at 8, ¶25.

Plaintiff further alleges that, during the period covered by the Exclusivity provision, Outdoor negotiated a merger with KSE, which resulted in KSE acquiring the entirety of Outdoor, including the aerial camera businesses. *See id.* at 10, ¶32; 11, ¶36. Plaintiff alleges that Outdoor disclosed to KSE the existence of the Term Sheet, as well as the identities of Plaintiff and PNC, and that Outdoor and PNC signed an Amendment to the Term Sheet that purportedly gave KSE "veto rights" regarding the sale of the aerial camera businesses. *Id.* at 10-11, ¶¶33-34; *see also id.* at Ex. B. Plaintiff alleges that KSE interfered with his planned

business relationships and prevented Outdoor from consummating the sale of the aerial camera businesses as described in the Term Sheet. *See id.*, ¶¶33-35, and 37.

Based on this conduct, Plaintiff filed this civil action on February 27, 2015 against KSE, Outdoor, and PNC, asserting claims for breach of contract, tortious interference, breach of fiduciary duty, and unjust enrichment. On July 16, 2015, the Court granted KSE and Outdoor's joint Motion to Dismiss, but allowed Plaintiff leave to amend his pleadings. *See* Order [Docket Entry #26]. Thereafter, Plaintiff filed a Motion for Clarification, in which he requested the Court more particularly identify the deficiencies it found in his Original Complaint. The Court granted Plaintiff's Motion for Clarification and issued a Memorandum Opinion and Order explaining that the Original Complaint failed to allege sufficient facts to establish that Plaintiff has prudential standing or is the real party in interest. Although Plaintiff asserted in response to the joint Motion that he was acting as a promoter of the Purchaser when he signed the Term Sheet, his Original Complaint failed to allege sufficient facts to establish that he was acting as the Purchaser's promoter in his negotiations with Outdoor.

Plaintiff has filed his Amended Complaint asserting claims against Outdoor for breach of contract (Count 1) and against KSE for tortious interference with an existing contract and with prospective relations (Counts 2 and 3). *Id.* at 12-14, ¶¶ 38-41, 42-45, 46-48. Plaintiff also asserts a claim against PNC for breach of fiduciary duty (Count 5), and a claim against Outdoor and KSE for aiding and abetting PNC's alleged breach of fiduciary duty (Count 4). *Id.* at 14-16, ¶¶49-52, 53-56. Plaintiff further asserts claims against all Defendants for unjust enrichment and civil conspiracy (Count 6 and 7). *Id.* 15-17, ¶¶57-59, 60-64. Outdoor and KSE have filed a joint Motion to Dismiss directed to the Amended

Complaint on grounds that Plaintiff (1) lacks Article III standing and prudential standing, (2) is not the real party in interest, and (3) fails to plead sufficient facts to state a claim for relief. PNC has filed a separate Motion to dismiss Plaintiff's claims against it on substantially similar grounds. In response, Plaintiff argues that he has constitutional standing to bring his claims because he has suffered an injury that is particularized, traceable to Defendants, and redressable by a favorable judicial decision. He further contends that he has prudential standing and is the real party in interest because he signed the Term Sheet as a promoter. Plaintiff also disputes that he has failed to state a claim for relief.

The issues have been fully briefed, and the Motions are ripe for determination.

## Legal Standards

The threshold issue presented by Defendants' Motions to dismiss is whether Plaintiff has standing to sue and/or is the real party in interest. *See Ramming v. United States*, 261 F.3d 156, 161 (5th Cir. 2001). Standing is a constitutional requirement that inquires whether the plaintiff is entitled to have the court decide the merits of the dispute. *Allen v. Wright*, 468 U.S. 737, 750–51 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Constitutional standing exists where three requirements are met: (1) the plaintiff has suffered an injury in fact, that is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). There are also prudential standing limitations, including the requirement that a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties. *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Warth*, 422 U.S. at 499. The "real party in interest" rule is a prudential limitation that requires the party who brings the action to be "the party who, by the substantive law, has the right sought to be enforced." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 257 (5th Cir. 1980); *see also Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, 2013 WL 3834626, at *2 (N.D. Tex. July 25, 2013) (Fitzwater, J.) ("[The Rule 17(a) real party in interest] requirement is in essence a codification of the prudential standing requirement that a litigant cannot sue in federal court to enforce the rights of third parties.").

