IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NIC SALOMON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:15-CV-0666 |
| KROENKE SPORTS & | § | |
| ENTERTAINMENT, LLC, OUTDOOR | § | |
| CHANNEL HOLDINGS, INC., and | § | |
| PACIFIC NORTHERN CAPITAL LLC, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Alter or Amend the Judgment [ECF #55], filed by Plaintiff Nic Salomon. By his Motion, Plaintiff asks the Court to vacate its Final Judgment dismissing this civil action without prejudice, and grant him leave to file a Second Amended Complaint. Because the Court determines that Plaintiff should be allowed to file an amended complaint, the Motion is GRANTED.

### Background[1]

This lawsuit arises out of Plaintiff's failed attempt to purchase SkyCam, LLC and CableCam, LLC, two wholly-owned subsidiaries of Defendant Outdoor Channel Holdings, Inc. ("Outdoor") engaged in the aerial camera business (collectively, the "Camera Business"). Plaintiff filed this lawsuit on February 27, 2015, alleging that Outdoor had agreed to sell the Camera Business to Plaintiff and his investor partner, Defendant Pacific

---

[1] Because this case has been the subject of two prior memorandum opinions, the Court limits its discussion of the background facts and procedural history to those pertinent to the pending Motion. *See* Mem. Opn. & Order dated 9/29/15 [ECF #30]; Mem. Opn. & Order dated 8/12/16 [ECF #53].

Northwest Capital LLC ("PNC"). As part of their negotiations for the purchase and sale of the Camera Business, Plaintiff, PNC, and Outdoor executed a "Term Sheet," dated February 27, 2013, containing promises by Outdoor (a) to deal exclusively with Plaintiff and PNC regarding the purchase of the Camera Business; (b) not to entertain any competing offers to purchase the Camera Business; and (c) not to disclose to any third party efforts by Plaintiff and PNC to purchase the Camera Business. Plaintiff alleges that Outdoor breached these promises (collectively, the "Exclusivity Provision") when it negotiated a merger with Defendant Kroenke Sports & Entertainment, LLC ("KSE"), which resulted in KSE acquiring Outdoor and all its subsidiaries, including the Camera Business. Plaintiff alleges that KSE interfered with Plaintiff's efforts to purchase the Camera Business and usurped the opportunity for itself. Plaintiff further alleges that PNC breached its fiduciary duties to him by agreeing to amend the Term Sheet to give KSE the right to veto the sale of the Camera Business to Plaintiff and PNC. Based on this alleged conduct, Plaintiff sued Defendants asserting claims for (1) breach of contract against Outdoor; (2) tortious interference with an existing contract and prospective relationships against KSE; (3) breach of fiduciary duty against PNC; and (4) unjust enrichment against Outdoor, KSE, and PNC.

On July 16, 2015, the Court granted a motion to dismiss Plaintiff's Original Complaint, filed by KSE and Outdoor. The Court explained in its Memorandum Opinion and Order that the Original Complaint failed to allege sufficient facts to establish that Plaintiff had standing to bring the claims asserted or was the real party in interest. Specifically, the Court found that the Original Complaint did not adequately allege that Plaintiff was asserting his own legal rights. Rather, the Complaint alleged that the party that lost the opportunity to purchase the Camera Business was an unformed corporate entity (the "Purchaser"). At the

time the Term Sheet was signed, the parties contemplated that the Purchaser would be owned by Plaintiff and PNC, but the Purchaser was never formed. Plaintiff attempted to avoid dismissal by arguing he had standing in his capacity as a promoter of the Purchaser, but the Court found that the Complaint failed to allege that Plaintiff was a promoter of the Purchaser and did not contain any facts to support that theory.

