**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| NIC SALOMON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **3:15-CV-666-M** |
| KROENKE SPORTS & ENTERTAINMENT, | § | |
| LLC, OUTDOOR CHANNEL HOLDINGS, | § | |
| INC., and PACIFIC NORTHERN CAPITAL LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND
OUTDOOR CHANNEL HOLDINGS, INC.'S RULE 12 (b)(6) MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

TO THE HONORABLE BARBARA M. G. LYNN, UNITED STATES DISTRICT COURT
JUDGE

By:

Paul C. Watler                          Kevin D. Evans
State Bar No. 00784334                  *Admitted pro hac vice*
Shannon Zmud Teicher                    ARMSTRONG TEASDALE LLP
State Bar No. 24047169                  4643 South Ulster Street, Suite 800
JACKSON WALKER L.L.P.                   Denver, CO 80237
2323 Ross Avenue, Suite 600            Telephone:  (720) 200-0676
Dallas, TX 75201                        Facsimile:   (720) 200-0679
Telephone:  (214) 953-6000             Email:  kdevans@armstrongteasdale.com
Facsimile:   (214) 953-5822
Email:  pwatler@jw.com
        steicher@jw.com


Attorneys for Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.

September 15, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.      INTRODUCTION ............................................................................. 1

II.     CASE HISTORY ................................................................................ 2

III.    APPLICABLE LEGAL STANDARD ............................................. 4

IV.     SALIENT ALLEGATIONS DEMONSTRATING IMPLAUSIBILITY OF
        PLAINTIFF'S CLAIMS .................................................................... 4

V.      ARGUMENT ...................................................................................... 7

        A.      PLAINTIFF FAILS TO PLEAD A PLAUSIBLE BREACH OF CONTRACT CLAIM
                AGAINST OUTDOOR ........................................................................... 7

        B.      PLAINTIFF FAILS TO PLEAD A PLAUSIBLE TORTIOUS INTERFERENCE WITH
                EXISTING CONTRACT CLAIM AGAINST KSE ........................................ 10

        C.      PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM OF TORTIOUS
                INTERFERENCE WITH PROSPECTIVE RELATIONS AGAINST KSE ............. 12

        D.      PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM FOR INDUCEMENT OF AND
                ASSISTANCE IN (AIDING AND ABETTING) BREACH OF FIDUCIARY DUTIES
                AGAINST KSE AND OUTDOOR ............................................................. 14

        E.      EVEN IF UNJUST ENRICHMENT IS RECOGNIZED AS AN INDEPENDENT CLAIM
                FOR RELIEF, PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM AGAINST
                KSE AND OUTDOOR ........................................................................... 15

        F.      PLAINTIFF'S CIVIL CONSPIRACY CLAIM AGAINST KSE AND OUTDOOR IS
                BARRED ............................................................................................ 17

VI.     CONCLUSION ................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Abilene Sav. Ass'n v. Westchester Fire Ins. Co.*, 461 F.2d 557 (5th Cir. 1972) ............................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 4, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 4

*Bell v. Philadelphia Int'l Records*, 981 F. Supp. 2d 621 (S.D. Tex. 2013) ................................... 9

*Bonn Operating Co. v. Devon Energy Prod. Co.,*  Civil Action No. 4:06-CV-734-Y,
   2009 WL 484218 (N.D. Tex. Feb. 26, 2009) ....................................................... 9

*Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716 (N.D. Tex. 2011) ........... 15

*Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 720 (Tex. App.—Dallas 2015, no pet.) ...................... 16

*Collier v. CitiMortgage, Inc.*, No. 3:14-CV-906-M-BN, 2014 WL 4181449 (N.D. Tex.
   Aug. 22, 2014) ............................................................................ 4

*Greater Houston Transp. Co. v. Uber Techs., Inc.*, Civil Action No 4:14-0941, 2015 WL
   1034254 (S.D. Tex. Mar. 10, 2015) ......................................................... 12-13

*Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539 (N.D. Tex. 2009) ............................... 15

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*, Civil Action No. 3:16-CV-2410-G, 2017 WL
   3086035 (N.D. Tex. July 20, 2017) .......................................................... 13

*In re Parkcentral Global Litig.*, Civil Action No. 3:09-CV-0765-M (LEAD CASE), 2010
   WL 3119403 (N.D. Tex. Aug. 5, 2010) ....................................................... 14

*Ingram v. Beneficial Fin., Inc.*, Civil Action No. 3:13-CV-4037-L, 2015 WL 1443110
   (N.D. Tex. Mar. 30, 2015) ................................................................. 15

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) ........................................................ 17

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ....................................... 14

*Mowbray v. Avery*, 76 S.W.3d 663 (Tex. App.—Corpus Christi 2002, pet. denied) ............. 15, 16

