**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| NIC SALOMON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **3:15-CV-666-M** |
| KROENKE SPORTS & ENTERTAINMENT, | § | |
| LLC, OUTDOOR CHANNEL HOLDINGS, | § | |
| INC., and PACIFIC NORTHERN CAPITAL LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND OUTDOOR CHANNEL HOLDINGS, INC'S MOTION PURSUANT TO FED. R. EVID. 702 TO EXCLUDE TESTIMONY OF KEVIN KREITZMAN AND REQUEST FOR HEARING**

TO THE HONORABLE BARBARA M. G. LYNN, UNITED STATES DISTRICT COURT CHIEF JUDGE

By:

Paul C. Watler
State Bar No. 00784334
Shannon Zmud Teicher
State Bar No. 24047169
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:    214.953.6000
Facsimile:    214.953.5822
Email: pwatler@jw.com
         steicher@jw.com

Kevin D. Evans
*Admitted pro hac vice*
Nicholas W. Dowd
*Admitted pro hac vice*
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
Telephone:    720.200.0676
Facsimile:    720.200.0679
Email: kdevans@armstrongteasdale.com
         ndowd@armstrongteasdale.com

Attorneys for Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.

November 13, 2018

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................1

II.  ARGUMENT .................................................................................................1

    A. Rule 702 Requires The Court To Exclude Expert Opinions Which Lack
       Foundational Basis And Are Therefore Unreliable And Unhelpful To The
       Trier Of Fact ..........................................................................................1

    B. Mr. Kreitzman's Opinions Are Unreliable And Therefore Inadmissible .....................3

       1.  Mr. Kreitzman's Opinions On Lost Compensation Are Speculative And
          Unhelpful To The Finder Of Fact ...........................................................4

          a.  Mr. Kreitzman's Simple Blessing of Plaintiff's Calculations do not
             Help the Finder of Fact ..................................................................4

          b.  Mr. Kreitzman's Assumption That the Complained-of Transaction
             Would Have Happened is Purely Speculative ....................................5

          c.  Mr. Kreitzman's Assumption That Plaintiff Would Have Continued
             as President of the Aerial Camera Business is Also Speculative.....................7

          d.  Mr. Kreitzman's Opinions on Lost Compensation are too Remote and
             too Speculative to Allow for Recovery..............................................8

       2.  Mr. Kreitzman's Benefit Of The Bargain Opinions Are Based On A
          Purely Hypothetical Equity Structure And Depend Upon Speculation As
          To The Aerial Camera Business' Future Performance And Management ..............9

          a.  Plaintiff's May 2013 Projections do not Provide a Reasonable Basis
             for Calculating Damages.................................................................11

          b.  Mr. Kreitzman's Opinions Under his Second and Third Scenarios are
             Likewise Inadmissible ...................................................................15

          c.  Mr. Kreitzman's Calculations of the Benefit of the Bargain are
             Unreliable and Speculative Under any Value he Assumes for the
             Aerial Camera Business..................................................................16

       3.  Mr. Kreitzman's Disgorgement Of Profit Opinions Are Inadmissible.................19

          a.  Disgorgement of Profits is Unavailable as a Remedy .....................19

          b.  Mr. Kreitzman Also Ignores Important Evidence Undermining his
             Calculations of Profits to be Disgorged...........................................22

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL
HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

ii

4. Legal Expenses ............................................................................................24

III. CONCLUSION...............................................................................................25

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL
HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

iii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arthur J. Gallagher & Co. v. Babcock*,
　　703 F.3d 284 (5th Cir. 2012) ...............................................................................13

*Black v. Food Lion, Inc.*,
　　171 F.3d 308 (5th Cir. 1999) .................................................................................2

*Capital Parks, Inc. v. S.E. Adver. & Sales Sys., Inc.*,
　　30 F.3d 627 (5th Cir. 1994) .................................................................................24

*Carey v. Hercules Ocean Corp.*,
　　321 F. App'x 402 (5th Cir. 2009) ..........................................................................4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
　　284 F. Supp. 2d 511 (S.D. Tex. 2003) .................................................................21

*GWTP Investments, L.P. v. SES Americom, Inc.*,
　　No. 3:04-CV-1383-L, 2007 WL 7630459 (N.D. Tex. Aug. 3, 2007).....................15

*Hammond v. Coleman Co.*,
　　209 F.3d 718, 2000 WL 283165 (5th Cir. 2000) ....................................................3

*Hathaway v. Bazany*,
　　507 F.3d 312 (5th Cir. 2007) ...........................................................................3, 19

*Hoffman v. L & M Arts*,
　　838 F.3d 568 (5th Cir. 2016) ...............................................................................10

*Huss v. Gayden*,
　　571 F.3d 442 (5th Cir. 2009) .................................................................................2

*Jacked Up, LLC v. Sara Lee Corp.*,
　　291 F. Supp. 3d 795 (N.D. Tex. 2018), aff'd, No. 3:11-CV-3296-L, 2018 WL
　　2064126 (N.D. Tex. May 2, 2018)........................................................................15

*Johnson v. Wells Fargo Bank*,
　　NA, 999 F. Supp. 2d 919 (N.D. Tex. 2014)..........................................................21

*Kovaly v. Wal-Mart Stores Texas, L.L.C.*,
　　627 F. App'x 288 (5th Cir. 2015) .....................................................................2, 19

*Kumho Tire Co. v. Carmichael*,
　　526 U.S. 137 (1999)...............................................................................................2

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL
HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

*Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*,
    797 F.2d 227 (5th Cir. 1986) ...........................................................................19, 20

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) .................................................................2, 3, 12, 14

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009) ............................................................................2, 18

*Peters v. Five Star Marine Serv.*,
    898 F.2d 448 (5th Cir. 1990) ...................................................................................4

*SEC v. Huffman*,
    996 F.2d 800 (5th Cir. 1993) .................................................................................19

*Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
    21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000) ............21

*Washington v. Armstrong World Industries, Inc.*,
    839 F.2d 1121 (5th Cir. 1988) .................................................................................3

*In re Wilshire Homes Houston, Ltd.*,
    No. 10-32302-H2, 2013 WL 5162077 (S.D. Tex. Sept. 11, 2013).........................21

**State Cases**

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
    529 S.W.3d 559 (Tex. App.—Houston [14th Dist.] 2017, no pet.)........................21

*AZZ Inc. v. Morgan*,
    462 S.W.3d 284 (Tex. App. 2015)...........................................................................8

*Bunton v. Bentley*,
    176 S.W.3d 1 (Tex. App.—Tyler 1999), *aff'd in part, rev'd in part on other
    grounds* 94 S.W.3d 561 (Tex. 2002).....................................................................21

*Cantu v. Falcon Int'l Bank*,
    No. 04-17-00467-CV, 2018 WL 1831651 (Tex. App.—San Antonio Apr. 18,
    2018, no pet.) ........................................................................................................20

*Happy Endings Dog Rescue v. Gregory*,
    501 S.W.3d 287 (Tex. App.—Corpus Christi 2016, pet. denied)..........................19

**Rules**

FED. R. EVID. 702 .....................................................................................................1, 2, 3

FED. R. EVID. 702(a) ...........................................................................................2, 4, 20, 25

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL
HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

FED. R. EVID. 702(b) ...........................................................................................................3

FED. R. EVID. 702(b)–(d) ...................................................................................................2

FED. R. CIV. PROC. 30(b)(6)..............................................................................................23

**Other Authorities**

Restatement (Second) of Contracts (1981) § 352 ..................................................10, 14

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL
HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

vi

TO THE HONORABLE CHIEF JUDGE BARBARA M. LYNN:

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and OUTDOOR CHANNEL HOLDINGS, INC. (collectively, "Defendants"), respectfully move this Court to exclude the testimony of Plaintiff's proposed damages expert, Kevin Kreitzman.

