IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NIC SALOMON,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | 3:15-CV-666-M | |
| **KROENKE SPORTS & ENTERTAINMENT,** § | | |
| **LLC, OUTDOOR CHANNEL HOLDINGS,** § | | |
| **INC., and PACIFIC NORTHERN CAPITAL LLC,** § | | |
| § | | |
| Defendants. § | | |

**DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND OUTDOOR CHANNEL HOLDINGS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID C. BUCK**

KROENKE SPORTS & ENTERTAINMENT, LLC ("KSE") and OUTDOOR CHANNEL HOLDINGS, INC. ("Outdoor," collectively "Defendants") submit this Response in opposition to Nic Salomon's ("Plaintiff") Motion To Exclude Expert Opinions And Testimony Of David Buck Pursuant To Federal Rule Of Evidence 702 ("Plaintiff's 702 Motion"). Defendants maintain the position stated in their Motion For Summary Judgment and Brief In Support (ECF #243 & #244) that there is no dispute of material fact in this case and the Court should grant judgment to Defendants as a matter of law. But if the Court determines that there are issues to be decided regarding the meaning of the Term Sheet or fact issues that must be submitted to a jury, Mr. Buck's knowledge and experience in the area of corporate transactions will aid in resolving such issues, such as by providing testimony on industry usage. *See Sw. Bell Tele. Co. v. Fitch*, 801 F. Supp. 2d 555, 566 (S.D. Tex. 2011). Indeed, the Fifth Circuit upholds the use of expert testimony in precisely that context, namely "to determine or explain ambiguous contracts or contract terms." *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, No., 2002 WL 34443530, at *2–3

(W.D. Tex. Sept. 27, 2002) (permitting expert to testify about "what the MOU is, what certain MOU terms mean, what terms are not contained within the MOU" in the context of his industry experience as an attorney having negotiated hundreds of agreements) (citing *Toren v. Braniff, Inc.,* 893 F.2d 763,765-66 (5th Cir. 1990) (relying on expert testimony to determine the meaning of ambiguous terms in a lease); *Willowood Condominium Assoc. v. HNC Realty Co.*, 531 F.2d 1249, 1251 (5th Cir. 1976) (relying on evidence regarding "ordinary business practices" to determine whether parties had a "'meeting of the minds' necessary to the formation of a contract.")).  In sum, Mr. Buck's opinions and testimony are not, as Plaintiff claims, merely legal conclusions but instead provide helpful context regarding industry custom and practice relevant to provisions at issue in the Term Sheet and the overall context of complex corporate transactions.  Moreover, Mr. Buck's opinions are grounded in uncontroverted facts, unlike the wholly speculative opinions offered by Plaintiff's proposed expert, Mr. Krietzman.  For these reasons Mr. Buck's opinion and testimony can and should be admitted in the event of trial and Plaintiff's Rule 702 Motion should be denied.

## ARGUMENT

The testimony of an expert with specialized knowledge or experience is admissible if it will assist the trier of fact in understanding or resolving a disputed issue in the case.  FED. R. EVID. 702.  Defendants present Mr. Buck as an expert in the area of public company merger and acquisition transactions, experienced with term sheets and letters of intent, as well as the fiduciary obligations of a public company's officers and directors to the company's shareholders. (*See* Report of David C. Buck, ECF #250-1, Ex. A at 5–6).  His opinions and testimony will assist the trier of fact, if necessary, in resolving potentially complex or confusing issues relating to the corporate transactions at the heart of this case.

