**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| NIC SALOMON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:15-CV-666-M |
| KROENKE SPORTS & ENTERTAINMENT, | § | |
| LLC, OUTDOOR CHANNEL HOLDINGS, | § | |
| INC., and PACIFIC NORTHERN CAPITAL LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND**
**OUTDOOR CHANNEL HOLDINGS, INC.'S REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE BARBARA M. G. LYNN, UNITED STATES DISTRICT COURT
CHIEF JUDGE

By:

Paul C. Watler
State Bar No. 00784334
Shannon Zmud Teicher
State Bar No. 24047169
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  214.953.6000
Facsimile:  214.953.5822
Email: pwatler@jw.com
          steicher@jw.com

Kevin D. Evans
*Admitted pro hac vice*
Nicholas W. Dowd
*Admitted pro hac vice*
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
Telephone:  720.200.0676
Facsimile:  720.200.0679
Email: kdevans@armstrongteasdale.com
          ndowd@armstrongteasdale.com

Attorneys for Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.

December 17, 2018

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II. ARGUMENT ......................................................................................................3

    A.    Plaintiff's Breach Of Contract Theory Is Refuted By Texas And Fifth Circuit Law ................................................................................................3

    B.    Outdoor Did Not Violate The Exclusivity Section And Is Entitled To Summary Judgment On Plaintiff's Breach Of Contract Claim ............................7

        1.    The Exclusivity Section Did Not Prevent Outdoor From Negotiating A Sale Of Its Own Stock With KSE .......................................7

        2.    The Term Sheet Did Not Prevent Outdoor From Selling Or Transferring Its Own Stock Or Require It To "Carve Out" The Aerial Camera Business From Its Transaction With KSE.......................12

        3.    Outdoor Never Negotiated With Anyone Except Plaintiff And PNC In Relation To An Acquisition Of The Aerial Camera Business ................................................................................................14

        4.    Outdoor Was Not Prohibited From Disclosing Plaintiff's Identity To KSE.................................................................................................15

        5.    Outdoor Did Not Grant KSE A "Veto" Right ..........................................16

        6.    Plaintiff Fails To Demonstrate That He Suffered Damages, Providing An Additional Ground On Which To Grant Summary Judgment To Defendants ..........................................................................17

    C.    Plaintiff Fails To Present Evidence Establishing A Triable Issue Of Fact As To His Tortious Interference Claim Against KSE ...........................................19

    D.    KSE Engaged In No Tortious Conduct Sufficient To Sustain Plaintiff's Tortious Interference With Prospective Business Relations Claim ......................21

    E.    Plaintiff Fails To Come Forward With Evidence Establishing That Defendants Knowingly Participated In A Breach Of Fiduciary Duty .................22

    F.    Plaintiff Fails To Show That Defendants Were "Unjustly Enriched" Through Fraud, Duress, Or The Taking Of An Undue Advantage ......................23

    G.    Plaintiff Lacks Sufficient Evidence To Sustain His Civil Conspiracy Claim...................................................................................................24

III. CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACS Investors, Inc. v. McLaughlin*,
  943 S.W.2d 426 (Tex. 1997)................................................................19

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*,
  124 S.W.3d 154 (Tex. 2003)...............................................................11

*BMC Software Belgium, N.V. v. Marchand*,
  83 S.W.3d 789 (Tex. 2002).................................................................4

*Cano v. State Farm Lloyds*,
  276 F. Supp. 3d 620 (N.D. Tex. 2017) ...............................................25

*Capital Parks, Inc. v. S.E. Adver. & Sales Sys., Inc.*,
  30 F.3d 627 (5th Cir. 1994) ..................................................1, 5, 12

*Davis-Lynch, Inc. v. Moreno*,
  667 F.3d 539 (5th Cir. 2012) ..............................................................24

*Docudata Records Mgmt. Servs., Inc. v. Wieser*,
  966 S.W.2d 192 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)..................................2, 5

*Engel v. Teleprompter Corp.*,
  703 F.2d 127 (5th Cir. 1983) ..............................................................5

*Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*,
  111 S.W.3d 669 (Tex. App.—Austin 2003, no pet.) ...........................11

*Hunn v. Dan Wilson Homes, Inc.*,
  Civil Action No. 5:12-CV-081-C, 2013 WL 12128677 (N.D. Tex. Sept. 23,
  2013) ..................................................................................................25

*Illinois Tool Works, Inc. v. Harris*,
  194 S.W.3d 529 (Tex. App. 2006)..................................................11, 13

*United States ex rel. Johnson v. Kaner Med. Grp., P.A.*,
  No. 4:12-cv-757-A, 2015 WL 631654 (N.D. Tex. Feb. 12, 2015)...........................1

*Kern v. Taser Int'l, Inc.*,
  Civil Action No. 4:07-CV-320-Y, 2008 WL 11429558 (N.D. Tex. Nov. 5,
  2008) ..................................................................................................23

*Koch Indus., Inc. v. Sun Co., Inc.*,
  918 F.2d 1203 (5th Cir. 1990) ............................................................17

*New York Life Ins. Co. v. Miller*,
    114 S.W.3d 114 (Tex. App.—Austin 2003, no pet.) ............................................................19

*Osborn v. Bell Helicopter Textron, Inc.*,
    828 F. Supp. 446 (N.D. Tex. 1993) .................................................................................20

*Sitaram v. Aetna U.S. Healthcare of North Texas, Inc.*,
    152 S.W.3d 817 (Tex. App.—Texarkana 2004, no pet.) ..........................................................4

*Tenneco, Inc. v. Ent. Prods. Co.*,
    925 S.W.2d 640 (Tex. 1996)........................................................................................ *passim*

*Topalian v. Ehrman*,
    954 F.2d 1125 (5th Cir. 1992) ...................................................................................2, 22

**Rules**

Fed. R. Evid. 702 ...........................................................................................................18

## I.       INTRODUCTION

Despite the volume of briefing and evidence in the record,[1] this is a simple contracts case.  Plaintiff entered into a non-binding (with the exception of a 45-day exclusive negotiation provision that expired on April 15, 2013) Term Sheet with Defendant Outdoor Channel Holdings, Inc. ("Outdoor") to potentially purchase two of Outdoor's wholly owned subsidiaries, SkyCam LLC and CableCam LLC (together, the "Aerial Camera Business").  That deal never came to fruition.  In addition, the stock of Outdoor as a whole was acquired on May 17, 2013 by a subsidiary of Defendant Kroenke Sports and Entertainment, LLC ("KSE," together with Outdoor, "Defendants").  Plaintiff alleges that as a result of the acquisition of all Outdoor stock and the merger of Outdoor into the KSE subsidiary: (1) Outdoor breached an obligation under the Term Sheet to negotiate exclusively with him (and his then-partner Pacific Northern Capital, LLC ("PNC")) for the sale of the Aerial Camera Business; and (2) as a result of or related to that breach, Defendants committed several torts.