Defendants challenge Plaintiff's lack of constitutional standing under Fed. R. Civ. P. 12(b)(1). In considering a Rule 12(b)(1) motion, the Court may evaluate: (1) the complaint alone, (2) the complaint supplemented by undisputed fact evidence in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998). "A Rule 12(b)(1) motion that challenges standing based on the pleadings is considered a facial attack, and the court reviews only the sufficiency of the allegations in the pleading, presuming them to be true." *Crowder v. Village of Kaufman, Ltd.*, 2010 WL 2710601, at *1 (N.D. Tex. July 7, 2010) (Lynn, J.).

The proper procedural vehicle for challenging Plaintiff's lack of prudential standing is a motion to dismiss brought under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). To defeat a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

5

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact) [.]" *Twombly*, 550 U.S. at 555 (internal citations omitted). However, the Court is not bound to accept legal conclusions couched as factual allegations or conclusory allegations which are contradicted by documents referred to in the complaint. *Twombly*, 550 U.S. at 555; *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974). Documents attached to a complaint are considered a part of the plaintiff's pleading. Fed. R. Civ. P. 10(c); *see also General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 398 n.8 (5th Cir. 2005).

## Analysis

### Injury in Fact

Defendants first argue that Plaintiff lacks constitutional standing because he has not alleged a cognizable injury in fact. *See* PNC Br. [Docket Entry #33] at 5-6; KSE/Outdoor Br. [Docket Entry #35] at 7-8. Plaintiff responds that he suffered an injury in the form of a "lost opportunity" to acquire the aerial camera businesses. Pl. Resp. to KSE/Outdoor Mot. at 6. As the Term Sheet attached to Plaintiff's Amended Complaint makes clear, however, the opportunity to acquire the aerial camera businesses belonged to the Purchaser, rather than Plaintiff. Pl. Am. Compl., Ex. A. The Amended Complaint alleges that "the Purchaser was

never formed." *Id.* at 11, ¶37. Defendants further point out that Plaintiff does not allege that he took any action to create the Purchaser or to consummate the sale under the Term Sheet, such as drafting corporate formation documents, obtaining financing to fund the acquisition, or negotiating transaction documents. Therefore, Defendants argue, Plaintiff's alleged lost opportunity is too speculative to confer Article III standing.

Plaintiff responds that he need not show that it was legally certain that the Purchaser would acquire the aerial camera businesses in order to establish that he suffered a cognizable injury in fact in the form of a lost opportunity. Rather, Plaintiff contends, he need only show a "reasonable probability" that Outdoor and the Purchaser would have entered into a contractual relationship for the sale of the aerial camera businesses. *See* Pl. Resp. to KSE/Outdoor Mot. at 7. Plaintiff asserts that the Term Sheet demonstrates Outdoor and the Purchaser made substantial progress towards consummating the transaction because it establishes a purchase price, identifies sources of funding, addresses the calculation of royalties, and sets a closing date. *Id.* Plaintiff thus argues that there was a reasonable probability that Outdoor would have sold the aerial camera businesses to the Purchaser.

The Court concludes that the Amended Complaint fails to allege sufficient facts to show that Plaintiff suffered a cognizable injury in fact sufficient to establish that he has standing to bring the claims asserted. Plaintiff's argument that he need only show a "reasonable probability" that Outdoor and the Purchaser would have entered into a contractual relationship applies only to his claim against KSE for tortious interference with prospective relations. Plaintiff does not advance any other argument to show he has standing to pursue any of his other claims.