The Court granted Plaintiff leave to amend his pleadings, and Plaintiff filed an Amended Complaint. With respect to standing, the Amended Complaint contained a single, new allegation that Plaintiff signed the Term Sheet for the Purchaser. Plaintiff argued that his new allegation was sufficient to establish his standing to bring the claims alleged on his own behalf as a promoter of the Purchaser. The Court disagreed. In a Memorandum Opinion and Order granting Defendants' motions to dismiss Plaintiff's Amended Complaint, the Court explained that the new allegation failed to show Plaintiff suffered a cognizable injury in fact sufficient to establish Plaintiff's standing to bring the claims asserted. The Court rejected Plaintiff's argument that he was deprived of the opportunity to acquire the Camera Business, because the Term Sheet provided that opportunity belonged solely to the Purchaser. The Court also rejected Plaintiff's argument that all he had to show to establish that the lost opportunity actually belonged to him was a reasonable probability that Outdoor and the Purchaser would have entered into a contract for the sale of the Camera Business. The Court found that the mere fact that Outdoor and Plaintiff executed the Term Sheet, without more, failed to sufficiently allege a reasonable probability that the Purchaser and Outdoor would have entered into a contractual relationship.

The Court further found that Plaintiff's allegation that he signed the Term Sheet for the Purchaser was not sufficient to establish that Plaintiff had prudential standing to bring the

3

claims asserted or was the real party in interest. The Court determined that Plaintiff also must allege facts sufficient to show that the agreement he seeks to enforce is mutual and binding on Plaintiff and Defendants. Plaintiff conceded that the Term Sheet was not binding, but argued that the Exclusivity Provision, by itself, is a valid and enforceable bilateral contract. The Court rejected Plaintiff's argument as contrary to the plain language of the Exclusivity Provision, which lacked mutuality of obligation and thus was non-binding. Accordingly, the Court granted Defendants' motions to dismiss Plaintiff's Amended Complaint, and entered a Final Judgment dismissing Plaintiff's claims without prejudice for lack of subject matter jurisdiction.

Plaintiff responded to the dismissal by filing his Motion to Alter or Amend the Judgment under Fed. R. Civ. P. 59(e), in which he argues that the Court committed manifest error of law by conflating the merits of Plaintiff's claims with his standing to assert them. Plaintiff further argues that the Court erred by improperly placing the burden on him to anticipate and rebut the affirmative defense of lack of consideration and by relying on inapposite case law. Plaintiff also seeks leave to file his Second Amended Complaint, which he asserts contains the facts necessary to establish not only his standing to sue, but also to show that the Exclusivity Provision is enforceable as a unilateral contract. KSE and Outdoor filed a joint opposition to Plaintiff's Motion. The Motion is ripe for determination.[2]

## Legal Standards and Analysis

Plaintiff moves the Court to vacate its Judgment under Fed. R. Civ. P. 59(e). A motion to alter or amend a judgment under Rule 59(e) "must clearly establish either a

---

[2] Although PNC did not file a response to Plaintiff's Motion, its failure to respond is of no consequence because the Court determines that Plaintiff is not entitled to the relief sought.

4

manifest error of law or fact or must present newly discovered evidence" and "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A judgment should not be set aside except for substantial reasons. *Id.*

**Manifest Error of Law**

Plaintiff first contends that the Court should vacate the Judgment dismissing his claims because the Court committed a manifest error of law by conflating the merits of Plaintiff's claims with his standing to assert them. Plaintiff further contends the Court erred in failing to assume he would be successful on his claims. Contrary to Plaintiff's arguments, the Court did not conflate – or even consider – the merits of Plaintiff's claims in ruling on Defendants' motions to dismiss. Rather, the Court limited its analysis to the allegations set forth in Plaintiff's Amended Complaint. Even when the Court assumed Plaintiff's allegations were true, the Court determined the Amended Complaint failed to allege sufficient facts to establish Plaintiff's standing to sue. Specifically, the Amended Complaint failed to allege that Plaintiff suffered a cognizable injury in fact. To the extent Plaintiff relied on a lost opportunity to purchase the Camera Business as a sufficient injury, the Court explained that the Term Sheet, which was attached to the Amended Complaint, provided that such opportunity belonged to the Purchaser. The Amended Complaint acknowledged that the Purchaser was never formed and further failed to allege that Plaintiff took any action to create the Purchaser or consummate the purchase of the Camera Business.