*Pepi Corp. v. Galliford*, 254 S.W.3d 457 (Tex. App.—Houston [1st. Dist.] 2007, pet.
   denied) ................................................................................... 16

*Provident Precious Metals, LLC v. Nw. Territorial Mint, LLC*, 117 F. Supp. 3d 879
   (N.D. Tex. 2015) .......................................................................... 16

*ThermoTek, Inc. v. WMI Enters., LLC*, Civil Action No. 3:10-CV-2618-D, 2011
WL 1485421 (N.D. Tex. Apr. 19, 2011) ............................................................. 10-11, 12

*Walker v. Cotter Props., Inc.,* 181 S.W.3d 895 (Tex. App.—Dallas 2006, no pet.) .................... 16

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001) ..................................................... 13

*Whitfield v. Nelson*, No. 3:13-CV-2230-BN, 2014 WL 1243805 (N.D. Tex. Mar. 26,
2014) ................................................................................................................................... 17

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC ("KSE") and OUTDOOR CHANNEL HOLDINGS, INC. ("Outdoor"), by and through their attorneys and pursuant to FED. R. CIV. P. 12(b)(6), respectfully move this Court to dismiss all claims asserted against them in Plaintiff NIC SALOMON's ("Plaintiff") Second Amended Complaint ("SAC") (ECF #63) with prejudice.

## I.    INTRODUCTION

This is Plaintiff's third bite at the apple.  KSE and Outdoor moved to dismiss Plaintiff's Original and Amended Complaints on both standing and Rule 12(b)(6) grounds.  The Court dismissed Plaintiff's first two pleadings for lack of standing, and as a result found that it did not need to consider the Rule 12(b)(6) arguments.  Despite the detailed explanations in the previous motions to dismiss as to why Plaintiff also failed to state a claim as a matter of law, Plaintiff has done nothing in the SAC to cure his fundamental pleading deficiencies—precisely because there is nothing he can say that would make his claims in the least bit plausible.

As explained below, the Term Sheet in question dealt only with potential sale of Outdoor subsidiaries SkyCam, LLC and CableCam, LLC (the "Aerial Camera Business").  It did not preclude, in fact it could not preclude given the pre-existing offer and merger agreement between Outdoor and Intermedia Outdoors Holdings, LLC ("Intermedia") for all Outdoor stock, the sale of the entire company of Outdoor.  And that is exactly what KSE acquired; it made a competing offer to purchase all Outdoor stock (not the Aerial Camera Business), and as the superior offer to that of Intermedia, KSE in fact acquired all Outdoor stock.

Moreover, the Term Sheet expressly stated that Outdoor (as well as "Purchaser"[1]) could withdraw from or terminate negotiations for sale of the Aerial Camera Business, "for whatever reason, or for no reason," and that "any such withdrawal or termination shall not give any party a cause of action against the other party."  (SAC Ex. A at p. 4).  Simply put, while Plaintiff may be disappointed that he did not acquire the Aerial Camera Business (assuming he ever could have put together a deal to do so in the first place), his claims against KSE and Outdoor premised on his disheartenment are utterly implausible.  He has failed to state any claim on his third try, and it is time for this saga to end.  The SAC should be dismissed with prejudice.

## II.    CASE HISTORY

Plaintiff filed his Original Complaint (ECF #1) in this case on February 27, 2015.  KSE and Outdoor moved to dismiss (ECF #14) the Complaint on May 5, 2015 pursuant to FED. R. CIV. P. 12(b)(1), 17(a), 12(b)(6), and 9(b).  On July 16, 2015, the Court granted the Motion To Dismiss (ECF #26), and issued a corresponding Memorandum Opinion And Order (ECF #30) on September 29, 2015.   In the Memorandum Opinion And Order (p. 5), the Court found that "Salomon's Original Complaint fails to allege sufficient facts to establish that Salomon has prudential standing or is the real party in interest.  Because standing is a threshold issue, the Court does not reach the other issues raised in connection with KSE and Outdoor's joint Motion to Dismiss."  In granting the Motion To Dismiss, the Court gave Plaintiff leave to replead "in an effort to establish his standing and/or status as the real party in interest."  (*Id.*)

Plaintiff filed his Amended Complaint (ECF #31) on October 13, 2015.  On October 30, 2015, KSE and Outdoor moved to dismiss the Amended Complaint (ECF #34) under FED. R.

---

[1]  Defined in the Term Sheet as an "Acquisition entity . . . to be formed by PNC [Pacific Northern Capital] in conjunction with Nic Salomon."  (SAC Ex. A at p. 1).