## I.    INTRODUCTION

Mr. Kreitzman attempts to calculate damages to which Plaintiff allegedly could be entitled were any of his dubious claims for relief to succeed.  Mr. Kreitzman's opinions rely on assumptions and speculation that Plaintiff and PNC would have been able to purchase the Aerial Camera Business; that Plaintiff would have continued to be employed as President of the business; and that the business would have performed consistent with projections originally made under the assumption that the business would be part of KSE, rather than as a standalone entity—projections that broke dramatically from historical trends and reality itself.   His assumptions are not only unsupported by the record but are flatly contradicted on point after point of evidence, each of which he somehow manages to ignore.

Were these flaws in his opinions simply a matter of credibility, it would be sufficient for Defendants to expose them at any trial.   But Kreitzman's opinions are so unreliable, so speculative, so fundamentally flawed, and so inconsistent with the standards governing federal litigation that they simply have no place in a court of law.   Therefore, his testimony should be excluded.

## II.    ARGUMENT

### A.    RULE 702 REQUIRES THE COURT TO EXCLUDE EXPERT OPINIONS WHICH LACK FOUNDATIONAL BASIS AND ARE THEREFORE UNRELIABLE AND UNHELPFUL TO THE TRIER OF FACT

The Federal Rules of Evidence permit an expert witness to offer his opinions only if his "specialized knowledge will help the trier of fact to understand the evidence or to determine a

fact in issue[.]" FED. R. EVID. 702(a).  The offering party also must show "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)); *see also* FED. R. EVID. 702(b)–(d).

To maintain these standards, Rule 702 "imposes a special obligation upon a trial judge" to ensure that "all expert testimony" is "not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).  "The overarching goal of *Daubert*'s gate-keeping requirement" is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999) (quoting *Kumho Tire*, 526 U.S. at 152).

Consistent with this obligation, this Court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is [ ] valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Kovaly v. Wal-Mart Stores Texas, L.L.C.*, 627 F. App'x 288, 290 (5th Cir. 2015) (quoting *Daubert*, 509 U.S. at 592–93).  This requires that there be "an adequate 'fit' between the data and the opinion proffered." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).  And "[a]ny step that renders the analysis unreliable . . . renders the expert testimony inadmissible." *Id.* (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670–71 (5th Cir. 1999)).

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

2

Indeed, "trial courts are encouraged to exclude such speculative testimony as lacking any . . . validity." *Moore*, 151 F.3d at 279; *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (affirming the district court's exclusion of expert testimony in part because it was based on "unsupported conjectures" and "speculative premises"); *Hammond v. Coleman Co.*, 209 F.3d 718, 2000 WL 283165, at *1–2 (5th Cir. 2000) (table) (affirming the district court's exclusion of expert testimony as "too speculative to be admissible under Rule 702"); *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988) (affirming district court's exclusion of expert testimony that "was pure speculation and fundamentally unreliable").

### B.     MR. KREITZMAN'S OPINIONS ARE UNRELIABLE AND THEREFORE INADMISSIBLE

After admittedly assuming liability, and ***ignoring*** a host of facts and evidence which undermine that assumption as well as his opinions,[1] Mr. Kreitzman attempts to identify four different categories of damages to which he claims Plaintiff  would be entitled if Plaintiff were to prevail at trial:  lost compensation, benefit of the bargain, disgorgement of profits, and legal expenses.  (*See* App. 008, Ex. 1-A, Expert Report of Kevin Kreitzman ("Kreitzman Report"), at 2 ¶ 3).  As shown below, none of his opinions are "based upon sufficient facts or data."  FED. R. EVID. 702(b).  To the contrary, his opinions as to these categories of damages are premised on unmitigated speculation, ignore the facts of and evidence in the case, are contradictory between the "methods" he uses within his report, and are ultimately unhelpful to the trier of fact.  They are unreliable and therefore inadmissible.

---

[1] Such as the deposition testimony of Pacific Northern Capital ("PNC") representative Jeff Holowaty that PNC was not going to fund the entire acquisition price and no other investors were found, and the Term Sheet did not require Outdoor to exclude the Aerial Camera Business from the sale of all Outdoor stock.  PNC was Plaintiff's partner in the effort to acquire the Aerial Camera Business.  Not only did Mr. Kreitzman fail even to read Mr. Holowaty's deposition, he made no effort to speak with him.  (*See* App. 094, Ex. 1-B, Kreitzman Dep. at 203:7–11).

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

### 1.   Mr. Kreitzman's Opinions On Lost Compensation Are Speculative And Unhelpful To The Finder Of Fact

Mr. Kreitzman first proffers an "evaluation" (if it can be called that) of Plaintiff's claim that he lost compensation in the amount of $1,362,755—wages Mr. Salomon purportedly would have earned between his termination in May 2014 for poor performance and the date this action was filed but for Defendants' conduct.  (*See* App. 009, 022–23 Ex. 1-A, Kreitzman Report at 3 ¶ 5, 16–17 ¶ 47).  As Mr. Kreitzman freely admits, he performed no independent analysis on this issue; he simply looked over Plaintiff's own calculations and gave them his stamp of approval, declaring that "they appear to be accurate based on the assumptions made therein."  (App. 023, Ex. 1-A, Kreitzman Report at 17 ¶ 47).

#### a.   *Mr. Kreitzman's Simple Blessing of Plaintiff's Calculations do not Help the Finder of Fact*

Nothing about this opinion draws from any "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or determine a fact in issue."  FED. R. EVID. 702(a).  "Expert testimony is unnecessary when the trier of fact is 'as capable of comprehending the primary facts and of drawing correct conclusions from them as are' expert witnesses." *Carey v. Hercules Ocean Corp.*, 321 F. App'x 402, 405 (5th Cir. 2009) (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962).  In such cases, "the jury [can] adeptly assess this situation using only their common experience and knowledge."  *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).  Here, Mr. Kreitzman did nothing more than sign off on Plaintiff's own calculations, which consist of adding Plaintiff's projected annual salary and bonus and multiplying by time since his termination.  Mr. Kreitzman's opinion adds nothing of use to the trier of fact; a calculator, not an economist, would suffice here.