Plaintiff does not challenge Mr. Buck's knowledge or expertise in these areas, and indeed refers to Mr. Buck as "highly credentialed." (ECF #250, Plaintiff's 702 Motion at 13). Rather, Plaintiff goes on at length about the inadmissibility of legal conclusions in the form of expert opinions, including the interpretation of unambiguous contracts. (*Id.* at 3–10). That argument is premature until the Court rules on the ambiguity or interpretation of the contract provisions relevant to this dispute. Moreover, expert testimony of the nature challenged by Plaintiff is admissible for certain purposes even in the absence of an ambiguous contract. Plaintiff asserts also that Mr. Buck's report merely speculates as to the parties' intentions at the time they executed the Term Sheet. (*Id.* at 10–12). This too is incorrect; Mr. Buck's report provides helpful context for the trier of fact in determining what the parties intended with regard to the Term Sheet, should that issue be submitted to the jury. Finally, Plaintiff argues that portions of Mr. Buck's report do not "fit" the issues involved in this case and also that his testimony may mislead the jury. (*Id.* at 12–13). As explained below, these arguments also are without merit.

A.  **MR. BUCK'S OPINIONS ARE HELPFUL TO RESOLVING QUESTIONS REGARDING THE TERM SHEET, INCLUDING THOSE THAT MAY BE SUBMITTED TO A JURY**

Defendants agree that under Texas law when a contract is unambiguous, extrinsic evidence including expert testimony pertaining to meaning is inadmissible and interpretation typically is confined to the four corners of the document. *See Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). Indeed, it is Defendants' position that the Term Sheet's Exclusivity section is unambiguous and that the plain language of the contract does not support Plaintiff's claims. (*See* Brief In Support Of Defendants' Motion For Summary Judgment, ECF #244 at 18–21). Plaintiff of course offers his own conflicting interpretation of the Exclusivity section, (*see, e.g.*, Plaintiff's Brief In Opposition To Defendants' Motion For Summary Judgment, ECF #253 at 22–29), an interpretation which the words of the Term Sheet do not

support. Nevertheless, the Court has not yet decided whether the meaning of the Term Sheet is clear or if certain provisions are ambiguous.

That said, Mr. Buck's explanations of how certain terms within the Exclusivity section of the Term Sheet are understood in the area of corporate transactions are admissible even prior to a determination of whether the Term Sheet is ambiguous. "There is no requirement that an agreement be ambiguous before evidence of a usage of trade can be shown." Restatement (Second) of Contracts § 222, cmt. b. Indeed, determining whether a contract is ambiguous is a question of law for the Court, which requires considering the contract "in light of the circumstances existing at the time of execution." *Sw. Bell Tele. Co. v. Fitch*, 801 F. Supp. 2d 555, 566 (S.D. Tex. 2011). Such circumstances include "the commonly understood meaning in the industry of a specialized term, which may be proven by extrinsic evidence such as expert testimony or reference material." *Id.* (quoting *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627–28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (internal quotation marks omitted). Mr. Buck's opinions regarding industry usage are thus admissible.

Moreover, if the Court were to find some provision of the Term Sheet to be ambiguous, extrinsic evidence would then be admissible to determine the parties' intent. *Am. Tobacco*, 463 F.3d at 410. This includes expert testimony explaining ambiguous contract terms based on industry experience and expertise. *See Fluorine On Call, Ltd. v. Fluorogas Ltd.*, No., 2002 WL 34443530, at *2–3 (W.D. Tex. Sept. 27, 2002) (denying plaintiff's motion to exclude defendant's expert and allowing the expert to testify regarding a memorandum of understanding between the parties). In fact, Plaintiff himself acknowledges that extrinsic evidence of the parties' intent is admissible upon a finding that a contract is ambiguous. (*See* Plaintiff's 702 Motion at 5 (citing *Horn v. State Farm Lloyds*, 702 F.3d 735, 738 (5th Cir. 2012))).

Mr. Buck's knowledge and expertise thus are admissible to help clarify, if necessary, the meaning and scope of the Term Sheet's Exclusivity section. This requires consideration about the drafting process as a factual matter, which should not be done in a vacuum. Mr. Buck's report provides commentary on what is customary for parties based on his experience in regularly drafting these types of agreements, including summaries of principal issues that parties consider (both under applicable law and risk allocations) when negotiating terms such as the exclusivity provisions of the Term Sheet at issue in this case. He explains, for instance, why a public company, such as Outdoor, typically would not bind itself to a position that would cause it to breach fiduciary duties to its shareholders or agree to contract terms that immediately would put the company in breach of the contract based on existing conditions and activities. (*See* Report of David C. Buck at 13–16). A typical judge or jury may not know those customary set of facts and the basis for drafting. Identifying those issues, and how they compare to the actual language used by the parties, summarizes the real world transactional context, more than litigators can offer in argument.