But the undisputed evidence and unavoidable law show that all of Plaintiff's claims fail for a simple reason: Outdoor (a publicly traded company) was entirely within its rights—under the Term Sheet and otherwise—to contract with KSE in connection with the sale of stock and merger of the parent company, and Defendants' conduct was entirely proper.  Texas law is plain that the acquisition of a parent company such as Outdoor does not constitute a sale of the parent's assets, such as wholly owned subsidiaries like the Aerial Camera Business.  *See Capital Parks, Inc. v. S.E. Adver. & Sales Sys., Inc.*, 30 F.3d 627, 628–29 (5th Cir. 1994) (explaining that acquisition of parent is transfer of control, not ownership, of subsidiary); *see also Tenneco, Inc.*

---

[1] *See, e.g.*, *United States ex rel. Johnson v. Kaner Med. Grp., P.A.*, No. 4:12-cv-757-A, 2015 WL 631654, at *5 (N.D. Tex. Feb. 12, 2015) ("The large volume of summary judgment evidence adduced by plaintiff does not change the fact that there is no summary judgment evidence that would support a finding that defendants [are liable to plaintiff].").

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.'s Reply In Support Of
Their Motion For Summary Judgment                                                          1

*v. Ent. Prods. Co.*, 925 S.W.2d 640, 645 (Tex. 1996) (citations omitted) ("The purchaser of stock

in a corporation does not purchase any portion of the corporation's assets[.]"); *Docudata Records*

*Mgmt. Servs., Inc. v. Wieser*, 966 S.W.2d 192, 197 (Tex. App.—Houston [1st Dist.] 1998, pet.

denied) ("A purchase of stock in a corporation does not constitute a purchase of the corporate

assets.  . . .  Similarly, a sale of all the stock in a corporation does not constitute a sale of the

[corporate] assets.").  In short, this case and Plaintiff's theory was baseless from the start.

Likewise, Plaintiff's attempts to conjure material fact issues where none exist, either by

making factual assertions that lack evidentiary support or by highlighting immaterial facts, fall

flat.  To provide one notable example, Plaintiff insists repeatedly that KSE played a part in the

execution of a March 21, 2013 letter signed by Outdoor and PNC purporting to extend the Term

Sheet's exclusivity period (the "March 21 Letter"), which Plaintiff claims would have given KSE

the right to "veto" an agreement between Outdoor and Plaintiff for the sale of the Aerial Camera

Business.[2]  (*See* ECF #263, Plaintiff's Response In Opposition To Defendants' Motion For

Summary Judgment ("Response") at 39, 44).  This assertion, which forms the basis of Plaintiff's

tortious interference claims against KSE, has been refuted by hard evidence.  (*See* ECF #244,

Brief In Support Of Defendants' Motion For Summary Judgment ("Brief") at 12–13 (showing

KSE had no involvement in March 21 Letter).  Yet Plaintiff, citing no evidence, still clings to it

as dispositive.  It is not—the Fifth Circuit requires more than a party's baseless assertions to

create a triable issue of fact.  *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

At bottom, this suit is the result of Plaintiff's disappointment at his inability to acquire the

Aerial Camera Business.  But Plaintiff's missed opportunities are not actionable.  The undisputed

---

[2] Plaintiff refers to the March 21 Letter in his Response as the "March 21, 2013 Amendment."
However, both Plaintiff and Defendants agree that because Plaintiff did not sign the document, it
lacked any legal effect and did not amend the Term Sheet.

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.'s Reply In Support Of
Their Motion For Summary Judgment                                                                  2

evidence shows that, at all times, Defendants acted lawfully and within their contractual rights. On that basis, and for the reasons set out in their Motion For Summary Judgment (ECF #243) and accompanying Brief, Defendants ask the Court to grant summary judgment and dismiss Plaintiff's claims in their entirety.  It is time for this case to end.

## II.    ARGUMENT

### A.    PLAINTIFF'S BREACH OF CONTRACT THEORY IS REFUTED BY TEXAS AND FIFTH CIRCUIT LAW

Plaintiff's case is founded upon alleged breaches by Outdoor of the February 27, 2013 Term Sheet's Exclusivity provisions.  But the provisions' plain language clarify that the Exclusivity section prevented Outdoor only from engaging in activities during a 45-day period involving or relating to a third party's effort to acquire the Aerial Camera Business.  More specifically, the Exclusivity section precluded Outdoor during the limited exclusivity period from selling or agreeing to sell "any equity or debt interest (including any new issue of debt or equity) in any part of the [Aerial Camera Business] to any other party than Purchaser [i.e., Plaintiff and PNC] or its nominee."  (*See* Exhibit In Support Of Defendants' Motion For Summary Judgment ("Def's Ex.") A-2, App. 034).  It also prohibited Outdoor during that period from engaging or continuing in discussions, negotiations, or correspondence relating to such a sale of the Aerial Camera Business to a third party.  (*Id.*)  Thus, to establish a breach of the Exclusivity section Plaintiff must provide evidence that Outdoor sold the Aerial Camera Business to someone else or discussed such a sale with someone other than Plaintiff during the exclusivity period.  Plaintiff points to no such evidence in his Response because ***none exists***.

In fact, Outdoor fully complied with the Exclusivity provisions of the Term Sheet. Outdoor never sold the Aerial Camera Business to anyone; the Aerial Camera Business remained a wholly-owned subsidiary of Outdoor throughout the exclusivity period and long after.  (Brief at

15–16).   Outdoor also never negotiated or discussed a potential sale of the Aerial Camera Business with anyone other than Plaintiff and PNC during the exclusivity period.  (*Id.* at 23). [3]

As a result, Plaintiff attempts to argue that KSE's acquisition of ***Outdoor***, the Aerial Camera Business' ***parent company***, should be deemed an acquisition of the Aerial Camera Business in violation of the Exclusivity section.  (Response at 29–32).  Plaintiff further contends that Outdoor's discussions and negotiations with KSE regarding that transaction also represent violations of the Term Sheet's Exclusivity provisions.  (Response at 25–29).  This position, however, cannot be reconciled with Fifth Circuit and Texas law.

Plaintiff tries to avoid the fatal flaw in his legal theory first by accusing Defendants of "elevat[ing] form over substance" and "play[ing] a corporate shell game."  (Response at 25).  Such bold assertions are flatly rejected by Texas law, which—of course—"recognize[s] the separate identities of corporations even when one corporation dominates or controls another." *Sitaram v. Aetna U.S. Healthcare of North Texas, Inc.*, 152 S.W.3d 817, 825 (Tex. App.—Texarkana 2004, no pet.) (citing *Pulaski Bank and Trust Co. v. Texas American Bank/Fort Worth, N.A.*, 759 S.W.2d 723, 731 (Tex. App.—Dallas 1988, writ denied); *see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002).