The Amended Complaint further fails to demonstrate a "reasonable probability" that the Purchaser and Outdoor would have entered into a contractual relationship. The only allegation that touches on the probability that Outdoor and the Purchaser would have entered into a contractual relationship for the sale of the aerial camera businesses is the allegation that Outdoor, PNC, and Plaintiff executed the Term Sheet. The Term Sheet expressly provides that it does not constitute a binding contractual commitment with respect to any transaction. Pl. Amend. Compl., Ex. A at 3. It unambiguously states that a legally binding obligation with respect to the sale of the aerial camera businesses will arise "only upon execution and delivery of definitive documents by Outdoor Channel and Purchaser," and that "until definitive agreements are entered into . . . no party will be under any legal obligation with respect to this Term Sheet, and no withdrawal from or termination of negotiations for the transaction contemplated . . . shall . . . give any party a cause of action." *Id.* Plaintiff does not allege that he made any effort to form the Purchaser or negotiate the definitive documents. The mere fact that the parties executed a non-binding Term Sheet does not establish a reasonable probability that Outdoor and the Purchaser would have entered into a contractual relationship sufficient to establish that Plaintiff suffered a loss of the opportunity to acquire the aerial camera businesses.

The Court therefore concludes that Plaintiff lacks standing to assert his claims against any of the Defendants, because the Amended Complaint fails to allege a cognizable injury in fact. *See Lujan*, 504 U.S. at 560–61.

Prudential Standing/Real Party in Interest

KSE and Outdoor also argue that Plaintiff lacks prudential standing to bring his claims to enforce any provision of the Term Sheet, and is not a real party in interest, because

he is attempting to assert the Purchaser's rights, and not his own. KSE/Outdoor Br. at 8-10. Plaintiff acknowledges that his claims against Outdoor and KSE arise principally under the Term Sheet and the Amendment. *See* Resp. to KSE/Outdoor Mot. [Docket Entry #38] at 2; *see also id.* at 10 ("The Exclusivity Provision [of the Term Sheet] forms the basis of Salomon's breach-of-contract and tortious-interference-with-an-existing-contract claim."). Plaintiff contends that he has standing to sue and is the real party in interest because he signed the Term Sheet in his capacity as a promoter of the Purchaser. Pl. Resp. to KSE/Outdoor Mot. at 10.

Under Texas law, a promoter can be personally liable for entering into a contract for an unformed corporation. *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 423 (Tex. App.—Dallas 2012, no pet.); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 897 (Tex. App.—Fort Worth 1997, pet. denied). Further, because any enforceable agreement is mutual and binding on both parties, a promoter who is liable under an agreement may also make a claim under such a contract. *Fish*, 948 S.W.2d at 897.

The Amended Complaint alleges that Plaintiff signed the Term Sheet in his capacity as a promoter for the unformed Purchaser. *See* Pl. Amend. Compl. at 12, ¶39. Specifically, Plaintiff alleges:

> PNC and Plaintiff were promoters of the Purchaser and signed the Term Sheet on its behalf. The Purchaser, however, had not been formed when the Term Sheet was signed and was never formed. Accordingly, PNC and Plaintiff are individually parties and entitled to enforce the Term Sheet's Exclusivity Provision.

*Id.* Plaintiff contends that the only facts necessary to establish that he has standing and is the real party in interest are that he signed the Term Sheet on behalf of an unformed entity. Pl. Resp. to KSE/Outdoor Mot. at 10. Contrary to this assertion, Plaintiff also must allege facts

9

sufficient to show that the agreement he seeks to enforce is mutual and binding on both parties. *See Fish*, 948 S.W.2d at 897.