Plaintiff contends that the Court erroneously concluded that he could not prove it was reasonably probable that Outdoor would sell the Camera Business to Purchaser. However, the Court did not consider the sufficiency of any proof. The Court responded to Plaintiff's argument that he could avoid dismissal if he could show a reasonable probability that Outdoor and the Purchaser would have entered into a contractual relationship. Considering only the sufficiency of the allegations in the Amended Complaint, the Court found that the sole allegation that touched on the probability that Outdoor would have entered into a contractual relationship was the allegation that Outdoor and Plaintiff executed the Term Sheet. The Court also found that the Term Sheet unambiguously stated that a legally binding obligation with respect to the proposed sale would arise only upon execution and delivery of definitive documents by Outdoor and Purchaser. The Amended Complaint failed to allege that the parties executed definitive documents or that the parties took any steps to create such documents. The Court thus held that Plaintiff had failed to allege facts sufficient to demonstrate he had standing to sue.

Plaintiff further argues that the Court erred in finding he lacked prudential standing or was the real party in interest because the Court improperly placed the burden on Plaintiff to anticipate and rebut the affirmative defense of lack of consideration. Again, contrary to Plaintiff's argument, the Court did not improperly shift any burden to Plaintiff in considering the Defendants' motions to dismiss. The Court addressed whether the Exclusivity Provision was supported by sufficient consideration only in response to Plaintiff's argument that the Exclusivity Provision was a valid and enforceable bilateral contract.

Plaintiff also faults the Court for its citation to *U.S. Bank National Association v. Verizon Communications, Inc.*, 2012 WL 3100778 (N.D. Tex. Jul. 31, 2012), in connection

with defining a promoter as a person who "undertakes to form a corporation and procure for it the rights and capital by which it is to carry out the purposes for which it is organized." Plaintiff insists that the only fact necessary to establish his standing as a promoter is that he signed the Term Sheet on behalf of the Purchaser. The Court disagreed and determined that the single fact that Plaintiff signed a term sheet was not enough to convey promoter status on him. The Court explained that Plaintiff must allege that he took some additional action for the purpose of bringing the Purchaser into existence to have standing as a promoter. The Court cited *U.S. Bank National Association v. Verizon Communications, Inc.* only as an example of the type of facts that must be alleged to establish standing as a promoter. Plaintiff has not provided any authority in support of his argument that substantially less is required.

The Court limited its analysis to the allegations contained in the pleadings and determined that those allegations were insufficient to establish Plaintiff's standing to sue. The Court therefore concludes that it did not commit a manifest error of law in dismissing Plaintiff's Amended Complaint.

**Leave to Amend**

Plaintiff also requests leave to file a Second Amended Complaint. This request is similarly governed by Rule 59(e). *Rosenzweig*, 332 F.3d at 864 (holding that when a district court dismisses an action and enters a final judgment, a plaintiff may request leave to amend only by either (i) appealing the judgment, or (ii) seeking to alter or reopen the judgment under Fed. R. Civ. P. 59 or 60). Because Plaintiff seeks leave to amend after judgment has been entered on the pleadings, the disposition of his request is subject to the same considerations controlling a motion for leave to amend a complaint under Fed. R. Civ. P. 15(a). *See id*. (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir.