CIV. P. 8(a)(2), 12(b)(1), 12(b)(6), and 17(a)(1).[2]   In its August 12, 2016 Memorandum Opinion And Order (ECF #53) granting that Motion To Dismiss (p. 14–15), the Court noted that "Plaintiff's Amended Complaint fails to establish that he has Article III standing.  It further fails to show that he has prudential standing or is the real party in interest . . . ."  Accordingly, the Court dismissed the Amended Complaint for lack of subject matter jurisdiction, and as a result the Court did not consider the bases raised by KSE and Outdoor for dismissal under Rule 12(b)(6).

On September 9, 2016, Plaintiff filed his Motion To Alter Or Amend The Judgment (ECF #55), and attached the SAC that he requested leave to file.  KSE and Outdoor opposed Plaintiff's Motion (ECF #56).  On August 31, 2017, the Court issued a Memorandum Opinion And Order (ECF #62) in which it vacated its Final Judgment and granted Plaintiff leave to file the SAC.  In so doing, the Court said on pages 9–10 that the allegations first made by Plaintiff in the SAC "are sufficient to allege that Plaintiff was a promoter of the Purchaser, and thus has plausibly alleged that he has constitutional and prudential standing to bring the claims asserted in this lawsuit."

While the Court found that Plaintiff now has made sufficient allegations to survive a motion to dismiss on standing grounds, Plaintiff has done nothing in the SAC to avoid dismissal on Rule 12(b)(6) grounds, and the Court has not yet considered KSE and Outdoor's Rule 12(b)(6) arguments.  Plaintiff even continues to assert a claim that this Court (and others) have found is not a claim at all.  Accordingly, as explained below, Plaintiff's SAC must be dismissed for failure to state a claim on which relief can be granted.

---

[2] Because Plaintiff dropped his alleged fraud claim, KSE and Outdoor did not move under Rule 9(b).

### III.    APPLICABLE LEGAL STANDARD

When considering a motion to dismiss a complaint, " '[t]he court does not evaluate the plaintiff[']s likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.' "  *Collier v. CitiMortgage, Inc.*, No. 3:14-CV-906-M-BN, 2014 WL 4181449, at *2 (N.D. Tex. Aug. 22, 2014) (citation omitted).  That said, the plaintiff "must plead 'enough facts to state a claim to relief that is plausible on its face.' "  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As noted by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) :

> *A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged*. . . .  The plausibility standard is not akin to a "probability requirement," but it asks for *more than a sheer possibility that a defendant has acted unlawfully*.  . . .  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " [Emphasis added; quoting *Twombly*]

For the reasons explained below, the claims asserted by Plaintiff in the SAC are implausible on their face.

### IV.    SALIENT ALLEGATIONS DEMONSTRATING IMPLAUSIBILITY OF PLAINTIFF'S CLAIMS

The following allegations in Plaintiff's SAC, for the reasons noted in the Sections below, demonstrate the implausibility of each of Plaintiff's claims against KSE and Outdoor:

➢ Outdoor commenced efforts to sell the Aerial Camera Business in March 2012.  (*See* SAC ¶¶ 10, 16).

➢ In November 2012, Outdoor signed a merger agreement with Intermedia, *pursuant to which Intermedia agreed to purchase all stock of Outdoor*.  (*See* SAC ¶ 29 & Ex. B). Intermedia was acquiring the entire company, not only the Aerial Camera Business

subsidiaries of Outdoor.  Plaintiff notes that Outdoor informed Intermedia that Outdoor "was exploring strategic alternatives for the [Aerial Camera Business], which process [was] still ongoing" at the time of the Intermedia merger agreement.  (*See* SAC Ex. B). Still, the Intermedia offer was for *all* stock of Outdoor.

➤ The Intermedia merger agreement was signed over ***three months before*** the Term Sheet between Outdoor, Plaintiff, and Pacific Northern Capital ("PNC").  (*See* SAC Ex. A).

➤ Plaintiff and PNC drafted the Term Sheet and then sent it to Outdoor on PNC letterhead. Tellingly, the Term Sheet does ***not*** preclude Outdoor from negotiating or selling the stock of Outdoor to anyone, nor could it since Outdoor already had entered into the merger agreement with Intermedia three months earlier.  (*See* SAC Ex. A).  In fact, had Plaintiff and PNC attempted in the Term Sheet to preclude the sale of Outdoor stock, ***they*** would have tortiously interfered with those ongoing efforts.

➤ The Term Sheet provides that other than the Exclusivity provision  (*see infra* at 7–8), "until definitive agreements are entered into, . . . no party will be under any legal obligation with respect to this Term Sheet, and no withdrawal from or termination of negotiations for the transaction contemplated by this term sheet prior to signing definitive agreements, for whatever reason, or for no reason, shall be determined to be in bad faith ***and any such withdrawal or termination shall not give any party a cause of action against the other party***."  (*See* SAC Ex. A at p. 4 (emphasis added)).