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

4

### b.   Mr. Kreitzman's Assumption That the Complained-of Transaction Would Have Happened is Purely Speculative

Indeed, by appealing to an expert for a task as simple as checking Plaintiff's math, Plaintiff seemingly hopes to mask glaring concerns over whether using the underlying figures would be appropriate in the first place.  As Mr. Kreitzman notes, "Plaintiff's claim to this lost compensation is based on his assertion that but for the conduct of Defendants described in the Second Amended Complaint, Plaintiff would be in at least the same position as President of the Aerial Camera Business and would therefore be earning at least the same base salary he was earning at the time of his termination . . . and at least the same bonus he received for the calendar year."  (App. 022–23, Ex. 1-A, Kreitzman Report at 16–17 ¶ 47).  Mr. Kreitzman accepts those assumptions unquestioningly (e.g., without even attempting to verify Plaintiff's suggestion with PNC representative Jeff Holowaty), and Plaintiff seemingly hopes the presence of an expert witness willing to do so will encourage the finder of fact to do the same.

But, as Mr. Kreitzman knows perfectly well, there is no basis for these assumptions.  Even assuming that the transaction would have happened requires not just a leap of faith, but willful ignorance of the evidence.  The Term Sheet PNC and Plaintiff signed expressly states (in language that Plaintiff and PNC drafted in its entirety) that it is "non-binding," and that, until such time as definitive agreements were signed, any party could terminate negotiations for any or for no reason, and without liability.  (*See* ECF No. 63 at 27.)  Furthermore, Mr. Holowaty testified that PNC did not plan to entirely fund the purchase price of the Aerial Camera Business, and that while PNC anticipated other investors and discussed the opportunity with some potential investors, nothing had materialized.  (*See* App. 143–46, Ex. 1-D, Deposition of Jeff Dean Holowaty, dated July 17, 2017 at 51:2–52:23; 74:14–20; 111:8–17).  Plaintiff himself acknowledged that, while potential investors had been solicited, none had agreed to provide

Defendants Kroenke Sports & Entertainment, LLC And Outdoor Channel Holdings, Inc.'s Motion Pursuant To Fed. R. Evid. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

5

funding.  (*See* App. 149, Ex. 1-E, Deposition of Nicolas Salomon, dated May 16, 2018, at 270:5–21).  Plaintiff also testified that he could not work with PNC after March 21, 2013.  (*See* App. 152–53, Ex. 1-F, Deposition of Nicolas Salomon, dated May 17, 2018, at 383:19–384:3).  The evidence in this case shows there were serious obstacles to completing this transaction that Plaintiff had no ability to overcome.  The assumption that the transaction would have occurred anyway is contrary to the record and speculative at best.

Mr. Kreitzman never even considered these points.  In fact, he never read the depositions of either Mr. Holowaty or Plaintiff (or any deposition in this matter, other than that of Defendants' finance employee Scott Long).  (*See* App. 064–65, 088–89, 100, Ex. 1-B, Deposition of Kevin Kreitzman, dated October 25, 2018 ("Kreitzman Dep.") at 65:1–5; 71:10–12; 168:24–169:10; 239:9–24).  Nor could Mr. Kreitzman identify a single person or entity who would have invested funds in the Aerial Camera Business so as to enable its acquisition by Plaintiff and PNC.  (*See* App. 071, Ex. 1-B, Kreitzman Dep. at 90:15–21).  But he was aware that other preliminary steps to the acquisition of the Aerial Camera Business—particularly, the formation of a new company that could acquire the business—never happened.  (*See* App. 093, Ex. 1-B, Kreitzman Dep. at 199:12–15).  In spite of the glaring gaps in the record and the abundance of evidence calling his fundamental assumptions into question, he managed to ignore each doubt:  "I wasn't looking at the liability and was this—was this transaction going to happen or not.  I assumed the transaction would happen."  (*See* App. 087, Ex. 1-B, Kreitzman Dep. at 155:16–18).  Equating the assumption of liability to mean that the transaction would be completed is completely misaligned with the methods and procedures by which other experts in the industry are guided.  Assuming liability does not mean there is an assumption of damages. A causal link must be established and the facts analyzed.

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

6

> ### c.   Mr. Kreitzman's Assumption That Plaintiff Would Have Continued as President of the Aerial Camera Business is Also Speculative

Likewise, the assumption that Plaintiff would have continued to be employed by the Aerial Camera Business if the transaction had occurred, and that he therefore lost compensation as a result of Defendants' conduct, is purely speculative.  Mr. Kreitzman knew there was no agreement between PNC and Plaintiff on what Plaintiff's compensation would be if they were successful in forming a new company and acquiring the Aerial Camera Business.  (*See* App. 068–69, Ex. 1-B, Kreitzman Dep. at 76:22–77:1).  And he knew there was no agreement between PNC and Plaintiff on what Plaintiff's position would be if they were successful in forming a new company and acquiring the Aerial Camera Business, and in particular, whether he would be President of that company as he had been at the Aerial Camera Business.  (*See* App. 067, Ex. 1-B, Kreitzman Dep. at 75:22–25).  Yet he ignored these facts, and instead simply assumed that Plaintiff "would not have been part of" the company if his new role would have been "unimportant." (App. 067, Ex. 1-B, Kreitzman Dep. at 75:1–13).  He also assumed that what Plaintiff "was earning before in a similar position" was "the best estimate" of what he would be earning "if this transaction had happened and there was a business that Mr. Salomon was a part of." (App. 066, Ex. 1-B, Kreitzman Dep. at 74:15–25).

He assumes too much.  Under Plaintiff's leadership, the Aerial Camera Business suffered unlevered cash flow losses each year from 2009 through 2013, with average losses of $1.19 million each year.  (*See* App. 106, Ex. 1-C, Rebuttal Expert Report of Karyl M. Van Tassel ("Van Tassel Report") at 5, Table 1).  Mr. Kreitzman admits that there is no evidence that PNC would have accepted such poor performance had it continued.  (*See* App. 085, Ex. 1-B, Kreitzman Dep. at 147:12–16).  And, indeed, he was unaware of any investors that would have

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

7

agreed to support the investment such that there would have been sufficient capital to continue funding the losses incurred historically under Plaintiff's leadership.  (*See* App. 086, Ex. 1-B, Kreitzman Dep. at 150:20–24).  Plaintiff's termination for his poor performance may very well have happened no matter who owned the company; thus, the assumption that he would have continued on as President of the Aerial Camera Business is purely speculative.

### d. Mr. Kreitzman's Opinions on Lost Compensation are too Remote and too Speculative to Allow for Recovery

Notably, Plaintiff does not suggest that the act of terminating him was itself a breach of Defendants' contractual obligations.[2]  In fact, there is no reference to Plaintiff's termination anywhere in his Second Amended Complaint; the only breaches alleged relate to the supposed sale of the Aerial Camera Business to KSE in May 2013 rather than himself and PNC.  *See* Second Amended Complaint (ECF No. 63) at 15.  Plaintiff's claim is that his termination in May 2014, and therefore lost compensation, is a downstream consequence of this purported sale to KSE—a claim too remote and too speculative for the damages to be recovered.