Further, Mr. Buck's testimony is helpful to clarifying technical terms within the Term Sheet's exclusivity section, including terms that may appear to have a straightforward meaning. For example, in *Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 175 (S.D.N.Y. 2012), the court allowed the introduction of expert testimony of Defendants' M&A expert after explaining that "[w]hile the jury may know what the terms 'material,' 'adverse,' and 'change' mean, an average juror will not understand their use in the context of an M & A agreement." Here, Mr. Buck's knowledge and experience with term sheets, letters of intent, and corporate transactions can help elucidate what is meant by technical terms within the Term Sheet such as "sell" or "sale." Mr. Buck's report discusses the meaning of "sale" as compared to

"merger," based on his experience as well as summaries of applicable statutes, and his knowledge of substantive different transactional steps taken in a "merger" versus the "sale" of assets or stock. Those summaries and analysis are both trade and industry-specific terms that help frame the reason why parties select specific words, and thus their intended meaning.

Mr. Buck's testimony also will assist the trier of fact, if necessary, in deciding whether Defendants adhered to the Term Sheet's Exclusivity provision. Plaintiff alleges that Outdoor violated the Exclusivity section of the Term Sheet, which prohibited Outdoor from engaging in certain activities such as discussing or agreeing to sell the Aerial Camera Business to a third party. (*See* ECF #63, Plaintiff's Second Amended Complaint, Ex. A at 3). The Exclusivity section barred Outdoor from engaging in such activities either "directly or indirectly." (*Id.*) The parties dispute the meaning of these modifiers but regardless of whether they are ambiguous, Defendants' conformance with the Exclusivity section's standards "is a question of fact that must be answered by looking to the circumstances of the case, including the nature of the proposed contract, the purposes of the parties, the course of dealing between them, and any relevant usages of trade." *Ergon-West Virginia, Inc. v. Dynergy Mktg. & Trade*, 706 F.3d 419, 425–26 (5th Cir. 2013) (holding that despite the district court mistakenly concluding that the relevant contract was ambiguous, "it nevertheless correctly used extrinsic evidence to determine the parties' understanding of the contract's 'reasonable dispatch' clause," including expert testimony) (internal quotation marks omitted)).

Mr. Buck's testimony will help the trier of fact understand the nature of the transactions and the parties' conduct, and determine whether Defendants' conduct supports any of the causes of action Plaintiff asserts. At issue in this case are complex corporate transactions involving public companies and their subsidiaries, including KSE's acquisition of all Outdoor stock and

merger of Outdoor, which remained the parent of the Aerial Camera Business, into a KSE subsidiary. Depending on what claims, if any, proceed to trial, the jury may need to determine whether such a transaction constituted a "sale" of the Aerial Camera Business and if so, when such a "sale" took place. Mr. Buck's testimony based on his special knowledge and expertise in this area has probative value as to these key issues.

For example, in *ProtoComm Corp. v. Novell Advanced Services, Inc.*, the court rejected the plaintiff's motion to exclude the testimony of an investment banker, attorney and CPA experienced with corporate acquisitions, because they would be able to "help the trier of fact determine issues most relevant to this case[ ]," which included "the characterization of complex business transactions." 171 F. Supp. 2d 473, 481–83 (E.D. Pa. 2001). The experts in *ProtoComm* opined on such issues as how to properly characterize a stock sale and the impact of the relevant transactions on the rights of third parties. *See id.* Here, Mr. Buck's expertise would be helpful in determining whether the KSE acquisition of all Outdoor stock and merger with Outdoor constituted a "sale" of the Aerial Camera Business within the meaning of the Term Sheet's Exclusivity section. Mr. Buck's opinion explains that the term "sale" has a specific meaning in the realm of corporate mergers and acquisitions, which does not comport with Plaintiff's theory that the Aerial Camera Business was sold to KSE in violation of the Term Sheet's Exclusivity provisions. (*See* Report of David C. Buck at 11–14). Moreover, even if the transaction between KSE and Outdoor were deemed a "sale" of the Aerial Camera Business, Mr. Buck's knowledge and experience with the timing and process of complex business transactions would assist the jury in determining if the "sale" occurred within the exclusivity period.[1]