---

[3] Relatedly, Plaintiff's argument that Outdoor was not permitted under the Term Sheet to terminate negotiations with Plaintiff and PNC at any time and for any reason is wrong.  (*See* Response at 24).  Plaintiff also falsely tells the Court that Defendants have argued that because Outdoor was free to terminate negotiations under the Term Sheet, it was "therefore not bound by the Exclusivity Provision."  (*Id.*)  Defendants have made no such argument.  Indeed, the undisputed evidence is that Outdoor remained willing to negotiate with Plaintiff and PNC even after the expiration of the exclusivity period.  (*See* Brief at 9, 32).  Furthermore, "except as expressly set forth above" language in the Term Sheet's Non-Binding section that Plaintiff emphasizes does nothing to advance or support his position.  (Response at 24).  He points to no language "set forth above" in the Term Sheet that would impose on Outdoor an obligation to reach an agreement with Plaintiff and PNC.  (*Id.*)

Moreover, Plaintiff fails to show how his claims can survive in light of the decisions in *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627 (5th Cir. 1994), *Engel v. Teleprompter Corp.*, 703 F.2d 127 (5th Cir. 1983), *Tenneco Inc. v. Enterprise Products Co.*, 925 S.W.2d 640 (Tex. 1996), and *Docudata Records Management Services, Inc. v. Weiser*, 966 S.W.2d 192 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  These cases each stand for the proposition that under Texas law, the sale or transfer of stock in a corporation will not be treated as the sale or transfer of ownership in assets, including wholly-owned subsidiaries, held by that corporation.  *See, e.g.*, *Capital Parks*, 30 F.3d at 629 (holding that third party's offer to acquire the defendant corporation was not an offer to acquire the defendant's wholly-owned subsidiary).  Accordingly, under *Capital Parks* et al., an acquisition of Outdoor stock is not an acquisition of Outdoor's assets or subsidiaries, including the Aerial Camera Business.  These cases are not distinguishable from the present case in any meaningful way and Plaintiff's halfhearted effort to prove otherwise is incorrect and unconvincing.

To the extent Plaintiff addresses these cases, his primary argument seems to be that the Term Sheet's Exclusivity section is somehow broader than the relevant contractual language in cases such as *Capital Parks* and *Tenneco.*  He claims that the contractual rights in those cases "required a sale of all assets to be triggered."  (Response at 26).  This is demonstrably incorrect.

Defendants described the facts and holding of *Capital Parks* (as well as the similar *Docudata* case) in their opening Brief.  (Brief at 1, 19).  As explained, the defendant in *Capital Parks* granted the plaintiff a right of first refusal as to its wholly-owned subsidiary, Waco.  Specifically, the plaintiff and defendant agreed that the plaintiff would have a right of first refusal "with respect to the purchase of all the issued and outstanding capital stock or substantially all of the operating assets of [Waco]."  *Capital Parks*, 30 F.3d at 628.  Plaintiff

provides no argument as to how this broad contract language prohibiting the transfer of the subsidiary's stock or assets is meaningfully distinguishable from the language of the Exclusivity provisions of the Term Sheet.

The relevant contract language in *Tenneco* was even broader. *Tenneco* involved a natural gas liquids fractionation plant that was jointly owned and operated by several different petroleum companies. 925 S.W.2d at 641–42. The plant was governed by an operating agreement, under which each of the plant's owners agreed to make its ownership share of the plant available to the other co-owners before selling to a non-owner. *Id.* at 642. Specifically, the operating agreement's preferential right to purchase clause was triggered when "any Owner should desire ***to sell, transfer or assign all or any part of its Ownership Interest***" in the plant. *Tenneco*, 925 S.W.2d at 644 (emphasis added). Thus, any type of disposition of the asset, in whole or in part, would trigger the preferential right to purchase clause. Plaintiff cannot reasonably claim that the language of the Exclusivity provisions is broader.

Despite the breadth of the preferential right to purchase clause, the *Tenneco* court concluded that it was not implicated when the stock of a holder of an ownership interest was sold to a third party, particularly since the holder of the ownership interest continued to hold the ownership interest in the plant after the stock sale (just as Outdoor continued as the parent of the Aerial Camera Business after its stock was acquired by the KSE subsidiary) As the Texas Supreme Court noted, "the purchaser of stock in a corporation does not purchase any portion of the corporation's assets." *Id.* at 645 (quoting *McClory v. Schneider*, 51 S.W.2d 738, 748 (Tex. App.—Amarillo 1932, writ dismissed) (quotation marks omitted)). Thus, "[t]he transaction was not . . . a transfer of . . . ownership interest" in the plant, the stock transfer did not violate the operating agreement, and the defendants were entitled to summary judgment. *Id.* at 645–47.

The circumstances in this case are no different and the Court should reach the same conclusion as the Texas Supreme Court did in *Tenneco*.  Just as the holder of the ownership interest in the plant in *Tenneco* retained that interest even after the sale of its stock, so too did Outdoor retain ownership of the Aerial Camera Business even after the May 17, 2013 transaction with KSE.  (Brief at 15–16).  And just as the *Tenneco* court decided that the operating agreement in that case had not been violated, so too should this Court conclude that the KSE-Outdoor transaction did not violate the Exclusivity section, however broadly Plaintiff would construe it.

**B.**    **OUTDOOR DID NOT VIOLATE THE EXCLUSIVITY SECTION AND IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM**

Based on the foregoing, it is clear that Plaintiff cannot sustain any of his alleged breach of contract claims against Outdoor, each of which are based on KSE's acquisition of Outdoor stock and the discussions between Outdoor and KSE relating to that transaction.  (*See* Response at 22–24).  Nevertheless, Plaintiff insists that his claims should survive summary judgment, based mostly on his strained interpretation of the Term Sheet's Exclusivity provisions.  Defendants demonstrated the absurdity of Plaintiff's interpretation in their opening Brief and address Plaintiff's unconvincing responses to those arguments below.

**1.**    **The Exclusivity Section Did Not Prevent Outdoor From Negotiating A Sale Of Its Own Stock With KSE**

Plaintiff argues that Outdoor violated section A(ii) of the Exclusivity section by purportedly negotiating or corresponding with KSE in relation to an unsolicited offer to acquire an equity interest or any part of the Aerial Camera Business.  (Response at 25–29).  This claim relies entirely on Outdoor's and KSE's negotiations and discussions concerning KSE's unsolicited offer to acquire *Outdoor*.  Yet as Defendants have explained, KSE's acquisition of *Outdoor* stock cannot be treated as the acquisition of an equity interest in the Aerial Camera

Business.  *See supra* Section II.A.   Thus, Defendants are entitled to summary judgment on Plaintiff's claim that Outdoor violated section A(ii) of the Exclusivity section.