The Term Sheet expressly provides that, with one exception, all of the parties' promises are non-binding. *See* Pl. Amend. Compl., Ex. A at 3. The final paragraph of the Term Sheet states:

> *Except for the provisions of "Exclusivity" above, which is a binding legal agreement upon the parties, this Term Sheet is a statement of mutual intention; it is not intended to be legally binding, and does not constitute a binding contractual commitment with respect to any transaction.* Without limiting the foregoing, the failure of Outdoor Channel and Purchaser to reach agreement on the terms and conditions of definitive agreements in accordance with the Term Sheet shall not be construed as a breach of this Term Sheet by any party hereto. A legally binding obligation with respect to the investment contemplated herby will arise only upon execution and delivery of definitive documents by Outdoor Channel and Purchaser, subject to the terms and conditions set forth therein. Accordingly, until definitive agreements are entered into, except as expressly set forth above, no party will be under any legal obligation with respect to this Term Sheet, and no withdrawal from or termination of negotiations for the transaction contemplated by this term sheet prior to signing definitive agreements, for whatever reason, or for no reason, shall be determined to be in bad faith and any such withdrawal or termination shall not give any party a cause of action against the other party.

*Id.* (emphasis added). This unambiguous language establishes that, with the exception of the Exclusivity provision, the Term Sheet is not a binding agreement.

Plaintiff tacitly concedes that the Term Sheet is not binding, but nonetheless argues that the Exclusivity provision, by itself, is a valid and enforceable bilateral contract. Pl. Resp. to KSE/Outdoor Mot. at 13-14. The Exclusivity provision states, in its entirety:

> A. In consideration of Purchaser continuing to spend time and incur professional fees and other expenses related to the

acquisition, each of Outdoor Channel and [SkyCam, LLC and CableCam, LLC] agree that until April 15, 2013, that they and any of their directors, officers, affiliates and representatives will not, directly or indirectly:

(i) Solicit, facilitate, encourage or accept any offers to acquire any equity or debt interest in Skycam or Cablecam or the whole or any material part of the assets of the business of Skycam or Cablecam, nor engage or procure any person to do so on their behalf;

(ii) Negotiate or correspond with third parties in relation to existing or unsolicited offers to acquire the equity or debt interest or any part of the business of Skycam or Cablecam, other than to advise them that exclusive discussions are being pursued with another party (but in no event shall Purchaser's identity be disclosed), nor engage or procure any person to do so on its behalf;

(iii) Sell or agree to sell any equity or debt interest (including any new issue of debt or equity) in any part of [SkyCam, LLC and CableCam, LLC] to any other party than Purchaser or its nominee, and Outdoor Channel and its subsidiaries will procure that their respective directors, officers, affiliates, employees, advisors and representatives will also act accordingly.

B. Outdoor Channel and its subsidiaries jointly and severally undertake that they will forthwith cease any negotiations, discussions, or correspondence which they are having, whether directly or indirectly, in relation to the potential acquisition of an equity or debt interest in [SkyCam, LLC and CableCam, LLC] by any other party than Purchaser or its nominee and that it will advise any such parties that exclusive discussions are being pursued with another party (but in no event shall Purchaser's identity be disclosed).

C. Each of these undertakings in this Exclusivity section shall be read and construed independently of all other undertakings and, if any undertaking is held to be invalid or unenforceable, the remaining undertakings shall continue to apply to the extent that they shall not also be found to be invalid.

       D. The parties agree that Purchaser shall be entitled to equitable relief, including injunction [sic] (without the necessity of posting bond) and specific performance, in the event of any breach of the provisions of this agreement, in additional to all other remedies available at law or in equity, including monetary damages, both actual and consequential.

*Id.*, Ex. A at 2.

Although the Term Sheet states that the Exclusivity provision is "a binding legal agreement upon the parties," the mere statement that an agreement is binding does not make it so. When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009). Plaintiff asserts that the Exclusivity provision is binding because it required the Purchaser to "continu[e] to spend time and incur professional fees and other expenses related to the acquisition." However, this assertion misreads the provision. The Exclusivity provision merely recites as consideration that the unformed Purchaser may expend time and resources "related to the transaction." It does not require the Purchaser to take any specific action in furtherance of the transaction. In fact, the Exclusivity provision does not obligate the Purchaser to do anything at all. The absence of any obligation on Purchaser under the Exclusivity provision is entirely consistent with the other terms of the Term Sheet, which expressly provide that "no party will be under any legal obligation with respect to this Term Sheet," and that "no withdrawal from or termination of negotiations for the transaction . . . shall . . . give any party a cause of action against the other party." Pl. Amend. Compl., Ex. A at 3. Therefore, there is no mutuality of obligation under the

12

Exclusivity provision. In the absence of mutuality of obligation, the Exclusivity provision is not a binding agreement. The Purchaser has no liability under the Exclusivity provision, and neither does Plaintiff in his alleged capacity as a promoter. Because Plaintiff has no liability under the Exclusivity provision, he has failed to establish his standing and/or status as the real party in interest.