1981)). In the Fifth Circuit, courts examine five factors under Rule 15(a) to determine whether to grant a party leave to amend a complaint: "(1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. Absent any of these factors, the leave sought should be 'freely given.'" *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig*, 332 F.3d at 864; *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

With respect to standing, Plaintiff's proposed Second Amended Complaint sets forth facts detailing – for the first time – the time, effort, and expense that Plaintiff allegedly incurred in attempting to finalize the sale of the Camera Business. For example, the proposed Second Amended Complaint alleges the following:

> On March 1, after execution of the Term Sheet and also after KSE's announced bid for Outdoor, Mr. Salomon provided PNC with a list of items required for the due diligence. (See Exhibit "D"). Two days later, on March 3, and a day before Mr. Salomon's conversation with Outdoor's General Counsel, Mr. Salomon expended time and effort to provide PNC with a transaction plan that addressed the formation of the Purchaser as contemplated by the Term Sheet. (See Exhibit "E"). After Mr. Salomon's conversation with Outdoor's General Counsel in early March, Outdoor continued to proceed under the Term Sheet and provided Mr. Salomon and PNC with an initial draft of the asset purchase agreement ("APA") contemplated by the Term Sheet, as well as its response to the due-diligence requests. (See Exhibit "F").
>
> On March 10, Mr. Salomon provided PNC with a proposed equity structure for the Purchaser. (See Exhibit "G"). Mr. Salomon and PNC's representative traveled to New York City to meet with a potential additional investor on March 12. The next day, Mr. Salomon spent time and effort to complete a draft of revisions to the APA and sent it to PNC for review on March 13. (See Exhibit "H").

* * *

> On March 14, Mr. Salomon began communicating with PNC's attorneys at Royer Cooper Cohen Braunfeld concerning the revisions to the APA. (See Exhibit "H"). Salomon also consulted with his own attorneys with regard to the APA and incurred legal fees in doing so.
>
> On March 20, Mr. Salomon, PNC, and Noble Financial participated in a conference call to discuss the draft APA prepared by Outdoor and revised by Salomon and PNC. (See Exhibit "J") Following their conversation, PNC and Noble Financial reportedly had a separate call where they coordinated a follow up call between Hornish and PNC to occur on March 21. While Mr. Salomon did not participate in that call, PNC later informed him that PNC and Outdoor had "worked out most of the issues" on the APA and had agreed to extend the exclusivity period by thirty days to give "more time to focus on the integration." (See Exhibit "K"). Mr. Salomon was not informed about any agreement to give control of the term sheet to KSE.

* * *

> On March 28, Mr. Salomon emailed PNC, stating that he was continuing to work on an operating model for the Purchaser and requested that PNC provide a proposed capitalization table. PNC replied with limited information. (See Exhibit "M").

*See* Mot., Ex. A ("Prop. Sec. Am. Compl.") at 10-13, ¶¶33-40. These factual allegations, which the Court assumes to be true for the purposes of its analysis, represent the type of allegations the Court determined were missing from Plaintiff's earlier pleading, *i.e.*, specific facts to show that Plaintiff took action to create the Purchaser and consummate the sale of the Camera Business, including allegations that Plaintiff participated in drafting formation documents, obtaining financing to fund the acquisition, and negotiating transaction documents. *See* Mem. Opn. & Order dated 8/12/16 [ECF #53] at 7, 13. The Court determines that the facts set forth in the proposed Second Amended Complaint are sufficient to allege

that Plaintiff was a promoter of the Purchaser, and thus has plausibly alleged that he has constitutional and prudential standing to bring the claims asserted in this lawsuit.