➤ On the very same day as execution of the Term Sheet, KSE made an ***unsolicited*** offer, in competition with that of Intermedia, to purchase all of the stock of Outdoor.  (*See* SAC ¶ 30).

➢ Intermedia then countered the KSE offer for all Outdoor stock, and the Outdoor board found Intermedia's revised offer superior; the Outdoor board then notified KSE of its intent to terminate the March 13, 2013 merger agreement with KSE, subject to KSE's opportunity to counter. (*See* SAC ¶ 43 & Exs. O and P). Notwithstanding the fact that Plaintiff claims to have devoted efforts between March 2013 and the Intermedia counter in May 2013 in furtherance of his efforts to acquire the Aerial Camera Business (*see* SAC ¶¶ 34, 36, 37, 40), Plaintiff does not, and indeed cannot, allege that the counter by Intermedia for all Outdoor stock was improper. After all, the initial Intermedia offer preceded the Term Sheet by over three months.

➢ Following an additional counter by KSE for all Outdoor stock, the Outdoor board found the KSE counter superior to that of Intermedia, and KSE acquired all of the stock of Outdoor on May 17, 2013. (*See* SAC ¶¶ 46–47 & Ex. Q). Plaintiff does not allege, nor can he, that KSE acquired only the Aerial Camera Business from Outdoor.

➢ Nowhere in the SAC does Plaintiff allege that Outdoor entered into discussions or negotiations with anyone or any entity other than Plaintiff and PNC after February 27, 2013 to sell the Aerial Camera Business; indeed, any such allegation would be false. Rather, Outdoor continued the efforts which began with the Intermedia merger agreement in November 2012 (over three months before the Term Sheet) to sell all Outdoor stock.

➢ Nowhere in the SAC does Plaintiff allege that Outdoor sold the Aerial Camera Business to anyone; again, any such allegation would be false. In fact, as Plaintiff concedes throughout the SAC, at the time of the KSE acquisition of all Outdoor stock on May 17, 2013, Outdoor still owned the Aerial Camera Business. Thus, by virtue of its acquisition of all Outdoor stock, KSE acquired all Outdoor subsidiaries, including the Aerial Camera

Business, just as Intermedia would have done had it been the successful bidder and had it then acquired the Outdoor stock.

## V.    ARGUMENT

Plaintiff alleges the following causes of action against KSE and Outdoor:  i) breach of contract against Outdoor in Count 1; ii) tortious interference with existing contract against KSE in Count 2; iii) tortious interference with prospective relations against KSE in Count 3; iv) inducement of and assistance in (aiding and abetting) breach of fiduciary duties against KSE and Outdoor in Count 4; v) unjust enrichment against KSE and Outdoor (and PNC) in Count 6[3]; and civil conspiracy against KSE and Outdoor (and PNC) in Count 7.  Particularly in light of the facts set forth above in Section IV, and for the reasons below, each of Plaintiff's claims against KSE and Outdoor is inherently implausible.[4]

### A.    PLAINTIFF FAILS TO PLEAD A PLAUSIBLE BREACH OF CONTRACT CLAIM AGAINST OUTDOOR

Plaintiff alleges that Outdoor breached the Exclusivity provision of the Term Sheet.  (*See* SAC ¶¶ 50–51).[5]  The Exclusivity provision is found on page 3 of the Term Sheet.  (*See* SAC Ex. A).  That provision provides that "[i]n consideration of Purchaser continuing to spend time

---

[3] In Count 5, Plaintiff asserts a breach of fiduciary duty claim against PNC.

[4] Plaintiff attached to the SAC communications with his attorneys at Fulbright & Jaworski.  (*See* SAC Exs. F & H).  Plaintiff also communicated with lawyers at Fulbright & Jaworski about the subject matter of this case and his purported personal interests using his computer at the Aerial Camera Business.  Accordingly, Plaintiff has waived the attorney-client privilege, and if this case proceeds, KSE and Outdoor intend to pursue all such communications regarding the subject matter of this case.  Counsel for KSE and Outdoor have sent a letter to Norton Rose Fulbright US LLP requesting it to preserve and retain all such communications.