"To be recoverable, consequential damages must be foreseeable and directly traceable to the wrongful act and result from it."  *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App. 2015) (citing *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998)).   "Thus, consequential damages are generally not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach."  *Id.* (citing *Stuart*, 964 S.W.2d at 921).  Indeed, "the absence of a causal connection between the alleged breach and the damages sought will preclude recovery," and "[a] plaintiff may not recover breach-of-contract damages if those damages are remote, contingent, speculative, or conjectural." *Id.*

---

[2] If he had, of course, that would have raised a dispute concerning his employment, which would be subject to the arbitration clause in his Employment Agreement (*see* ECF No. 240 at 21) and could not properly be brought before this this Court.

Defendants Kroenke Sports & Entertainment, LLC And Outdoor Channel Holdings, Inc.'s Motion Pursuant To Fed. R. Evid. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

8

Here, the fact that Outdoor did not sell the Aerial Camera Business to Plaintiff and PNC has little if anything to do with Plaintiff's eventual termination.  Plaintiff continued as President of the Aerial Camera Business through May 2014, over a year after Outdoor allegedly breached its contractual obligations to Plaintiff by accepting KSE's offer to merge with and acquire all Outdoor stock.  (*See* App. 016, Ex. 1-A, Kreitzman Report at 10 ¶ 29; App. 105, Ex. 1-C, Van Tassel Report at 4 ¶ 9).  And given Plaintiff's poor performance as President of the Aerial Camera business, both before and after the KSE acquisition of all Outdoor stock, it is speculative at best to assume that PNC and any hypothetical investor Plaintiff and PNC might have found to finance the acquisition and/or fund necessary capital expenditures (though, again, they had searched and found none) would have tolerated or even been able to afford such continued performance.  Plaintiff's termination is not traceable to the alleged breach.

Mr. Kreitzman's opinions on lost compensation thus depend upon assumptions, including that PNC and Plaintiff could have found the necessary investors and would have continued to employ Plaintiff in a similar capacity as he had held while overseeing consecutive years of million-dollar losses, that are unsupported by the record.  Clearly, the purpose of Mr. Kreitzman's opinion is not to lend any kind of expertise to rudimentary calculations that any layperson could perform, if they had any basis in reality; it is to mask the absence of that basis.  But the gaps in the record on which Mr. Kreitzman builds his opinions on lost compensation are simply too numerous, too broad, and too speculative to submit his testimony to the jury.

> **2.  Mr. Kreitzman's Benefit Of The Bargain Opinions Are Based On A Purely Hypothetical Equity Structure And Depend Upon Speculation As To The Aerial Camera Business' Future Performance And Management**

Next, Mr. Kreitzman attempted to calculate "benefit of the bargain" losses, purportedly intended "to restore Mr. Salomon as the injured party to the economic position he would have

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

9

been in had the contract been performed, or had it not been interfered with." (App. 024, Ex. 1-A, Kreitzman Report at 18 ¶ 49). In this effort, Mr. Kreitzman attempted to measure "the value [Plaintiff] would have received—meaning the value of the Aerial Camera Business—had the purchase been completed and had he then become a part owner of the business with PNC." *Id.*

However, " 'a hypothetical, speculative bargain that was never struck and would not have been consummated' cannot serve as a baseline for benefit-of-the-bargain damages." *Hoffman v. L & M Arts*, 838 F.3d 568, 584 (5th Cir. 2016) (quoting *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998)). As noted above, and aside from the Exclusivity provision, the Term Sheet PNC and Plaintiff signed was non-binding; PNC and Plaintiff had not formed the acquisition entity that was to acquire the Aerial Camera Business; and, in spite of the efforts by PNC and Plaintiff to find investors who could help fund the purchase, the entire acquisition price was nowhere to be found. Mr. Kreitzman's assumption that the transaction would have occurred as Plaintiff hoped is even less than hypothetical and speculative, for his assumption is made not merely in the absence of supporting facts, but with willful disregard of the contrary evidence. This transaction therefore cannot serve as a baseline for benefit-of-the-bargain damages.

The problems do not end there. "Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *See* Restatement (Second) of Contracts (1981) § 352. Mr. Kreitzman tries to reach this threshold of "reasonable certainty" by using three different "scenarios" to first determine a purported value of the Aerial Camera Business: first, using projections Plaintiff prepared in May 2013 and based on KSE's ownership of Outdoor (of which the Aerial Camera Business were subsidiaries); second, using a report prepared by a financial advisor to Outdoor which Mr. Kreitzman admits he never saw; and third,

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

10

using the purchase price Plaintiff and PNC actually proposed.   (*See* App. 008, Ex. 1-A, Kreitzman Report at 2 ¶ 3).   He then attempts to translate that value into a benefit Plaintiff purportedly lost because the transaction did not occur, based largely on an equity structure Plaintiff proposed **but which was never agreed upon by PNC and him**.   For the reasons discussed below, each attempt to calculate value and translate it into benefit badly misses the mark.

### a.   Plaintiff's May 2013 Projections do not Provide a Reasonable Basis for Calculating Damages

The first "scenario" Mr. Kreitzman considers draws most of his attention in his report. This scenario uses what he refers to as the "Income Method" of valuing the business, which "requires that the earning capacity of the subject company be investigated and the resultant indicator of expected earning capacity, whether it be derived from past, current or projected earning streams, be discounted at a rate sufficient to satisfy the investment and business risk of ownership." (App. 025, Ex. 1-A, Kreitzman Report at 19 ¶ 52).   The "earning capacity" Mr. Kreitzman used for this first scenario was based on a "valuation of the projections made by management in the normal course of business around the time of the acquisition."  (App. 024, Ex. 1-A, Kreitzman Report at 18 ¶ 50).

These revenue projections, to be precise, were projections prepared by **Plaintiff himself** in May 2013, while he was still employed at the Aerial Camera Business, **and after KSE had acquired Outdoor**.   (*See* App. 022, Ex. 1-A, Kreitzman Report at 16 ¶ 46; App. 076–77, 090, Ex. 1-B, Kreitzman Dep. at 97:17–98:10; 188:15–20).   In other words, the projections were related to how the company might perform **as part of Outdoor after the KSE/Outdoor merger**, not as a standalone business, as would have been the case had the complained-of transaction occurred.

Defendants Kroenke Sports & Entertainment, LLC And Outdoor Channel Holdings, Inc.'s Motion Pursuant To Fed. R. Evid. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

11

This fact on its own makes the use of the projections to measure Plaintiff's purported damages totally inappropriate.  The projections Mr. Kreitzman uses were made under the assumption that the Aerial Camera Business would have all the advantages of its affiliation with the KSE sports empire—including in particular access to the sports leagues that provided the business with its primary source of revenue, as well as investment capital to fund the business' operations—which would be absent if the Aerial Camera Business were operating as a standalone entity.  Indeed, Mr. Kreitzman used these projections specifically because they "included new investments" and "were consistent with a company that is set up to grow this business"—yet those investments by definition would have come from KSE, as the new owner of Outdoor.  (App. 091–92, Ex. 1-B, Kreitzman Dep. at 189:1–190:6).  Mr. Kreitzman ignored the fact that Plaintiff and PNC had been unsuccessful in lining up investors for the original purchase price let alone for growth projections at this level, and instead simply assumed that there would be some other investors in the future (though he admits that he was unaware of any). (*See* App. 070, Ex. 1-B, Kreitzman Dep. at 87:2–6).  There is no reason to think the standalone entity, lacking affiliation with KSE, could have kept pace with the projections designed with these advantages in mind, if it could have functioned at all.  Given the differences between the company for which the projections were prepared and the hypothetical standalone company for which Mr. Kreitzman attempted to use the projections, there is no "adequate 'fit' between the data and the opinion proffered." *Moore*, 151 F.3d 276.