---

[1] The cases cited by Plaintiff in his Rule 702 Motion do not compel the exclusion of Mr. Buck's testimony in this case. In *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 457791, at *3 (E.D. Tex. Jan. 17, 2018), the court only precluded the defendant's

B. **MR. BUCK'S OPINIONS ARE BASED ON FACT, NOT SPECULATION**

Plaintiff insists that Mr. Buck's opinions be excluded "because they are rife with speculation." (Plaintiff's 702 Motion at 10). To the contrary, and unlike Plaintiff's own expert, Mr. Buck's report is based on facts obtained from deposition testimony, SEC filings, and other evidence. (*See* Report of David C. Buck, Exhibit A).

Plaintiff seems to suggest that expert testimony is never admissible for the purpose of determining the intent of the parties to a contract. (*See* Plaintiff's 702 Motion at 11 (arguing that Mr. Buck's opinions regarding usage of terms such as "sell" are "not a valid basis for expert testimony")). Plaintiff cites *Cunningham v. Bienfang*, No. Civ.A.3:00-CV-0448-L, 2002 WL 31553976, at *2–3 (N.D. Tex. Nov. 15, 2002), where the court determined that the relevant contract was not ambiguous and that expert testimony was not needed otherwise. As already noted, the Court has not yet determined in this case whether the Term Sheet is unambiguous. If there is some ambiguity with respect to what the parties intended as to relevant provisions of the Term Sheet, Mr. Buck's knowledge and expertise regarding custom and usage will assist in resolving these issues. *See Liberty Media*, 874 F. Supp. 2d at 175–77. Further, even if the Court determines that it must exclude Mr. Buck's specific conclusions regarding the meaning or scope of the Term Sheet, his opinions and testimony relating to industry customs, norms, and usage should be admitted. *See id.*

---

expert from testifying as to the meaning of a contract term that the relevant contract itself defined and did not have an industry meaning. The court still permitted the expert to testimony as to undefined contract terms like "seat map" that did have an industry meaning. *See id. STMicroelectronics, Inc. v. SanDisk Corp.*, No. 4:05cv45, 2007 WL 4532662, at *1 (E.D. Tex. Jan. 24, 2007) is a short, three-paragraph order excluding an expert report that did "nothing more than [provide] a legal discourse on how [the relevant] agreements should be interpreted." There is nothing to indicate that the expert report in that case resembled Mr. Buck's report in any way. As explained, Mr. Buck's Report provides helpful context and opinion based on relevant industry experience, not merely legal conclusions.

Moreover, Mr. Buck does not purport to know the actual state of mind of any party to the Term Sheet. Defendants' state of mind with respect to the meaning of the Term Sheet is established directly by other evidence, including the deposition testimony of Outdoor's former officers involved in the negotiation and execution of the Term Sheet. Rather, Mr. Buck provides reporting based on his industry experience as to what similarly situated parties would typically agree to in terms of risk allocation and avoidance, including needs to avoid breaching other fiduciary duties to stockholders. Mr. Buck's reporting on those issues thus does not purport to conclusively establish Defendants' mindset, only that such a mindset would have been expected, reasonable and appropriate under the circumstances based on Mr. Buck's experience.