Plaintiff tries to save his breach of contract claims by urging that the Court adopt his mistakenly expansive reading of the Exclusivity section, based largely on the presence of the word "indirectly."   He argues that section A(ii) of the Exclusivity section prevented Outdoor from engaging in negotiations relating to a third party's offer to "indirectly" acquire the Aerial Camera Business, and that KSE's offer to acquire Outdoor qualified as such an offer.  (Response at 26).  In addition to the fact that Plaintiff's argument flies in the face of Fifth Circuit and Texas law, as explained above, Plaintiff's reading is incorrect and finds no support in the actual words of the Term Sheet.  As explained in Defendants' opening Brief, the logical and straightforward reading of section A of the Exclusivity section is that the adverbs "directly" and "indirectly" modify only those verbs at the beginning of subsections A(i)–(iii).  (Brief at 23–24).  Thus, in the case of section A(ii), Outdoor was not allowed during the 45-day exclusivity period to either directly or indirectly "negotiate" or "correspond" with third parties regarding offers to acquire the Aerial Camera Business.  In other words, Outdoor could not speak directly to third parties about an acquisition of the Aerial Camera Business, nor could it do so "indirectly," such as through an intermediary like Noble Capital Markets (the investment bank retained by Outdoor to assist with the potential sale of the Aerial Camera Business) or any other kind of deal broker.

Plaintiff argues that this interpretation "makes no sense" and begs the question, "direct or indirect negotiations for what?"  (Response at 27).  The simple and obvious answer is that the purpose of "directly or indirectly" is not to clarify ***what*** Outdoor was prohibited from negotiating or corresponding about, but ***how***.  As explained, subsection A(ii) prevented Outdoor from "directly" negotiating with a third party as to the prohibited subject matter, and also from

"indirectly" negotiating through an intermediary.  As to Plaintiff's question, what was Outdoor prohibited from directly or indirectly negotiating about?  (Response at 27).  The answer is exactly what the Exclusivity section says:  Outdoor could not negotiate in relation to "existing or unsolicited offers to acquire the equity or debt interest or any part of the businesses of Skycam or Cablecam."  (Def's Ex. A-2, App. 034).  Thus, there is nothing nonsensical about Defendants' reading of the Exclusivity section's plain language.[4]

Indeed, Defendants' reading of the contract is further enforced by section B of the Exclusivity section.  That provision contains similar language to section A(ii), and states that Outdoor would "cease any negotiations, discussions or correspondence which they are having, whether directly or indirectly, in relation to the potential acquisition of an equity or debt interest in the [Aerial Camera Business]."  (Def's Ex. A-2, App. 034).  Here it is even clearer from the syntax and structure of the sentence that the words "directly" and "indirectly" were intended to modify only the verbs in the preceding clause, and not the remainder of the sentence.  This demonstrates that while the parties intended to prohibit "indirect" "negotiations, discussions or correspondence," they did not intend to prohibit such activities in relation to "indirect" acquisitions of the Aerial Camera Business (whatever that would mean).

Plaintiff goes on to argue that Defendants' interpretation of the Exclusivity section would render it meaningless and lead to an absurd result.  (Response at 27–28).  He claims that under Defendants' interpretation, "Outdoor need only use a third party intermediary" to avoid its obligations under the Exclusivity Section.  (*Id.*)  Plaintiff misconstrues Defendants' position completely.  Defendants ***expressly acknowledged*** in their opening Brief, as they do above, that

---

[4] In fact, Plaintiff's reading would render the otherwise clear language of the Exclusivity provisions nonsensical and raise a host of questions.  In particular, Plaintiff's interpretation would "beg the question" of what it would mean to "indirectly acquire" the Aerial Camera Business.

"the Exclusivity section prevented Outdoor from 'indirectly' negotiating or discussing an acquisition of the Aerial Camera Business with a third party, through an intermediary like Noble." (Brief at 24). Defendants' construction thus gives full effect to each word in the Exclusivity section and without leading to any absurd results.

Indeed, it is Plaintiff's interpretation of the Exclusivity section that would result in absurdity. This is demonstrated by the fact that under Plaintiff's construction, which would bar Outdoor from selling its own stock and from engaging in discussions relating to such a sale, Outdoor was in breach of the Exclusivity section the moment it signed the Term Sheet, given that Outdoor and InterMedia were then currently engaged in merger discussions. (Brief at 25). Outdoor would not and did not intend such a result.

Plaintiff responds to this by claiming that "the InterMedia merger excluded the Aerial Camera Business." (Response at 28). This statement remains untrue no matter how many times Plaintiff repeats it. To support this contention Plaintiff points to the February 2013 Proxy Statement. (*Id.*) But that document does nothing more than indicate that Outdoor was "exploring strategic alternatives" for the Aerial Camera Business and notes expressly that that process was "still ongoing." (Def's Ex. A-15, App. 219). Indeed, neither the February 2013 Proxy Statement nor any other document imposed a binding commitment on Outdoor to "carve out" the Aerial Camera Business from the deal with InterMedia.

Plaintiff also makes the confusing assertion that Defendants' argument regarding the InterMedia merger "is a red herring because there is no allegation in this lawsuit that any aspect of the InterMedia merger or its subsequent bids do, or do not, constitute a breach of the Term Sheet." (Response at 28). That Plaintiff's claims are not based on the InterMedia merger is entirely beside the point. As Plaintiff himself acknowledges, courts must construe contracts to

avoid absurd results.  (*See* Response at 27–28).[5]  Defendants refer to Outdoor's agreement and discussions with InterMedia not because they are part of Plaintiff's claims, or to ask the Court "to provide an advisory opinion," but to demonstrate that Plaintiff's interpretation of the Term Sheet is absurd and untenable.[6]

Finally, Plaintiff asks that if the Court determines not to reject Defendants' interpretation of the Term Sheet's Exclusivity section, then it should conclude that it is ambiguous and presents a question of fact that should be submitted to the jury.  (Response at 29).  As Defendants have demonstrated here and in their opening Brief, the Exclusivity section of the Term Sheet is not ambiguous.  That Plaintiff now claims to have had a different subjective understanding of the Term Sheet's meaning is irrelevant.  *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 675 (Tex. App.—Austin 2003, no pet.) (holding that a contract's meaning is based on "the objective, not subjective, intent" of the parties).  Moreover, just because Plaintiff insists that the Exclusivity section means something other than what the plain language indicates does not create an ambiguity or issue that must be decided by the jury.  *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) ("An ambiguity does not arise simply because the parties offer conflicting interpretations.").  Rather, the Court can and should determine the meaning of the Exclusivity section as a matter of law and conclude that it does not support Plaintiff's claims.

---

[5] In *Illinois Tool Works*, the very case cited by Plaintiff to support this point, the defendant described two absurd hypothetical outcomes that would result from the plaintiff's interpretation of the contract at issue in that case.  *Illinois Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 536 (Tex. App. 2006).  Notwithstanding the fact that those hypothetical situations were not the basis for the plaintiff's claims, the court agreed they were absurd outcomes and therefore rejected the plaintiff's reading of the contract.  *Id.* at 537.  This case is no different.