Even if the Exclusivity provision were binding on the Purchaser, the Amended Complaint fails to allege sufficient facts to show that Plaintiff was a promoter of the Purchaser. Plaintiff relies solely on the allegation that he signed the Term Sheet for the unformed Purchaser to establish his status as a promoter. Pl. Resp. at 9; *see also* Pl. Am. Compl. at 7, ¶22; 12, ¶39. A promoter is a person who "undertakes to form a corporation and procure for it the rights and capital by which it is to carry out the purposes for which it is organized." *See U.S. Bank Nat'l Assn. v. Verizon Commc'n, Inc.*, 2012 WL 3100778, at *13 (N.D. Tex. July 31, 2012). The Amended Complaint contains no allegation that Plaintiff took any action for the purpose of bringing the Purchaser into existence. For example, Plaintiff does not allege that he drafted or negotiated corporate formation documents, identified potential officers and directors, prepared the necessary forms to file with the Secretary of State—or even attempted to do any of those things. Therefore, Plaintiff has failed to allege facts sufficient to establish that he has prudential standing, or is the real party in interest, so as to be able to assert a breach of contract or tortious interference claim against Outdoor and KSE.

Plaintiff also argues that he has standing to bring his claims against KSE for tortious interference with prospective relations because he was an "intended owner" of the Purchaser. Pl. Resp. to KSE/Outdoor Mot. at 11-12. However, the two cases Plaintiff cites in support of

13

his argument, *Sturges v. Wal-Mart Stores, Inc.*, 39 S.W.3d 608, 614-15 (Tex. App.—Beaumont 1998), *rev'd*, 52 S.W.3d 711 (Tex. 2001) and *IAH-JFK Airport Parking Co. v. Ampco Systems Parking*, 2005 WL 3504034, at 85 (S.D. Tex. Dec. 22, 2005), do not stand for the general proposition that a party's status as an intended owner of an unformed corporate entity is sufficient to establish prudential standing. Rather, those cases held that specific actions undertaken by the plaintiffs demonstrated that those plaintiffs suffered real and concrete injuries sufficient to establish a personal stake in the controversy. *Sturges*, 39 S.W.3d at 614-15; *IAH-JFK Airport Parking*, 2005 WL 3504034, at *5. Plaintiff does not explain how his status as an intended owner of the Purchaser results in any different or greater rights than he would have as a promoter of the unformed entity. The Amended Complaint does not contain sufficient specific factual allegations to show that Plaintiff had a personal stake in the controversy, separate and distinct from any alleged injury suffered by the Purchaser. Plaintiff's allegation that he was an intended owner of the Purchaser fails to establish standing.

The Court's determination that Plaintiff lacks standing pretermits consideration of the other grounds raised by Defendants in their Motions to dismiss.

## Conclusion

Plaintiff's Amended Complaint fails to establish that he has Article III standing. It further fails to show that he has prudential standing or is the real party in interest entitled to bring the claims asserted against KSE and Outdoor. Accordingly, the Court GRANTS the Motions to Dismiss filed by PNC [Docket Entry #33] and KSE and Outdoor [Docket Entry #35]. Plaintiff's claims are DISMISSED without prejudice for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). *Sepulvado v. La. Bd. of Pardons & Parole*,

114 Fed. Appx. 620, 621 (5th Cir. 2004) (per curiam) (a dismissal for lack of subject matter jurisdiction based on the plaintiff's lack of standing is a dismissal without prejudice.)

**SO ORDERED.**

August 12, 2016.

_____
BARBARA M. G. LYNN
CHIEF JUDGE