To the extent the Court determined Plaintiff failed to allege sufficient facts to show he had standing to bring a tortious interference claim against KSE because the Amended Complaint failed to demonstrate a reasonable probability that the Purchaser and Outdoor would have entered into a contractual relationship, the Court finds that the Second Amended Complaint supplies the missing allegations. The Second Amended Complaint details the manner in which Plaintiff continued to spend time and incur expenses related to the purchase of the Camera Business. *See* Prop. Sec. Am. Compl. at 10-13, ¶¶33-40. Plaintiff's efforts constitute the type of action that the Exclusivity Provision requires as consideration. The Second Amended Complaint further alleges that Outdoor had competing merger offers under consideration at the same time with KSE and Intermedia Outdoors Holdings, LLC ("Intermedia"). *See id.* Intermedia's offer allegedly did not include an offer to acquire the Camera Business. *See id.* at 9, ¶29. Plaintiff alleges that Outdoor continued to negotiate with Plaintiff and PNC as long as it was pursuing negotiations with Intermedia, including going so far as to participate in drafting an asset purchase agreement between the Purchaser and Outdoor. *See id.* at 10-13, ¶¶33-40. Taken together, the additional facts – which the Court assumes to be true – are sufficient to allege a reasonable probability that the Purchaser and Outdoor would have entered into a contractual relationship. In view of the new allegations, the Court determines that the proposed amendment would not be futile.

The Court has further examined each of the remaining factors relevant to determining whether to grant Plaintiff leave to amend and concludes that those factors weigh in favor of allowing an amendment. Plaintiff did not unduly delay, act in bad faith, or repeatedly fail to

cure the deficiencies identified in his pleadings. Plaintiff timely filed his First Amended Complaint in response to the Court's first Order dismissing the case. He also promptly sought leave to amend his pleadings after the Court entered its Final Judgment of dismissal. His proposed Second Amended Complaint cures the deficiencies identified in the Court's prior Orders. In *Rosenzweig v. Azurix Corp.*, the Fifth Circuit found no abuse of discretion with a district court's denial of the plaintiffs' motion for leave to amend where the plaintiffs admitted on appeal that they made "the 'strategic decision' to risk dismissal, with the expectation that they would be granted leave to amend the deficiencies of the complaint." 332 F.3d at 864-65. In this case, there is no evidence that Plaintiff made any such gamble. Nothing in the record suggests that Plaintiff knew his Amended Complaint was deficient in the manner identified by the Court, or that he made a "strategic decision" to withhold relevant facts with the expectation that he would be granted further leave to amend. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel is determinative to the outcome. *Hall vl Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cr. 1997). Instead, the Rules follow the principle that the purpose of pleading is to facilitate a proper decision on the merits. *See id.* Although the Amended Complaint was deficient, absent evidence that Plaintiff was gaming the system, Plaintiff's failure to allege sufficient facts to establish his standing should not dictate the outcome of this case. *The Verizon Emp. Benefits Comm. v. Adams*, 2006 WL 889997, at *2 (N.D. Tex. Apr. 5, 2006) (Lynn, J.)

In determining whether an amendment imposes undue prejudice, the Court considers whether the amendment would require Defendants to reopen discovery and prepare a defense for a claim different from the one that was previously before the Court. *EMC Corp.*, 393 F.3d at 596. Here, Plaintiff's Second Amended Complaint asserts the same claims Plaintiff

asserted in his prior pleadings. Further, the parties did not conduct any discovery before the Judgment was entered, so reopening discovery is not required. Although this case was filed more than two years ago, the litigation is still in its nascent stages. Under the circumstances, the Court does not find undue prejudice resulting from allowing the amendment. *See Adams*, 2006 WL 889997, at * 2 (finding no undue prejudice in vacating judgment and allowing amendment where parties had not conducted any discovery prior to the entry of judgment and the amendment did not add any new claims).

The Court finds no substantial reason for denying Plaintiff leave to amend his pleadings.

**Conclusion**

For the reasons stated, the Court GRANTS Plaintiff's Motion to Alter or Amend the Judgment [ECF #55], and VACATES its prior Judgment entered in this case [ECF #54]. The Court further GRANTS Plaintiff leave to file an amended complaint and directs the Clerk of Court to file Plaintiff's Second Amended Complaint, which is attached to his Motion as Exhibit A, on the docket

**SO ORDERED**.

August 31, 2017.

BARBARA M. G. LYNN
CHIEF JUDGE