[5] In light of the termination provision (*see supra* at 5), Plaintiff is precluded from asserting a breach of any other portion of the Term Sheet.

and incur professional fees and other expenses related to the acquisition," Outdoor will refrain from certain activities until April 15, 2013, including: (1) "[s]olicit[ing], facilitat[ing], encourag[ing] or accept[ing] any offers to acquire any equity or debt interest in *[the Aerial Camera Business]* or the whole or any material part of the assets of the business of *[the Aerial Camera Business]*"; (2) "[n]egotiat[ing] or correspond[ing] with third parties in relation to existing or unsolicited offers to acquire the equity or debt interest or any part of the business of *[the Aerial Camera Business]*"; (3) "[s]ell[ing] or agree[ing] to sell any equity or debt interest . . . in any part of *[the Aerial Camera Business]* to any party other than Purchaser."  That provision also states that Outdoor would "forthwith cease any negotiations, discussions or correspondence which they are having, whether directly or indirectly, in relation to the potential acquisition of an equity or debt interest in the *[Aerial Camera Business]* by any other party than Purchaser or its nominee"; recall that Outdoor had been in discussions with other entities since around mid-2012 regarding potential sale of the Aerial Camera Business (*see* SAC ¶ 16).

By its very terms, as drafted by Plaintiff and PNC, while the Exclusivity provision restricted Outdoor's ability to pursue a separate sale of *the Aerial Camera Business*, it did not prohibit the sale of all of Outdoor's stock, nor could it given the pre-existing Intermedia merger agreement.  For Plaintiff to suggest otherwise would mean that Plaintiff would admit to interfering with the pre-existing Intermedia agreement.

The only plausible interpretation of the Term Sheet is that Outdoor agreed during a certain period to negotiate exclusively with "Purchaser" for sale of the Aerial Camera Business to the "Purchaser."  It strains credulity (indeed, we submit it is ridiculous), particularly in light of the pre-existing Intermedia merger agreement, to suggest that a prospective purchaser *of all of*

*Outdoor*—i.e., Intermedia or KSE—should be deemed a "third party" with whom Outdoor agreed not to "negotiate or correspond."

In fact, the plain language of the Exclusivity provision reveals that it relates only to the sale of the ***Aerial Camera Business***, not the sale of all of Outdoor. (*See* SAC ¶¶ 25–26 and Ex. A at p. 3 (specifically referencing the Aerial Camera Business)).   And of particular import, Plaintiff does not (and cannot) allege that Outdoor negotiated with anyone other than Plaintiff and PNC after February 27, 2013 regarding sale of the Aerial Camera Business.   KSE's communications and negotiations with Outdoor (like those of Intermedia) to acquire all Outdoor stock simply was outside the scope of the Exclusivity provision.   As "contracts are to be applied as written to give effect to the parties' intent" (*Bonn Operating Co. v. Devon Energy Prod. Co.*, Civil Action No. 4:06-CV-734-Y, 2009 WL 484218, at *8 (N.D. Tex. Feb. 26, 2009), and the Exclusivity provision as drafted by Plaintiff and PNC is plainly limited to the Aerial Camera Business, alleged discussions between Outdoor and KSE pertaining to, and KSE's acquisition of, all Outdoor stock (just like the post-February 27, 2013 discussions and negotiations between Outdoor and Intermedia) were not barred by the Exclusivity provision.  *See Abilene Sav. Ass'n v. Westchester Fire Ins. Co.*, 461 F.2d 557, 561 (5th Cir. 1972) ("Where the parties have bargained freely and on equal terms their contract ought not be extended by implication or enlarged by construction beyond the actual terms . . . entered into by the parties."); *Bell v. Philadelphia Int'l Records*, 981 F. Supp. 2d 621, 629 (S.D. Tex. 2013) ("The court cannot rewrite the clear terms of the contract under the guise of interpretation.").

Apparently, Plaintiff attempts to avoid the damning implications of the November 2012 Intermedia merger agreement, and the May 2013 counter by Intermedia to the KSE offer, by conclusorily claiming that "Intermedia was not merging with Outdoor to acquire the Aerial

Camera Business," and that "Intermedia expected and acknowledged that the Aerial Camera Business would be sold to a third party, either before or after the merger." (SAC ¶ 29). Plaintiff then goes on to acknowledge, however, that Intermedia upped its offer following the KSE offer, and offered a higher price than KSE for all stock of Outdoor. (*See* SAC ¶ 43). The fact that the KSE offer was for all Outdoor stock, and thus included all Outdoor subsidiaries (nowhere does Plaintiff attempt to suggest otherwise), and that Intermedia countered with a higher price, demonstrates the facially implausible nature of Plaintiff's effort to avoid the significance of the November 2012 Intermedia merger agreement on Plaintiff's suggested claims.

It also should be noted that under the Term Sheet (*see* SAC Ex. A at p. 4), Outdoor (just like "Purchaser") had the absolute right to withdraw from or terminate negotiations for sale of the Aerial Camera Business, for any reason or no reason at all, and without liability or recourse, prior to the signing of "definitive agreements." (*See also id.* ("[T]he failure of Outdoor Channel and Purchaser to reach agreement on the terms and conditions of definitive agreements in accordance with this Term Sheet shall not be construed as a breach of this Term Sheet by any party hereto.")).