Furthermore, the use of a *projection* in the manner utilized by Mr. Kreitzman to measure *damages* is fundamentally problematic.  "Courts recognize that there remains an inherent degree of speculation in such projections," and permit them for use in calculating damages only "so long

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

12

as there is a reasonable basis for making those projections, such as the business's past performance." *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 295 (5th Cir. 2012).

There is no such basis here; the revenue projections are grossly inconsistent with the Aerial Camera Business' historical performance. As noted above, the Aerial Camera Business under Plaintiff's leadership saw unlevered cash flow losses in each of the four years before the projections were prepared. The company's gross margins also declined year by year, from a high of 66.1% in 2007 to 39.3% in 2012; yet the projections predict increasing gross margins each year, rising from 40.8% in 2013 to 46.2% in 2018. (*See* App. 114, Ex. 1-C, Van Tassel report at 13 ¶ 36). Though Mr. Kreitzman acknowledges the relevance of a company's actual earnings history in performing a valuation (*see* App. 025, Ex. 1-A, Kreitzman Report at 19 ¶ 52), he provides no explanation for why this projection, which breaks dramatically from historical trends and projects a growth rate that was almost double the historical rate of increase, should be considered reliable. (*See* App. 113, Ex. 1-C, Van Tassel Report at 12 ¶ 33).

The projections also bear little resemblance to how the company actually performed *after* the projections were made. The projections forecasted revenues that would increase each year by no less than 21.7%, and as much as 59.3%, with total annual revenue increasing from $12.7 million in 2013 to $52.2 million in 2018. (*See* App. 022, Ex. 1-A, Kreitzman Report at 16 Table 6). In reality, revenues would decline year by year, from $12.6 million in 2014 to $11.3 million in 2017. (*See* App. 113, Ex. 1-C, Van Tassel Report at 12 Table 2). The projections also forecast an exponential increase in systems in operation, from 17 in 2013 to 78 in 2018, and a similar increase in events broadcast from 228 in 2013 to 844 in 2018. (*See* App. 022, Ex. 1-A, Kreitzman Report at 16 Table 6). As Mr. Kreitzman admits, however, those increases simply did not happen. (*See* App. 082, Ex. 1-B, Kreitzman Dep. at 116:13–25).

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

13

To any reasonable observer, the fact that the projections forecast revenues orders of magnitude greater than what the Aerial Camera Business was actually able to accomplish after KSE's acquisition of Outdoor would naturally call into question whether those projections are a reasonable measure of what damages Plaintiff would have actually suffered had he been entitled to benefit of the bargain damages. Not to Mr. Kreitzman, who gave reality no consideration at all. (*See* App. 078–80, Ex. 1-B, Kreitzman Dep. at 106:23–107:11, 107:22–108:3) ("One is expectations at the time which would have gone to the value at the time and the other is what happened with KSE owning the company, and we can't assume that the two things would converge. . . . I have not evaluated what KSE has done with the Aerial Camera Business."). By his own admission, Mr. Kreitzman disregarded any such evidence, ostensibly because it would not have been relevant to the valuation performed in 2013. (*See* App. 081, Ex. 1-B, Kreitzman Dep. at 115:11–21) (financial results of Aerial Camera Business between 2013 and time of Mr. Kreitzman's report were "not relevant to the valuation," and so not relevant to the ultimate benefit of the bargain damage analysis). But it is no longer 2013. The parties now have available to them evidence of how KSE actually performed in the following years, and not just Plaintiff's prior wild speculation as to how the company might perform. Such evidence would have been critical to determining Plaintiff's damages, if any, with "reasonable certainty" (Restatement of Contracts § 352); yet it was studiously ignored.

For all these reasons, the projections Mr. Kreitzman used in his first "scenario" for calculating purported damages is totally unreliable. The projections were created for a company owned by Outdoor after Outdoor was acquired by KSE, and there is therefore no "fit" between the data and the opinion on how the company would have performed as a standalone entity. *Moore*, 151 F.3d at 276. Nor do the projections mesh with the reality of the company's historical

Defendants Kroenke Sports & Entertainment, LLC And Outdoor Channel Holdings, Inc.'s Motion Pursuant To Fed. R. Evid. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

14

performance, whether before or after the projections were prepared, and Mr. Kreitzman is unjustified in simply assuming these problems away. *See Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 804 (N.D. Tex. 2018), aff'd, No. 3:11-CV-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018) ("[A] company's financial projections are not automatically reliable, such that an expert may rely on the projections without further inquiry or explanation. . . . [A]n expert who relies on work provided by another party to calculate lost profits must show some basis for believing that party's projections.").

There is no reasonable basis for using these projections, and Mr. Kreitzman's calculations in his first "scenario" therefore cannot be presented to the jury.

### b.   Mr. Kreitzman's Opinions under his Second and Third Scenarios are Likewise Inadmissible

The second "scenario" fares no better. This scenario uses the value of the Aerial Camera Business as determined in a valuation by Lazard Fréres, an investment bank financial advisor to Outdoor. (*See* App. 039, Ex. 1-A, Kreitzman Report at 33 ¶ 72). But Mr. Kreitzman admits that he has never seen the Lazard Report. (*See* App. 097, Ex. 1-B, Kreitzman Dep. at 232:18–20). Thus, he could not possibly assess the assumptions made in that report or responsibly rely on that report to determine the value of the business. *See GWTP Investments, L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383-L, 2007 WL 7630459, at *10 (N.D. Tex. Aug. 3, 2007) ("it seems apparent that an expert in the area of valuation may not reasonably rely upon unseen and unverified data").

The third "scenario" simply adopts the maximum purchase price proposed by Plaintiff and PNC, $4.05 million,[3] as the value of the company. (*See* App. 042–43, Ex. 1-A, Kreitzman

---

[3] The proposed purchase price actually consists of an offer to pay $3.65 million at closing with potential litigation and royalty payments. (*See* App. 116, Ex. 1-C, Van Tassel Report at 15 ¶ 47).