C. **MR. BUCK'S REPORT SATISFIES *DAUBERT*'S "FIT" REQUIREMENT**

In a further effort to exclude Defendants' expert, Plaintiff claims that Mr. Buck's opinions do not "fit" with the facts of the case. (Plaintiff's 702 Motion at 12 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (2003)). He argues that Mr. Buck's discussion of what Plaintiff's interpretation of the Exclusivity section would mean vis-à-vis the proposed merger plan between Outdoor and InterMedia is irrelevant because his claims are not based on that transaction. Plaintiff says the same about Mr. Buck's explanation of the restrictions Plaintiff's reading would have imposed on Outdoor's ability to sell even one share of its own publicly-traded stock. However, Plaintiff's contention that it is "irrelevant" or "confusing" to highlight the absurdity resulting from his flawed interpretation of the Term Sheet is incorrect.

Under Texas law, courts are required to interpret contract provisions "so as to avoid meanings that produce unreasonable, oppressive, or absurd results." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 114 (5th Cir. 2010). They routinely consider hypothetical scenarios, such as the ones described by Mr. Buck, when considering whether a

proffered contract interpretation would lead to absurd results. *See Illinois Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 537 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Mr. Buck's Report explains, based on his industry expertise and experience, what the practical result of Plaintiff's interpretation of the Term Sheet would be and why that result would be absurd and not what the parties intended. His Report shows that if Plaintiff's interpretation of the Term Sheet is correct, then Outdoor would have been in breach of the Exclusivity section the moment it was signed, an absurd and unreasonable result that the parties could not have intended. The implausibility of Plaintiff's interpretation is an issue of paramount importance in this case. Mr. Buck's opinions and testimony illustrating that implausibility thus are directly relevant and should not be excluded.

### D.   MR. BUCK'S TESTIMONY WILL NOT "MISLEAD" THE JURY

Finally, Plaintiff argues that Mr. Buck should be precluded from testifying at trial under FEDERAL RULE OF EVIDENCE 403 because he will "likely…confuse the issues and mislead the jury." (Plaintiff's 702 Motion at 13). However, Plaintiff does nothing to plausibly explain how Mr. Buck will "confuse" or "mislead" the jury. Plaintiff merely rehashes the same arguments relating to an expert's role in contract interpretation and suggests that the jury will be misled by the mere fact that Mr. Buck is a "highly credentialed expert." (*Id.*) The Court will be able to instruct the jury effectively as to the purpose of Mr. Buck's testimony and the weight it should be given, and the jury ought to be capable of following such instructions. Accordingly, there is no reason to preclude Mr. Buck from testifying under Rule 403.

### CONCLUSION

For the foregoing reasons, Defendants request that Plaintiff's Motion To Exclude Expert Opinions And Testimony Of David Buck Pursuant To Federal Rule Of Evidence 702 be denied.

Respectfully submitted,

Date:  December 7, 2018            By:    *s/Kevin D. Evans*
                                          Kevin D. Evans
                                          *Admitted pro hac vice*
                                          Nicholas W. Dowd
                                          *Admitted pro hac vice*
                                          ARMSTRONG TEASDALE LLP
                                          4643 South Ulster Street, Suite 800
                                          Denver, CO 80237
                                          Telephone:  720.200.0676
                                          Facsimile:  720.200.0679
                                          Email:  kdevans@armstrongteasdale.com
                                                     ndowd@armstrongteasdale.com

                                          and

                                          Paul C. Watler
                                          State Bar No. 00784334
                                          Shannon Zmud Teicher
                                          State Bar No. 24047169
                                          JACKSON WALKER L.L.P.
                                          2323 Ross Avenue, Suite 600
                                          Dallas, Texas 75201
                                          Telephone:  214.953.6000
                                          Facsimile:  214.953.5822
                                          Email:  pwatler@jw.com
                                                     steicher@jw.com

                                          Attorneys for Defendants KROENKE SPORTS
                                          & ENTERTAINMENT, LLC and
                                          OUTDOOR CHANNEL HOLDINGS, INC.

### CERTIFICATE OF SERVICE

This is to certify that on this 7th day of December, 2018, I caused the foregoing **DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND OUTDOOR CHANNEL HOLDINGS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY** to be electronically submitted with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.

/s/*Kevin D. Evans*
Kevin D. Evans