[6] For the same reasons, Plaintiff's response to Defendants' argument regarding the Outdoor Board's fiduciary duties is baseless.  The point is not whether, as a factual matter, Outdoor considered fiduciary duties when negotiating the Term Sheet.  The point is that it would be absurd to believe that Outdoor would agree to terms forcing Outdoor's Board to choose between fulfilling its duties to Outdoor's shareholders and complying with the Term Sheet.

2.  **The Term Sheet Did Not Prevent Outdoor From Selling Or Transferring Its Own Stock Or Require It To "Carve Out" The Aerial Camera Business From Its Transaction With KSE**

As to Plaintiff's claim that Outdoor "sold or agreed to sell" the Aerial Camera Business to KSE and thereby breached the Exclusivity section, this too is refuted by the fact that Outdoor agreed only to a sale of its own stock, not the Aerial Camera Business.  There is no dispute that Outdoor never sold the Aerial Camera Business to anyone and that the Aerial Camera Business entities remained wholly-owned subsidiaries of Outdoor, even after the transaction with KSE on May 17, 2013.  The holdings in cases such as *Capital Parks* and *Tenneco* therefore conclusively establish that Outdoor did not violate the Exclusivity section.

Nevertheless, Plaintiff persists that by failing to "carve out" the Aerial Camera Business from its deal with KSE, Outdoor violated the Exclusivity section.  (Response at 30).  He contends that KSE's acquisition of Outdoor amounted to an "indirect" sale of the Aerial Camera Business, in violation of section A(iii) of the Exclusivity section.  (*Id.*)  Yet this argument finds no support in the law or the facts of this case.

*First*, Plaintiff cannot avoid the holdings in *Capital Parks* and *Tenneco* simply by pointing to the word "indirectly" in the Exclusivity section.  Those cases make clear that the sale of a corporation's stock shall not in any way be construed as a transfer of ownership, in whole or in part, of assets held by that corporation.  *See, e.g.*, *Tenneco*, 925 S.W.2d at 645–46.  In fact, *Tenneco* described the kind of language that would be necessary to effect the kind of restrictions that Plaintiff would impose here.  *Id.* at 646.  If Plaintiff intended to prohibit any change of control or prevent Outdoor from selling its own stock, Plaintiff could have included such language in the Term Sheet that he and PNC drafted.  But he did not.

*Second*, Plaintiff returns again to his insupportable claim that the Aerial Camera Business was "carved out" of the InterMedia merger deal and that Outdoor was obligated to do the same

with respect to its transaction with KSE.  (Response at 30).  Neither assertion is true.  The February 2013 Proxy Statement said only that Outdoor *potentially* would sell the Aerial Camera Business, but that the process was "still ongoing."  (Def's Ex. A-15, App. 219).  The Proxy Statement could not and did not obligate Outdoor to sell the Aerial Camera Business to anyone. (*Id.*)  Likewise, Plaintiff points to no language in the Term Sheet imposing a carve out requirement.[7]

*Third*, to demonstrate how unworkable Plaintiff's interpretation of the Exclusivity section is, Defendants offered the hypothetical that under Plaintiff's view Outdoor would have breached the contract by issuing or selling any amount of its own stock during the limited exclusivity period.  (Brief at 27–28).  Section A(iii) prohibited Outdoor from selling or issuing stock in the Aerial Camera Business.  (Def's Ex. A-2, App. 034).  Under Plaintiff's reading, this restriction on stock sales or issuances also applies to Outdoor's own stock.  Plaintiff counters first by calling this a "straw man" argument (Response at 31), but in doing so disregards his own case law in which the court considered and accepted hypothetical scenarios to avoid interpreting a contract in a way that would lead to absurd results.  *See Illinois Tool Works*, 194 S.W.3d at 536–37.  Next, Plaintiff claims that a "de minimis" sale of Outdoor shares would not have breached the Exclusivity section, but fails to explain what would qualify as "de minimis" or how his interpretation leaves any room for making such a distinction.  (Response at 31).  He then concludes by stating that "the sale of Outdoor to KSE granted control to KSE to determine the fate of the Aerial Camera Business."  (*Id.*)  It is unclear what Plaintiff's point is here given that the Exclusivity section says nothing about "control" or "determin[ing] the fate of the Aerial Camera Business."  (Def's Ex. A-2, App. 034).  Once again, if Plaintiff intended the Term Sheet

---

[7] Plaintiff also fails to explain how, as a practical matter, a publicly traded company such as Outdoor would go about "carving out" two wholly-owned subsidiaries from a sale of its stock.

to cover changes in control, he could have tried to include language to that effect in the Term Sheet that he drafted.  *See Tenneco*, 925 S.W.2d at 646 (refusing to "rewrite agreements to insert provisions parties could have included or to imply restrains for which they have not bargained").

For all of these reasons, Plaintiff fails to demonstrate that he can present any evidence on which a jury could conclude that Outdoor sold the Aerial Camera Business to KSE in violation of the Exclusivity section.  Therefore, summary judgment should be granted to Defendants.

### 3. Outdoor Never Negotiated With Anyone Except Plaintiff And PNC In Relation To An Acquisition Of The Aerial Camera Business

Plaintiff's claim that Outdoor breached section B of the Exclusivity section by "failing to cease negotiations or discussions with KSE" is substantially the same as his claim that Outdoor violated section A(ii) and fails for the same reasons.  (Response at 32).  Section B required Outdoor during the 45-day exclusivity period to "cease any negotiations, discussions or correspondence which they are having, whether directly or indirectly, *in relation to the potential acquisition of an equity or debt interest in the [Aerial Camera Business]* by any other party than [Plaintiff and PNC]."  (Def's Ex. A-2, App. 034).  The meaning of this provision is clear: Outdoor was required to discontinue any negotiations it may have been having regarding a potential acquisition of the Aerial Camera Business by anyone other than Plaintiff and PNC.  As discussed above, KSE's acquisition of Outdoor stock was not an acquisition of the Aerial Camera Business, and therefore Outdoor's and KSE's discussions and negotiations related to that transaction were not "negotiations, discussions or correspondence . . . in relation to the potential acquisition of an equity or debt interest in the [Aerial Camera Business]."  *See supra* Section II.A.  Thus, Plaintiff cannot sustain this alleged breach of section B of the Exclusivity section.

### 4.      Outdoor Was Not Prohibited From Disclosing Plaintiff's Identity To KSE

Plaintiff contends that Outdoor violated the Exclusivity section by disclosing his identity and the existence of the Term Sheet to KSE during the course of negotiations concerning KSE's acquisition of Outdoor.  Plaintiff falsely claims that Defendants failed to "make any argument addressing these breaches." (Response at 33).  To the contrary, Defendants showed in their Brief that Plaintiff's breach of contract claim is based on the same flawed reading of the Term Sheet as his other breach of contract claims—a reading that the language of the Exclusivity section and the law do not support.  (Brief at 29–30).