Simply put, Plaintiff fails to state a plausible claim against Outdoor for breach of contract, and Count 1 of the SAC should be dismissed with prejudice.

## B.   PLAINTIFF FAILS TO PLEAD A PLAUSIBLE TORTIOUS INTERFERENCE WITH EXISTING CONTRACT CLAIM AGAINST KSE

Under Texas law, "[t]he elements of tortious interference with existing contracts are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that such interference proximately caused injury; and (4) that actual damage or loss occurred." *ThermoTek, Inc. v. WMI Enters., LLC*, Civil Action No. 3:10-CV-

2618-D, 2011 WL 1485421, at *8 (N.D. Tex. Apr. 19, 2011).  Plaintiff's allegations fail to support a plausible tortious interference with an existing contract claim.

KSE's unsolicited offer to purchase all stock of Outdoor (like the November 2012 offer and merger agreement of Intermedia three months earlier) was a bona fide exercise of its own rights, in competition with the pre-existing Intermedia agreement, and cannot form the basis of a tortious interference with an existing contract claim predicated on the Exclusivity provision. This is particularly true since, as explained above, it is facially implausible for Plaintiff to suggest that the Term Sheet precluded KSE (or anyone for that matter) from negotiating with Outdoor for the acquisition of all Outdoor stock.

Plaintiff also overreaches when he states that "there was a contract regarding the sale by Outdoor of [the Aerial Camera Business] in which Mr. Salomon had an interest."  (SAC ¶ 54). In truth, the Term Sheet drafted by Plaintiff and PNC expressly said that there was no "binding legal agreement," other than the Exclusivity provision.  (*See* SAC Ex. A at p. 4 ("Except for the provisions of 'Exclusivity' above, which is a binding legal agreement upon the parties, this Term Sheet is a statement of mutual intention; it is not intended to be legally binding, and does not constitute a binding contractual commitment with respect to any transaction.")).

Plaintiff further pleads that "KSE willfully and intentionally interfered with the . . . Exclusivity Provision" by "induc[ing] or caus[ing] Outdoor to breach its contractual obligations to negotiate exclusively with PNC and Plaintiff."  (SAC ¶ 55).  However, Plaintiff does not and cannot allege that Outdoor negotiated with anyone other than Plaintiff and PNC after February 27, 2013 in connection with any sale of the Aerial Camera Business; in other words, Plaintiff fails to allege any facts (and cannot do so) that KSE caused Outdoor to negotiate with anyone other than Plaintiff and PNC.

Plaintiff's allegation that "KSE induced or caused Outdoor to breach its contractual obligations to negotiate exclusively with PNC and Plaintiff" (SAC ¶ 55) also is belied by Plaintiff's allegations in the SAC.  Plaintiff alleges that in late March 2012, he, PNC and Nobel Financial (Outdoor's investment banker) exchanged drafts of an asset purchase agreement and had conversations about it.  (*See* SAC ¶¶ 33, 37).  The fact that no definitive agreement was reached does not provide a basis for any claim according to the express provisions of the Term Sheet.  (*See* SAC Ex. A at p. 4).

For each of these reasons, Plaintiff's claim of tortious interference against KSE is implausible and fails as a matter of law.  Accordingly, this claim also must be dismissed with prejudice.

### C.   PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM OF TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS AGAINST KSE

In Texas, the elements of tortious interference with prospective business relations are:

> (1) there was a reasonable probability that [the plaintiff] would have entered a contractual relationship with a third party; (2) the defendants committed an independently tortious or unlawful act that prevented the contract from being formed; (3) the defendants' tort was committed with a conscious desire to prevent formation of the contract; and (4) that the plaintiff suffered actual harm as a result.

*ThermoTek*, 2011 WL 1485421, at *8.

Again, the KSE unsolicited offer and merger agreement for all Outdoor stock, in competition with the pre-existing Intermedia merger agreement, was a lawful act based on free market principles and cannot form the basis for Plaintiff's tortious interference with prospective relations claim.  *See Greater Houston Transp. Co. v. Uber Techs., Inc.*, Civil Action No 4:14-0941, 2015 WL 1034254, at *19–20 (S.D. Tex. Mar. 10, 2015) (finding "tortious interference . . . requires that the plaintiff show independently tortious or unlawful conduct by the defendant" and

granting defendant's motion to dismiss tortious interference with prospective relations claim); *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, Civil Action No. 3:16-CV-2410-G, 2017 WL 3086035, at *3 (N.D. Tex. July 20, 2017) (same).  *See also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001) ("[H]arm that results only from lawful competition is not compensable by the interference tort.").