Defendants Kʀᴏᴇɴᴋᴇ Sᴘᴏʀᴛs & Eɴᴛᴇʀᴛᴀɪɴᴍᴇɴᴛ, LLC And Oᴜᴛᴅᴏᴏʀ Cʜᴀɴɴᴇʟ
Hᴏʟᴅɪɴɢs, Iɴᴄ.'s Motion Pursuant To Fᴇᴅ. R. Eᴠɪᴅ. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

Report at 36–37 ¶ 77).  Tellingly, this figure is less than half of the $9.75 million at which Mr. Kreitzman values the business using the projections in scenario one, and roughly half the value estimated under scenario two (i.e., between $7 million and $9 million).  (*See* App. 034, 039 Ex. 1-A, Kreitzman Report at 28 ¶ 68, 33 ¶ 73).  Plaintiff himself, it seems, did not think the business was worth what Mr. Kreitzman supposes—and neither did other bidders who sought to purchase the Aerial Camera Business in February 2013, both of which proposed to purchase the company for $4.5 million.  (*See* App. 156–58, Ex. 1-G, Deposition of Thomas D. Allen, dated June 20, 2018 at 43:14–45:8; App. 119, Ex. 1-C, Van Tassel Report at 18 ¶ 57).  These, too, were facts that Mr. Kreitzman should have but did not consider in determining whether his damages calculations were "reasonably certain."

### c.   Mr. Kreitzman's Calculations of the Benefit of the Bargain are Unreliable and Speculative Under any Value he Assumes for the Aerial Camera Business

Mr. Kreitzman's efforts to translate the value of the company into damages Plaintiff personally suffered remain insurmountably problematic no matter what valuation is used.  Under each scenario, Mr. Kreitzman takes the assumed value of the Aerial Camera Business and allocates a portion of that value to what he assumes would be Plaintiff's equity in the business. (*See*, *e.g.*, App. 038, 041, 044, Ex. 1-A, Kreitzman Report at 32 ¶ 70, 35 ¶ 75, 38 ¶ 79).  As Mr. Kreitzman knew, however, PNC and Plaintiff never agreed on the equity structure for the purchase of the Aerial Camera Business, let alone what shares and options might have been allocated in the future.  (*See* App. 072–73, Ex. 1-B, Kreitzman Dep. at 92:17–93:14).  Though Plaintiff had proposed an equity structure to PNC, Mr. Kreitzman admits this structure could

---

$4.05 million was the maximum amount of consideration that would have been provided under the proposal, and Mr. Kreitzman admitted that he knows nothing about whether those two contingencies ever happened.  (*See* App. 098–99, Ex. 1-B, Kreitzman Dep. at 219:17–220:11).

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

16

have been modified or changed, even assuming some agreement would ultimately be reached. (*See* App. 074, Ex. 1-B, Kreitzman Dep. at 94:10–16).

Mr. Kreitzman's speculation only deepens when one considers that Plaintiff was going to contribute nothing to the funding to purchase the company; other than one instance involving Mr. Kreitzman himself, Mr. Kreitzman could not identify a single instance where a person who contributed zero cash to the acquisition of an entity (as Plaintiff proposed to do) received eight percent or more equity in the acquired company (as Mr. Kreitzman assumed Plaintiff would receive). (*See* App. 075, Ex. 1-B, Kreitzman Dep. at 96:5–22). Once again, Mr. Kreitzman simply assumes away this critical gap in the basis for his opinions, accepting without questioning that Plaintiff's proposal was "a representation of what [the equity structure] would be." (*See* App. 074, Ex. 1-B, Kreitzman Dep. at 94:10–13). And again, Mr. Kreitzman made no effort to even speak with former PNC representative Jeff Holowaty to test Plaintiff's and his speculation regarding the equity Plaintiff claims he would have received (if any) had PNC and Plaintiff acquired the Aerial Camera Business. (*See* App. 094, Ex. 1-B, Kreitzman Dep. at 203:7–11).

Still more defects in Mr. Kreitzman's analysis remain. As explained in the report of Defendants' rebuttal expert Karyl Van Tassel, the broadly accepted standards governing proper valuations require consideration of a range of elements—including the subject to be valued, the interest to be valued, standard of value, and others—which Mr. Kreitzman does not address at all. (*See* App. 109, Ex. 1-C, Van Tassel Report at 8 ¶ 19). He also gives inadequate consideration to significant qualitative factors, several of which, including the non-binding nature of the Term Sheet, the inadequacy of Plaintiff's management of the company, and the absence of investments to fund the purchase, Mr. Kreitzman ignores altogether. (*See* App. 110–11, Ex. 1-C, Van Tassel Report at 9–10 ¶¶ 22–27). He gives no basis for his calculations of

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

17

capital expenditures and working capital, making it impossible to recalculate those amounts (*see* App. 114, Ex. 1-C, Van Tassel Report at 13 ¶ 38); inexplicably removes overhead charges with no explanation as to how the standalone entity would have covered those same services (*id.* ¶ 39); fails to adjust his analysis to correct for overstated professional fees which did not reflect insurance reimbursement (*id.* ¶ 40); and limits his analysis to "recurring" expenses without providing information on what "non-recurring" expenses were excluded or why (*id.* ¶ 41). He also selects the most favorable tax rates available in his valuation analysis, contrary to the instruction of the very authorities on which he relies in crafting his report (App. 114–15, Ex. 1-C, Van Tassel Report at 13–14 ¶ 42); provides no explanation for his use of the small stock premium or consideration of how an appropriate size premium could have affected his calculated Weighted Average Cost of Capital (App. 115, Ex. 1-C, Van Tassel Report at 14 ¶ 43); and gives no consideration to company-specific risk premiums (*id.* ¶ 44) or other approaches to calculating or corroborating his Weighted Average Cost of Capital calculations (*id.* ¶ 45). Thus, his valuation techniques are inappropriate and otherwise reliable sources of valuation data were misapplied.

In sum, as with the lost compensation damages, Mr. Kreitzman's proposed benefit of the bargain damages are based on sheer speculation. Mr. Kreitzman assumes away significant questions going to the basis of his opinions, including the different nature of the company for which the projections on which he relies were prepared, the disparity between these projections and historical trends, the absence of any agreement on what Plaintiff's equity interests in the acquisition company would have been, the failure to actually form that acquisition company, and all evidence showing that the transaction of which he complains was never going to happen. Because they are based on "insufficient information" (*Paz*, 555 F.3d at 388), "unsupported

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

18

conjectures" and "speculative premises" (*Hathaway*, 507 F.3d at 318), and a misapplied methodology (*see Kovaly*, 627 F. App'x at 290), Mr. Kreitzman's opinions are unreliable.

### 3.   Mr. Kreitzman's Disgorgement of Profit Opinions Are Inadmissible

Mr. Kreitzman sets forth his opinion on disgorgement of profits in a single paragraph of his 40+ page report. (*See* App. 045, Ex. 1-A, Kreitzman Report at 39 ¶ 81). Notwithstanding its brevity, this is where the vast bulk of the damages Plaintiff demands lie. In this single paragraph, Mr. Kreitzman opines that, by considering and accepting an offer from KSE to acquire all Outdoor stock for $10.25 a share instead of accepting an offer from InterMedia at $8 per share that "would have respected the sale of the Aerial Camera Business," Outdoor purportedly gained a benefit of $2.25 per share, or $58.14 million. *Id.* This amount is over ten times the rest of all other damages claimed in Mr. Kreitzman's report combined.