Plaintiff's claim that Outdoor was prohibited from disclosing Plaintiff's identity, or any other information about Outdoor's negotiations with him regarding the Aerial Camera Business, is based on sections A(ii) and B of the Exclusivity section.  (*See* Response at 33).   But as previously explained, the meaning that Plaintiff ascribes to those provisions is far too broad. Section A(ii) describes how Outdoor was to conduct "negotiat[ions] or correspond[ence] with third parties in relation to existing or unsolicited officers to acquire . . . [the Aerial Camera Business]." (Def's Ex. A-2, App. 034).  Outdoor and KSE never engaged in such negotiations relating to an acquisition of the Aerial Camera Business and thus this section's prohibition on disclosure of Plaintiff's identity is inapplicable.[8]   Likewise, section B by its terms required Outdoor only to cease negotiations relating to a potential acquisition of the Aerial Camera Business with "any other party than [Plaintiff and PNC]" and required Outdoor to advise "***any such parties***" that it was engaged in discussions with another party without disclosing Plaintiff's

---

[8] Indeed, when a third party did approach Outdoor during the exclusivity period about acquiring the Aerial Camera Business, Outdoor complied with the Exclusivity section to the letter.  On the same day that the Term Sheet was signed another interested buyer urged Outdoor to consider their offer to acquire Skycam, to which Outdoor responded that it had "entered into an exclusivity arrangement with another party" and that Outdoor was "not able to discuss anything further."

and PNC's identity.  (Def's Ex. A-2, App. 034).  KSE never expressed any interest in acquiring the Aerial Camera Business, and therefore was not "any such party."  Accordingly, this alleged breach of the Exclusivity section also lacks any merit and summary judgment should be granted.

### 5.    Outdoor Did Not Grant KSE A "Veto" Right

Lastly, Plaintiff argues that Outdoor violated the Exclusivity section by granting KSE the right to "veto" a sale of the Aerial Camera Business to Plaintiff and PNC.  This argument fails for several reasons.  *First*, Plaintiff's argument for how these alleged activities relating to the March 21 Letter serve as violations of the Exclusivity section is tenuous at best.  Plaintiff offers the vague contention that Outdoor's participation in the March 21 Letter violated "the spirit of the Exclusivity Provision."  (Response at 34).  He does not clarify what he means by "the spirit" of the Exclusivity section and cites only to his own declaration to support this statement.  (*See id.*).  Plaintiff then asserts that Outdoor's act of "inducing" PNC to sign the March 21 Letter "encouraged" KSE to acquire the Aerial Camera Business in violation of section A(i) of the Exclusivity section.  (*Id.*)  Plaintiff makes no effort to explain how the March 21 Letter "encouraged" KSE to do anything of relevance once KSE learned of the Letter's existence.

*Second*, as Defendants explained in their Brief, KSE never exercised any "veto" rights that it purportedly was granted by the March 21 Letter.  (Brief at 30–31).  Indeed, KSE was never presented with an agreement for the sale of the Aerial Camera Business to Plaintiff that it could "veto."  (*Id.* at 4).  Moreover, the undisputed evidence is that KSE would have consented to such a sale if Outdoor and Plaintiff had reached an agreement.  (*Id.* at 14).  Thus, Plaintiff's claim that KSE's "failure to consent . . . infected the entire negotiation process" is baseless.  (Response at 34).

*Finally*, Plaintiff and Defendants both agree that the March 21 Letter was without any legal effect absent Plaintiff's signature.  (*See* Brief at 11–12).  But conspicuously absent from

Plaintiff's argument is any explanation of how a dead letter document, purportedly granting "veto" rights to KSE that never were exercised, can give rise to legal liability for Outdoor under the Exclusivity section.  Plaintiff claims, without reference to any legal authority or provision of the Term Sheet, that it was the "mere consent to giving KSE a right under the Term Sheet that did not exist prior thereto that violated the Exclusivity Provision."  (Response at 34).  The Court should reject Plaintiff's attempt to once again invent restrictions on Outdoor that have no basis in the actual language of the Term Sheet.

### 6.    Plaintiff Fails To Demonstrate That He Suffered Damages, Providing An Additional Ground On Which To Grant Summary Judgment To Defendants

Defendants demonstrated in their Motion For Summary Judgment that even if Plaintiff were able to show that Outdoor breached the Exclusivity section—and he cannot—summary judgment still would be appropriate because Plaintiff cannot demonstrate that he suffered damages as a result of the alleged contract violations.  (Brief at 31–33).  Damages for breach of contract are intended to place the injured party in the same position it would have been had the defaulting party performed the contract.  *See Koch Indus., Inc. v. Sun Co., Inc.*, 918 F.2d 1203, 1214 (5th Cir. 1990).  Here, the Term Sheet was not a contract for the sale of the Aerial Camera Business to Plaintiff—it merely gave Plaintiff the opportunity to negotiate exclusively for a limited time with Outdoor regarding such a sale.  Plaintiff's rights under the Term Sheet are similar to those of an option-holder; thus, to recover the damages that he claims, he must show that he and PNC were ready, willing, and able to reach an agreement with Outdoor and see the agreement through to closing.  *See id.* at 1214 ("option holders who cannot prove that they had the financial ability to pay for the subject property at the time of the owner's breach" cannot recover damages).

There is no evidence that Outdoor and Plaintiff would have reached an agreement on a sale of the Aerial Camera Business.  To the contrary, the uncontroverted evidence shows that Plaintiff and PNC never reached an agreement between themselves on how the deal would be financed, let alone agree with Outdoor on the terms of such an acquisition.  (Brief at 32).  A PNC representative provided undisputed testimony that at the end of the day, PNC was not willing to fund the entire purchase price of the Aerial Camera Business and that Plaintiff and PNC had not been able to find additional investors.  (*See id.*).

Plaintiff's claim that Outdoor and KSE are to blame for Plaintiff's and PNC's failure to reach an agreement between themselves as to financing, or with Outdoor on the terms of a final asset purchase agreement, is false.  Plaintiff points repeatedly to an email from Tom Hornish to PNC describing KSE as a "gating item" and that if KSE provided consent to an agreement then Outdoor would try to close on the deal as soon as possible.  (Response at 37).  But while Plaintiff would hold KSE responsible for his failure to reach an agreement with Outdoor, he fails to explain how KSE could consent to an agreement that it was never presented with.  Plaintiff's argument that Outdoor permitted KSE to "hijack" negotiations belies all the evidence showing that KSE refused to insert itself into the negotiations between Plaintiff and Outdoor.  (Brief at 14).  Plaintiff could have presented Outdoor with a final asset purchase agreement to which KSE could provide consent.  There is no evidence that KSE did anything to prevent Plaintiff from doing so and the evidence demonstrates that Outdoor remained willing to negotiate with Plaintiff.  (*See* Brief at 9, 32).  That Plaintiff now wishes he had proceeded in this way does not give rise to damages or a viable cause of action.