Furthermore, Plaintiff's allegations in the SAC demonstrate the facially implausible nature of this claim.  Plaintiff says that "KSE induced Outdoor to breach its contractual obligation to negotiate exclusively with Mr. Salomon and PNC and then caused the execution of the Amendment [with PNC], which purported to grant KSE the right to disavow the sale of the Aerial Camera Business."  (SAC ¶ 58).  Once again, however, nowhere does Plaintiff allege (nor can he) that Outdoor negotiated with anyone other than Plaintiff and PNC for sale of the ***Aerial Camera Business*** after the February 27, 2013 Term Sheet.  As far as the amendment with PNC goes, nowhere does Plaintiff allege (nor can he) that Plaintiff, PNC and Outdoor reached definitive agreements (let alone signed them), and that KSE then "disavowed" any sale.

Plaintiff also conveniently ignores the Term Sheet provision that he and PNC drafted, which states that either party could withdraw from or terminate negotiations "for whatever reason, or for no reason."  (*See* SAC Ex. A at p. 4).  This means that Outdoor could withdraw from or terminate negotiations with Plaintiff and PNC if Outdoor determined that it was in its best interest to do so given the merger agreements with Intermedia and then KSE, which called for the purchase of all Outdoor stock.  Indeed, Outdoor's General Counsel previously had communicated to Plaintiff on March 4, 2013 (four days after execution of the Term Sheet and well before the "amendment" on which Plaintiff places so much stock) that "the interest of

Outdoor to accept an offer to purchase all the stock of the entire company took precedence over the sale of the Aerial Camera Business."  (SAC ¶ 31).

For each of these reasons, Plaintiff's claim of tortious interference with prospective relations against KSE is implausible and fails as a matter of law.  It too must be dismissed with prejudice.

**D.      PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM FOR INDUCEMENT OF AND ASSISTANCE IN (AIDING AND ABETTING) BREACH OF FIDUCIARY DUTIES AGAINST KSE AND OUTDOOR**

Under Texas law, Plaintiff's claim for aiding and abetting (assisting and encouraging) a breach of fiduciary duty requires Plaintiff to demonstrate that KSE knowingly participated in an alleged breach.  *In re Parkcentral Global Litig.*, Civil Action No. 3:09-CV-0765-M (LEAD CASE), 2010 WL 3119403, at *9 (N.D. Tex. Aug. 5, 2010).  To state a claim for knowing participation in a breach of fiduciary duty, the "plaintiff must assert:  (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citation omitted).

As a preliminary matter, PNC previously explained why there was no fiduciary or partnership relationship between PNC and Salomon.  (*See* PNC's Motion To Dismiss (ECF #33) at pp. 8–9).

Plaintiff's claim here is founded on the following utterly conclusory statement:  "The Amendment purported to grant to the prospective purchaser KSE the right to reject the sale of the Aerial Camera Business to Mr. Salomon and PNC.  Such assistance and encouragement was a substantial factor in causing PNC's breach of fiduciary duties to Mr. Salomon."  (SAC ¶ 62). Yet Plaintiff offers no factual allegation as to how the March 21, 2013 "amendment" caused

PNC to breach supposed fiduciary duties to Plaintiff.  As noted by the Supreme Court in *Iqbal*, 556 U.S. at 678:  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Not only is there a dearth of such factual content, there is none.  Indeed, at the same time as the "amendment," Plaintiff, PNC and Outdoor's investment banker were exchanging and discussing drafts of an asset purchase agreement.  (*See* SAC ¶ 37).

As for Plaintiff and PNC's interactions after the "amendment," Plaintiff still makes no factual (as opposed to conjectural) allegations that PNC did anything vis-à-vis its relationship with Plaintiff based on anything that KSE or Outdoor said or did.  Plaintiff simply makes conclusory assertions that PNC breached its fiduciary duties to him by signing the March 21, 2013 "amendment" (*see* SAC ¶ 66), and that KSE and Outdoor aided and abetted that breach.

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff" "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678–79.  Plaintiff fails to state a plausible claim for relief and this claim too must be dismissed with prejudice.

## E. EVEN IF UNJUST ENRICHMENT IS RECOGNIZED AS AN INDEPENDENT CLAIM FOR RELIEF, PLAINTIFF FAILS TO PLEAD A PLAUSIBLE CLAIM AGAINST KSE AND OUTDOOR

In *Ingram v. Beneficial Fin., Inc.*, Civil Action No. 3:13-CV-4037-L, 2015 WL 1443110 (N.D. Tex. Mar. 30, 2015), the court ruled that "[u]njust enrichment is [a] theory of liability, not an independent cause of action under Texas law."  *Id.* at *13 (citing *Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 724-26 (N.D. Tex. 2011); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied)).  Moreover, this Court also has held under Texas

law that unjust enrichment is not an independent cause of action.  *See Provident Precious Metals, LLC v. Nw. Territorial Mint, LLC*, 117 F. Supp. 3d 879, 904 (N.D. Tex. 2015) (citing *Walker v. Cotter Props., Inc.,* 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) (" 'Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay.' ")).[6]