### a.   Disgorgement of Profits is Unavailable as a Remedy

The most compelling reason to exclude this opinion is that disgorgement of profits simply is not available as a remedy under Plaintiff's theory of liability. Under Texas law, "[d]isgorgement of profits is not a measure of damages available in a breach of contract action." *Happy Endings Dog Rescue v. Gregory*, 501 S.W.3d 287, 292 (Tex. App.—Corpus Christi 2016, pet. denied) (quoting *Henry v. Masson*, 333 S.W.3d 825, 849 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). The purpose of disgorgement is not to make the victim whole but to prevent the wrongdoer's enrichment from ill-gotten profits. *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). By contrast, "the aim of awarding damages" for a breach of contract and related claims (such as tortious interference with a contract) is "to place the injured party in the same economic position it would have been in had the contract not been breached"; thus, "Texas courts have focused solely on compensating the injured contract party." *Marcus, Stowell & Beye Gov't Sec.,*

Defendants Kroenke Sports & Entertainment, LLC And Outdoor Channel Holdings, Inc.'s Motion Pursuant To Fed. R. Evid. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

19

*Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 231–32 (5th Cir. 1986).  "This is true even if making the plaintiff whole permits the breaching party to retain profits in excess of the plaintiff's loss." *Id.* at 232.

Here, Mr. Kreitzman expressly bases his disgorgement of profits opinion on a breach of contract theory.  According to Mr. Kreitzman, "[t]he contract is alleged to have been breached when Outdoor considered and accepted a competing offer . . . despite the agreement by Outdoor in the term sheet not to consider such offers."  (App. 045, Ex. 1-A, Kreitzman Report at 39 ¶ 81).  "[B]y accepting competing offers that didn't respect the deal, the price was bid up from $8.00 [to $10.25].  . . .  [W]hat Outdoor gained by being willing to not honor that transaction was [$]2.25."  (App. 084, Ex. 1-B, Kreitzman Dep. at 129:1–9).  Thus, Mr. Kreitzman's entire opinion on disgorgement of profits is predicated on a breach of contract liability theory, for which under Texas law disgorgement of profits is simply unavailable.  By definition, an opinion on damages that cannot be recovered cannot "help the trier of fact . . . to determine a fact in issue." FED. R. EVID. 702(a).

And while Mr. Kreitzman clearly predicates his disgorgement analysis on a breach of contract theory, disgorgement of Outdoor's profits would not be available under any other legal theory pled in this case either.  As noted above, recovery for tortious interference with a contract is limited to the extent of damages for a breach of contract, and thus does not allow for disgorgement of profits.  *See Marcus, Stowell & Beye Gov't Sec., Inc.*, 797 F.2d at 232. Likewise, claims for interference with prospective economic relations, aiding and abetting a breach of fiduciary duty, and civil conspiracy require a showing that the plaintiff suffered actual damage or loss as a result of the defendant's conduct, thereby limiting damages to the injury actually suffered and precluding disgorgement of profits as a viable remedy.  *See, e.g., Cantu v.*

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

20

*Falcon Int'l Bank*, No. 04-17-00467-CV, 2018 WL 1831651, at \*3 (Tex. App.—San Antonio

Apr. 18, 2018, no pet.) ("To prevail on a claim for tortious interference with prospective business

relations, the plaintiff must establish that . . . (4) the interference proximately caused the plaintiff

injury; and (5) the plaintiff suffered actual damage or loss as a result."); *In re Wilshire Homes*

*Houston, Ltd.*, No. 10-32302-H2, 2013 WL 5162077, at \*7 (S.D. Tex. Sept. 11, 2013) (to

succeed on claim for aiding and abetting breach of fiduciary duty, plaintiff must prove "damages

to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary"); *Bunton*

*v. Bentley*, 176 S.W.3d 1, 15–16 (Tex. App.—Tyler 1999), *aff'd in part, rev'd in part on other*

*grounds* 94 S.W.3d 561 (Tex. 2002) ("A finding of civil conspiracy imposes joint and several

liability on all co-conspirators for any actual damages resulting from the acts in furtherance of

the conspiracy. . . . It follows that in order to recover a judgment for civil conspiracy there must

be a finding of damages resulting from that conspiracy.").[4]  And because a contract exists

between the parties governing the issue underlying the action (i.e., the Exclusivity provision of

the Term Sheet), there can be no recovery at all under an unjust enrichment theory. *See Johnson*

*v. Wells Fargo Bank*, NA, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014) (a claim for unjust

---

[4] Even if damages for aiding and abetting a breach of fiduciary duty or civil conspiracy could give rise to disgorgement, the only profits that could be disgorged are those of the fiduciary— here, allegedly, PNC.  "Liability for conspiracy, aiding and abetting, and vicarious liability is predicated upon the commission of an underlying tort." *Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 676 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000).  "Therefore liability is not based on the conspiracy, but on the underlying tort." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 645 (S.D. Tex. 2003). Indeed, liability under any vicarious-liability claim would merely make the defendant "jointly and severally liable for the first co-conspirator's tort liability." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 529 S.W.3d 559, 561 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Here, the only cause of action pled which can independently give rise to disgorgement of profits is for breach of fiduciary duty, which is pled against PNC, not KSE or Outdoor.  Thus, even if KSE and Outdoor could be held jointly and severally liable for the breach of PNC's fiduciary duties, the extent of the liability, and thus the extent of the permissible disgorgement, would be PNC's profits.  Notably, Mr. Kreitzman makes no effort to identify PNC's profits (precisely because PNC received no such profit); therefore, there is nothing to disgorge.

Defendants Kroenke Sports & Entertainment, LLC And Outdoor Channel
Holdings, Inc.'s Motion Pursuant To Fed. R. Evid. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

21

enrichment is "unavailable when a valid, express contract governing the subject matter of the dispute exists").

Accordingly, Outdoor's profits cannot be disgorged under any theory of liability Plaintiff has presented.  Mr. Kreitzman's opinion on disgorgement thus cannot be salvaged even if he were to recast it under a different guise.

### b. Mr. Kreitzman Also Ignores Important Evidence Undermining his Calculations of Profits to be Disgorged

Because disgorgement is unavailable as a remedy on any legal theory Plaintiff has pled, it would have to be excluded no matter how well reasoned it was.  But it is far from well-reasoned. Consisting of only a single paragraph seemingly included as an afterthought, it overlooks important evidence undermining its reliability.  Most importantly, Mr. Kreitzman altogether ignores that the $8.00 per share offer InterMedia made, and which he uses as the basis of his calculation of Outdoor's supposed profits, was not InterMedia's final offer; it later offered to purchase the company for $9.75 per share, a transaction Mr. Kreitzman admitted in his deposition would have "respected the sale" of the Aerial Camera Business to Plaintiff just as the proposal to purchase for $8.00 per share would have done.  (*See* App. 083, Ex. 1-B, Kreitzman Dep. at 124:11–14).