Further, as explained in Defendants' motion under Federal Rule Of Evidence 702 to exclude the testimony of Plaintiff's expert witness, Plaintiff's claim that compensation he lost as

a consequence of being terminated from his position for poor performance nearly a year *after* KSE's acquisition of Outdoor is entirely speculative.  (*See* ECF #247 at 4–9).  Plaintiff cannot demonstrate that such damages were the foreseeable result of any purported breach of the Exclusivity section by Outdoor.  (*Id.* at 8–9).

Plaintiff's failure to demonstrate a cognizable injury resulting from the Exclusivity section violations he alleges against Outdoor thus provides an alternative ground on which to grant summary judgment to Defendants on Plaintiff's breach of contract claim.

## C.   PLAINTIFF FAILS TO PRESENT EVIDENCE ESTABLISHING A TRIABLE ISSUE OF FACT AS TO HIS TORTIOUS INTERFERENCE CLAIM AGAINST KSE

Defendants are entitled to summary judgment on Plaintiff's tortious interference claim for the simple reason that he cannot demonstrate that Outdoor violated the Exclusivity section of the Term Sheet.  Texas courts have held repeatedly that "inducing a contract obligor to do what it has a right to do is not actionable interference."  *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App.— Austin 2003, no pet.).  So even if Plaintiff had evidence showing that KSE "induced" Outdoor to do anything, his tortious interference claim still would fail absent a showing that KSE induced Outdoor to do something prohibited under the Exclusivity section of the Term Sheet.  Because Plaintiff cannot show that Outdoor did anything that it did not have "a right to do," his tortious interference claim must be rejected.  *See New York Life*, 114 S.W.3d at 125–26 (granting judgment to defendant on tortious interference claim upon finding that plaintiff's contract was not breached).

Further, Plaintiff simply fails to provide evidence beyond his own bare assertions that KSE "interfered" with the Exclusivity section of the Term Sheet and caused Outdoor to violate its obligations under that agreement.  Plaintiff accuses KSE of "[holding] up the sale process,"

pointing again to the email from Tom Hornish to Jeff Holowaty in which he refers to KSE as the "the real gating item." (Response at 39). That email does nothing more than show that Outdoor and PNC were continuing to work towards an asset purchase agreement but with the understanding that KSE would need to approve the finalized deal. (Plaintiff's Ex. 45, App. 0183). As discussed, Plaintiff and PNC failed to reach an agreement with Outdoor on the terms of a sale, even though Outdoor remained willing to negotiate with Plaintiff and PNC (Brief at 9, 32), and therefore KSE never was given the opportunity to provide or withhold consent. In any case, Plaintiff again fails to explain how KSE prevented Plaintiff and PNC from negotiating with Outdoor or presenting final terms for an asset purchase agreement.

Plaintiff's so-called "evidence" that KSE was involved in the March 21 Letter is even more dubious. He does not present a single email or document that shows KSE had any knowledge of the March 21 Letter before its execution. (*See* Response at 39–41). Moreover, Defendants have presented evidence in the form of deposition testimony from both KSE and Outdoor personnel, who explained that KSE did not play any role in the preparation or execution of the March 21 Letter. (Brief at 12–13). In response, Plaintiff asks the Court to just assume that KSE was involved based only on an email between Outdoor and PNC that does not indicate that KSE was aware of the March 21 Letter. (Response at 39). To this Plaintiff adds only his bare, conclusory assertion that "[t]he fact that the [March 21 Letter] was even drafted is proof that KSE tortuously interfered with the contract at issue." (*Id.* at 41). Plaintiff's Response falls far short of what is required to avoid summary judgment. *See Osborn v. Bell Helicopter Textron, Inc.*, 828 F. Supp. 446, 448 (N.D. Tex. 1993) (holding that a party responding to a motion for summary judgment "must produce evidence, not merely argument, in response to a movant's

properly supported motion" and that "a mere scintilla of evidence is not sufficient to avoid summary judgment").

### D.   KSE Engaged In No Tortious Conduct Sufficient To Sustain Plaintiff's Tortious Interference With Prospective Business Relations Claim

Defendants are entitled to summary judgment on Plaintiff's tortious interference with prospective business relations claim because Plaintiff fails to demonstrate that KSE engaged in any actionable act of interference.  As Plaintiff acknowledges, this cause of action requires proof that KSE engaged in independently tortious conduct that prevented such an agreement from being reached.  (Response at 44 (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001)).  But Plaintiff fails to provide proof of any such tortious conduct.

Plaintiff points to KSE's alleged interference with an existing contract (i.e., the Exclusivity section of the Term Sheet) and alleged "aiding a breach of a fiduciary duty" as independently tortious acts on which his tortious interference with prospective business relations claim may be sustained.  (Response at 44).  Yet as Defendants demonstrated in their Brief and in this Reply, both claims lack merit.  With Plaintiff unable to point to any tortious conduct by KSE, his tortious interference with prospective business relations claim necessarily fails as well.

Indeed, Plaintiff's tortious interference with prospective business relations claim is merely another attempt to hold KSE liable for its purported involvement in a document that KSE was not even aware existed until after its execution.   Just like Plaintiff's other tortious interference claim and his "aiding a breach of fiduciary duty" claim, this cause of action is based on the March 21 Letter, which he describes as the "culminat[ion]" of KSE's purported effort to "subvert[ ] the planned sale of the Aerial Camera Business."   (Response at 44).   But as previously discussed, Defendants have demonstrated with voluminous, uncontroverted evidence

that KSE had no involvement in the preparation of that document.  Accordingly, there is no genuine dispute of fact as to this cause of action and summary judgment should be granted.

### E.   PLAINTIFF FAILS TO COME FORWARD WITH EVIDENCE ESTABLISHING THAT DEFENDANTS KNOWINGLY PARTICIPATED IN A BREACH OF FIDUCIARY DUTY

We return again to the March 21 Letter—a document which Plaintiff agrees lacked any legal effect and which Defendants never attempted to enforce, but which Plaintiff nevertheless claims irretrievably torpedoed his efforts to acquire the Aerial Camera Business.  (*See, e.g.*, Response at 37).  Here Plaintiff stacks another claim atop the March 21 Letter, this time in an effort to hold Defendants responsible for a decision that Plaintiff's business partner (PNC) made and with which Plaintiff disagreed.  Plaintiff purports to offer facts raising a "reasonable inference" that Defendants "encouraged and induced PNC to execute the [March 21 Letter] in an attempt to deprive Plaintiff of his rights under the Exclusivity Provision."  (Response at 45).  But in response to Defendants' evidence demonstrating that Outdoor did not intend to omit Plaintiff's signature from the March 21 Letter and that KSE was not involved in the Letter in any way (Brief at 12–13), Plaintiff offers only conclusory assertions lacking any evidentiary support.

Defendants have provided substantial record evidence, including the deposition testimony of the Outdoor personnel involved in preparing and signing the March 21 Letter, that Outdoor did not intentionally exclude Plaintiff from the Letter and that Outdoor attempted to fix the error upon realizing the mistake. (Brief at 41–42).  In response, Plaintiff claims without citing any evidence in record that Outdoor "elected to intentionally omit [Plaintiff] from the Term Sheet."[9] (Response at 45–46).