Even if Plaintiff is permitted to plead unjust enrichment as an independent cause of action, recovery is limited to situations where "the defendant has wrongfully secured or passively received a benefit from another that would be unconscionable to retain, and the defendant obtained the benefit from the plaintiff by fraud, duress, or the taking of an undue advantage." *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 720 (Tex. App.—Dallas 2015, no pet.).  Here, Plaintiff merely asserts that "Defendants have unjustly enriched themselves, to Mr. Salomon's detriment, by the acts, omissions, and torts described in this Complaint."  (SAC  ¶ 69).  These threadbare allegations and conclusory statements are devoid of any facts to support a plausible theory or claim for unjust enrichment.

Plaintiff also fails to allege that Outdoor or KSE wrongfully secured or passively received a benefit from Plaintiff that would be unconscionable to retain.  Indeed, Plaintiff himself alleges that KSE made an unsolicited offer for all of Outdoor's stock (as Intermedia did prior to the Term Sheet and KSE's unsolicited offer).  Plaintiff does not (and cannot) allege facts

---

[6] In previous briefing (ECF #19 at p. 20), Plaintiff noted that Texas Courts of Appeal are divided on whether unjust enrichment is a cause of action or merely a theory of recovery, comparing *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st. Dist.] 2007, pet. denied) (holding that "[u]njust enrichment is an independent cause of action") with *Mowbray* 76 S.W.3d at 679 (holding that "unjust enrichment is not a distinct independent cause of action but simply a theory of recovery")).

that plausibly suggest it was unconscionable for KSE to purchase all Outdoor stock, or that KSE or Outdoor obtained the benefit of the purchase from Plaintiff by fraud,[7] duress, or the taking of an undue advantage.  For all of these reasons, Plaintiff's claim is implausible and fails to state a cause of action; it should be dismissed with prejudice.

## F.      PLAINTIFF'S CIVIL CONSPIRACY CLAIM AGAINST KSE AND OUTDOOR IS BARRED

" 'The essential elements of a civil conspiracy claim are:  1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result.' "  *Whitfield v. Nelson*, No. 3:13-CV-2230-BN, 2014 WL 1243805, at *3 (N.D. Tex. Mar. 26, 2014) (citation omitted). "[M]erely proving a joint 'intent to engage in the conduct that resulted in the injury' is not sufficient to establish . . . civil conspiracy."  *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (citation omitted).  "Instead, civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Id.* (citation omitted).

"[L]iability for a civil conspiracy depends on participation in an underlying tort."  *Whitfield*, 2014 WL 1243805, at *3 (citation omitted).  "If the underlying tort claim fails, so, too, does the civil conspiracy claim."  *Id.*  Here, Plaintiff fails to plead plausible claims for each of the alleged torts that underlie his civil conspiracy claim.  Thus, Count 7 against KSE and Outdoor should be dismissed with prejudice.

## VI.    CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and OUTDOOR CHANNEL HOLDINGS, INC. respectfully request that the

---

[7] Plaintiff has omitted the fraud claim previously pled as Count 4 of his Original Complaint.

Court grant the foregoing Motion and:  (1) dismiss Counts 1, 2, 3, 4, 6 and 7 of Plaintiff NIC SALOMON's Second Amended Complaint against them with prejudice; and (2) award Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and OUTDOOR CHANNEL HOLDINGS, INC. such other and further relief as the Court deems appropriate.

Respectfully submitted,

JACKSON WALKER L.L.P.

Date:  September 15, 2017

By:   /s/Shannon Zmud Teicher
Paul C. Watler
State Bar No. 00784334
Shannon Zmud Teicher
State Bar No. 24047169
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  (214) 953-6000
Facsimile:  (214) 953-5822
Email:  pwatler@jw.com
          steicher@jw.com

and

Kevin D. Evans
*Admitted pro hac vice*
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
Telephone:  (720) 200-0676
Facsimile:  (720) 200-0679
Email:  kdevans@armstrongteasdale.com

Attorneys for Defendants KROENKE SPORTS &
ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of September, 2017, I electronically submitted the foregoing **DEFENDANT KROENKE SPORTS & ENTERTAINMENT, LLC AND OUTDOOR CHANNEL HOLDINGS, INC.'S RULE 12(b)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT** with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel of record electronically as authorized by Rule 5(b)(2) of the FEDERAL RULES OF CIVIL PROCEDURE.

/s/*Shannon Zmud Teicher*
Shannon Zmud Teicher