Mr. Kreitzman also provides no analysis of these competing offers or what differences drove the value by any bidding party, and in particular, he gives no consideration to the extent to which including the Aerial Camera Business in the sale drove the different prices.  That is because the evidence shows the Aerial Camera Business was not a driving factor at all; the business generated only a small portion of Outdoor's total revenues—never more than 16%— and the Aerial Camera Business was not material to KSE in its offer to merge with Outdoor and acquire all Outdoor stock.  (*See* App. 161–62, Ex. 1-H, Deposition of James A. Martin, dated

Defendants Kroenke Sports & Entertainment, LLC And Outdoor Channel Holdings, Inc.'s Motion Pursuant To Fed. R. Evid. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

22

August 30, 2018 at 85:15–86:5; App. 165–66, Ex. 1-I, Deposition of Roger Werner, dated June 7, 2018 at 68:7–69:4; App. 169–70, Ex. 1-J, Rule 30(b)(6) Deposition of Scott M. Long, Kroenke Sports & Entertainment, LLC, dated September 5, 2018 at 119:25–120:15; App. 118, Ex. 1-C, Van Tassel Report at 17 ¶¶ 55–56).   Indeed, Plaintiff himself proposed to purchase the Aerial Camera Business for between $3.65 million and $4.05 million, while others proposed to purchase it for $4.5 million—less than ten percent of the $58 million Plaintiff now attempts to disgorge.   (*See* App. 116, Ex. 1-C, Van Tassel Report at 15 ¶ 47).   Clearly, not all of these "profits" could be attributable to the Aerial Camera Business; indeed, given InterMedia's offer to purchase Outdoor exclusive of the Aerial Camera Business at $9.75 per share, the vast majority of these profits *cannot* be attributed to the Aerial Camera Business. There is simply no link between claimed wrongdoing and the profits that supposedly resulted.

Mr. Kreitzman attempts to evade these holes in his theory by insisting that Outdoor could not have entertained any bids other than InterMedia's proposal to purchase for $8.00 per share, even if other offers would not have affected Plaintiff's hypothetical purchase of the Aerial Camera Business.   (*See* App. 084, Ex. 1-B, Kreitzman Dep. at 129:1–9) ("[B]y accepting competing offers that didn't respect the deal, the price was bid up from $8.00 to [$10.25].   . . . [W]hat Outdoor gained by being willing to not honor that transaction was [$2.25].").   Again, this contention expressly predicates his disgorgement opinion on a breach of contract theory, under which theory disgorgement is unavailable as a matter of law.

But this theory also depends upon the discredited proposition that the non-binding Term Sheet regarding a potential sale of the Aerial Camera Business to Plaintiff and PNC somehow constrained Outdoor from merging with and selling its stock to KSE at the best available price. There is absolutely no support for this notion.   As Plaintiff's pleadings make clear, his breach of

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

23

contract claim is based on a purported contractual agreement by Outdoor to forbear from "agreeing to sell any equity interest *in the Aerial Camera Business* or any material part of the assets *of the Aerial Camera Business*" to any party but Plaintiff and PNC.  (*See* Second Amended Complaint (ECF No. 63) at 7–8).  Nothing in the Term Sheet or Exclusivity provision prevented Outdoor from merging or selling its stock; indeed, as Mr. Kreitzman acknowledges, Outdoor had a fiduciary obligation to its shareholders to entertain such offers.  (*See* App. 095–96, Ex. 1-B, Kreitzman Dep. at 228:25–229:7); *see also Capital Parks, Inc. v. S.E. Adver. & Sales Sys., Inc.*, 30 F.3d 627, 628–29 (5th Cir. 1994).  Yet Mr. Kreitzman makes no effort to disentangle what portion of the increased bid is attributable to Outdoor's legitimate efforts to deal with assets having nothing to do with the Aerial Camera Business or identify profits directly attributable to the purported breach of the alleged contractual duties to Plaintiff.  Instead, with no support whatsoever, he attributes it all to the breach.

Mr. Kreitzman's opinion thus fails on two fronts.  Even as a measure of profits resulting from any allegedly wrongful conduct on the part of Defendants, his opinion fails to distinguish profits attributable to Outdoor's efforts to secure the best available price for assets having nothing to do with the Aerial Camera Business, as was its right and duty, from profits traceable to any alleged breach of Defendants' duties to Plaintiff.  But even more fundamentally, disgorgement of profits is simply unavailable as a remedy under Plaintiff's theory of the case; Plaintiff cannot recover these profits even if Mr. Kreitzman could measure them.  Mr. Kreitzman's disgorgement opinion therefore is both unreliable and irrelevant.

### 4.   Legal Expenses

Finally, Mr. Kreitzman states that he "understand[s] that Plaintiff incurred legal expenses and other costs paid in connection with the transaction to purchase the Aerial Camera Business

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

24

through May of 2013 of $12,622." (App. 023, Ex. 1-A, Kreitzman Report at 17 ¶ 48). He arrives at this figure by simply reciting what Plaintiff previously set forth in response to Defendants' Interrogatories, and proclaims, "hav[ing] reviewed the underlying legal bills associated with this calculation," that "the number appears to be accurate." *Id.*

Once again, no "scientific, technical, or other specialized knowledge" is used in arriving at this opinion; all that is required is rudimentary arithmetic. FED. R. EVID. 702(a). The finder of fact can review bills and tally costs just as easily as Mr. Kreitzman can. Mr. Kreitzman's opinion as to legal fees and costs thus does not "help the trier of fact to understand the evidence or to determine a fact in issue" and therefore should not be admitted. *Id.*

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the so-called expert testimony of Kevin Kreitzman in its entirety.

Respectfully submitted,

Date:  November 13, 2018               By:      */s/Kevin D. Evans*                        
                                                Kevin D. Evans
                                                *Admitted pro hac vice*
                                                Nicholas W. Dowd
                                                *Admitted pro hac vice*
                                                ARMSTRONG TEASDALE LLP
                                                4643 South Ulster Street, Suite 800
                                                Denver, CO 80237
                                                Telephone:  720.200.0676
                                                Facsimile:  720.200.0679
                                                Email: kdevans@armstrongteasdale.com
                                                       ndowd@armstrongteasdale.com

                                                and

                                                Paul C. Watler
                                                State Bar No. 00784334
                                                Shannon Zmud Teicher

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

25

State Bar No. 24047169
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  214.953.6000
Facsimile:  214.953.5822
Email:  pwatler@jw.com
            steicher@jw.com

Attorneys for Defendants KROENKE SPORTS
& ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL
HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin
Kreitzman And Request For Hearing

26

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of November, 2018, I caused the foregoing **DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND OUTDOOR CHANNEL HOLDINGS, INC.'S MOTION PURSUANT TO FED. R. EVID. 702 TO EXCLUDE TESTIMONY OF KEVIN KREITZMAN AND REQUEST FOR HEARING** to be electronically submitted with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.

*/s/Kevin D. Evans*
Kevin D. Evans

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that on the 12th day of November, 2018, I conferred with counsel for

Plaintiff in regard to this Motion.  Plaintiff is opposed to the relief requested herein.

*/s/Kevin D. Evans*
Kevin D. Evans

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL HOLDINGS, INC.'s Motion Pursuant To FED. R. EVID. 702 To Exclude Testimony Of Kevin Kreitzman And Request For Hearing

27