But Plaintiff's bare assertion that Outdoor's conduct was intentional is insufficient to create a triable issue of fact.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere

---

[9] Defendants presume that Plaintiff means to refer to the March 21 Letter here.

conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."). This is not a situation in which the Court must weigh the credibility of witnesses offering conflicting testimony. Plaintiff has no personal knowledge of Outdoor's intent on this issue and his statements to that end are merely self-serving, conclusory allegations. So they fail to create a triable issue of fact. *See Kern v. Taser Int'l, Inc.*, Civil Action No. 4:07-CV-320-Y, 2008 WL 11429558, at *2 (N.D. Tex. Nov. 5, 2008) (holding that the burden of the non-moving party "is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence").

As previously discussed at length, Plaintiff's "evidence" of KSE's involvement in the March 21 Letter is even more threadbare. Defendants already have demonstrated that Plaintiff lacks any evidence on which a jury reasonably could conclude that KSE played any role in the March 21 Letter. Accordingly, Plaintiff lacks any evidence that either KSE or Outdoor knowingly participated in PNC's purported breach of fiduciary duty and therefore summary judgment must be granted to Defendants on this cause of action.

## F. PLAINTIFF FAILS TO SHOW THAT DEFENDANTS WERE "UNJUSTLY ENRICHED" THROUGH FRAUD, DURESS, OR THE TAKING OF AN UNDUE ADVANTAGE

Defendants are entitled to summary judgment on Plaintiff's purported claim of "unjust enrichment," which numerous Texas courts have held is not an independent cause of action. (*See* Brief at 42–43). Yet even if this claim could stand on its own, Plaintiff himself acknowledges that he would need to prove that Defendants obtained a benefit "by fraud, duress, or the taking of an undue advantage." (Response at 48 (citing *Mary E. Bivins Found. v. Highland Cap. Mgmt, L.P.*, 451 S.W.3d 104, 111–12 (Tex. App.—Dallas 2014, no pet.)). Plaintiff does not and cannot do so.

Plaintiff seeks to avoid summary judgment on this claim merely by repeating again that KSE "induced" Outdoor to breach the Exclusivity provisions of the Term Sheet, and that KSE and Outdoor together caused PNC to violate fiduciary duties it allegedly owed to Plaintiff. Defendants already have demonstrated that these allegations lack any evidentiary basis. Moreover, even if Plaintiff could provide evidence to support those allegations, Plaintiff fails to explain how any of these acts rise to the level of fraud, duress, or the taking of an undue advantage. Plaintiff makes only the conclusory, self-serving assertion that "KSE acquired the Aerial Camera Business by the taking of an undue advantage." Plaintiff does not attempt to explain how KSE took an "undue advantage" or whom KSE took "undue advantage" of. For these reasons, Plaintiff's unjust enrichment claim fails as a matter of law.

## G.    PLAINTIFF LACKS SUFFICIENT EVIDENCE TO SUSTAIN HIS CIVIL CONSPIRACY CLAIM

Defendants are entitled to summary judgment on Plaintiff's civil conspiracy claim because an essential element of a civil conspiracy claim is proof that the defendants engaged in one or more unlawful overt acts. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012). As the foregoing sections of this Reply and Defendants' Brief in support of their Motion demonstrate, Outdoor and KSE did not engage in any unlawful activity. Because Defendants are entitled to summary judgment on Plaintiff's other claims, summary judgment as to Plaintiff's civil conspiracy claim must follow.

Alternatively, Plaintiff's civil conspiracy claim fails because Plaintiff has no evidence of an agreement or "meeting of the minds" among Outdoor, KSE, and PNC. Plaintiff concedes that he has no direct evidence of such an agreement and purports to rely on "circumstantial evidence." (Response at 49–50). But Plaintiff fails to come forward with even circumstantial evidence of an agreement among Defendants and PNC "to deprive Plaintiff of his rights." He has no proof that KSE and PNC ever communicated (they did not), and as discussed above, his

claim that Outdoor and PNC purposely conspired to harm Plaintiff by executing the March 21 Letter is baseless speculation at best. *See supra* Section E. Such "evidence" is insufficient to avoid summary judgment on this claim. *See Hunn v. Dan Wilson Homes, Inc.*, Civil Action No. 5:12-CV-081-C, 2013 WL 12128677, at *11–12 (N.D. Tex. Sept. 23, 2013) ("mere speculation" as to a "meeting of the minds" between alleged conspirators insufficient to avoid summary judgment).

## III.    CONCLUSION

For the foregoing reasons, as well as those stated in Defendants' Motion For Summary Judgment and Brief in support thereof, Defendants respectfully request that the Court grant their Motion For Summary Judgment in its entirety.[10]

---

[10] Defendants also seek judgment on Plaintiff's disgorgement theory of damages on the grounds that disgorgement is not a valid theory of damages under any of Plaintiff's claims, even if meritorious, and because Plaintiff failed to provide adequate notice of this damages theory. (*See* Brief at 45–49). Plaintiff does not respond to these arguments or even mention disgorgement anywhere in his Response. Accordingly, the Court should deem Plaintiff's disgorgement theory as abandoned or waived and grant summary judgment to Defendants on this issue. *See Cano v. State Farm Lloyds*, 276 F. Supp. 3d 620 (N.D. Tex. 2017) (granting summary judgment to defendants as to claims plaintiffs failed to address in their opposition to defendants' motion).

Respectfully submitted,

Date:  December 17, 2018                    By:        *s/Kevin D. Evans*
                                                       Kevin D. Evans
                                                       *Admitted pro hac vice*
                                                       Nicholas W. Dowd
                                                       *Admitted pro hac vice*
                                                       ARMSTRONG TEASDALE LLP
                                                       4643 South Ulster Street, Suite 800
                                                       Denver, CO 80237
                                                       Telephone:  720.200.0676
                                                       Facsimile:  720.200.0679
                                                       Email:  kdevans@armstrongteasdale.com
                                                                   ndowd@armstrongteasdale.com

                                                       and

                                                       Paul C. Watler
                                                       State Bar No. 00784334
                                                       Shannon Zmud Teicher
                                                       State Bar No. 24047169
                                                       JACKSON WALKER L.L.P.
                                                       2323 Ross Avenue, Suite 600
                                                       Dallas, Texas 75201
                                                       Telephone:  214.953.6000
                                                       Facsimile:  214.953.5822
                                                       Email:  pwatler@jw.com
                                                                   steicher@jw.com

                                                       Attorneys for Defendants KROENKE SPORTS
                                                       & ENTERTAINMENT, LLC and
                                                       OUTDOOR CHANNEL HOLDINGS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 17th day of December, 2018, I caused the foregoing **DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND OUTDOOR CHANNEL HOLDINGS, INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** to be electronically submitted with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.


*/s/Kevin D. Evans*
Kevin D. Evans