**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| NIC SALOMON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>KROENKE SPORTS & ENTERTAINMENT,<br>LLC, OUTDOOR CHANNEL HOLDINGS,<br>INC. AND PACIFIC NORTHERN CAPITAL<br>LLC,<br><br>　　　　Defendants. | **Civil Action No. 3:15-CV-00666-M** |

**PLAINTIFF NIC SALOMON'S REPLY IN SUPPORT OF MOTION TO EXCLUDE**
**EXPERT OPINIONS AND TESTIMONY OF DAVID BUCK PURSUANT TO FEDERAL**
**RULE OF EVIDENCE 702 AND REQUEST FOR HEARING**

MAURICE WUTSCHER LLP
Keith Wier, Esq.
State Bar No. 21436100
6136 Frisco Square Blvd., Suite 400
Frisco, Texas 75035
Tel: (469) 375-6792
Email: kwier@mauricewutscher.com

AVENATTI LLP
Michael J. Avenatti (admitted *Pro Hac Vice*)
CA Bar Number 206929
Ahmed Ibrahim (admitted *Pro Hac Vice*)
CA Bar Number:  238739
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel:  (949) 706-7000
Email: mavenatti@eaganavenatti.com
　　　aibrahim@eaganavenatti.com

ATTORNEYS FOR PLAINTIFF
NIC SALOMON

## I.      INTRODUCTION

Defendants appear to concede that expert witnesses should not be permitted to provide legal conclusions.  This should end the analysis.  Attorney David Buck proposes to interpret the Term Sheet for the Court and instruct the jury to find there was no breach.  These are textbook legal opinions and conclusions which courts within this Circuit routinely exclude as improper.

Defendants respond to Plaintiff's motion by claiming that Mr. Buck is not being offered for his legal expertise or to interpret the Term Sheet, but that instead, he merely seeks to provide opinions as an "industry" expert.  This contention is simply at odds with Mr. Buck's own words in his expert report.  The word "industry" does not appear anywhere in the report, nor does Mr. Buck at any point suggest he is offering an interpretation of the Term Sheet based on the specialized or technical usage of a term in the Term Sheet specific to the industry of the parties.  The only industry Mr. Buck specializes in is the legal industry as a corporate transactional lawyer.  He does not claim expertise or knowledge in the aerial camera industry or in media and entertainment.  As Mr. Buck's own CV shows, at most, he has experience doing legal work for the oil and gas industry, as well as for companies in maritime transportation, restaurants, aviation, and death care.

But more importantly, Defendants fail to adequately explain why any of the terms Mr. Buck seeks to interpret for the Court—like "sale," "agreement to sell," or "directly or indirectly"—require the Court to look to "industry" or trade usage to begin with.  Simply stated, none of these words or phrases are industry terms of art or have specialized technical meanings.

In sum, Defendants' legal arguments in their opposition brief and the plain language of Mr. Buck's expert report tell two different stories.  Defendants' attempts to characterize Mr. Buck's opinions through artful paraphrasing in an attempt to salvage their admissibility should be rejected.  Mr. Buck's opinions should be excluded as nothing more than improper legal conclusions and opinions.

## II.   ARGUMENT

### A.   Defendants Ignore the Authority Relied Upon By Plaintiff and Ignore the Language of Mr. Buck's Report Which Clearly Seeks to Interpret the Term Sheet and Advise the Jury to Find There Was No Breach.

Defendants appear to concede that expert witnesses may not offer legal conclusions or opinions.  To the extent they disagree, they do nothing to show that disagreement as they make no attempt to distinguish any of the main case authority discussed in Plaintiff's moving papers or to argue that this authority does not apply to this case.  See, e.g., Askanse v. Fatjo, 130 F.3d 657, 673 (5th Cir. 1997); Estate of Sowell v. United States, 198 F.3d 169, 172 (5th Cir. 1999); Amica Mutual Ins. Comp. v. Moak, 55 F.3d 1093, 1096 n.5 (5th Cir. 1995); Nagle v. Sheriff Marlin Gusman, No. CV 12-1910, 2016 WL 541436, at *5 (E.D. La. Feb. 11, 2016).

Defendants' opposition sidesteps the core problem with David Buck's proposed expert opinions—namely, that he offers legal conclusions and legal opinions on how the Court should interpret the Term Sheet and how the jury should determine whether there was a breach. Defendants fail to confront any of the language actually contained within the four corners of Mr. Buck's expert report and instead offer self-serving *characterizations* of what they wish the report says in order to avoid excluding Mr. Buck from testifying in this case.

To begin with, Defendants offer no explanation for *Mr. Buck's own words* describing that what he set out to do with his expert report was to advise how the Term Sheet should be interpreted and how the jury should rule on the question of whether there was a breach. Specifically, Mr. Buck sought to answer the following three questions:

> a.      Did the Exclusivity Provision prohibit either negotiations, discussions or correspondence by Outdoor relating to the KSE Merger, or the disclosure of the Term Sheet by Outdoor with or to KSE or InterMedia?
>
> b.      Did the Exclusivity Provision prohibit Outdoor's execution of the KSE Merger Agreement, or the exchange of equity of Outdoor for cash pursuant to the KSE Merger?
>
> c.      Does the Non-Binding Provision apply to the sentence in the Term Sheet that provides:  "The parties will use their best efforts to achieve a signing of definitive documents and Closing no later than April 15, 2013"?

[Appendix of Evidence in Support of Motion to Exclude Expert Opinions of David Buck (Dkt 250-1), Ex. A (hereafter, the "Report") at 6.]

Further, to the extent there is doubt as to whether Mr. Buck was simply mistaken in the framing of his expert report and that he instead meant to say he is wearing an "industry expert" hat as Defendants contend, that doubt was laid to rest by Mr. Buck's "Conclusions" confirming he intends to offer legal opinions and conclusions. [Report at 24-26.] Mr. Buck, for example, instructs that "Clauses (i) and (ii) of the Exclusivity Provision clearly do not apply to any of the allegations and claims by Plaintiff with respect to the actions of Outdoor and related actions by KSE in connection with the KSE Merger . . ."; that "Clause (iii) of the Exclusivity Provision did not apply to the KSE Merger"; and that "[t]he Non-Binding Provision should preclude Plaintiff's claims against Outdoor, and related claims against KSE derivative of any such alleged violation by Outdoor, with respect to any other non-binding terms under the Term Sheet outside the Exclusivity Provision." [Report at 24-26.] These are not opinions of an "industry expert" or the meaning of "industry usage" of particular terms. They are *legal opinions, legal conclusions,* and *legal arguments* of a *lawyer* about what the contract means, how it should be interpreted, and why the jury should determine there was no breach. Defendants remarkably do not address Mr. Buck's questions that frame his opinions or his conclusions *anywhere* within their opposition.

Because Defendants elected to simply ignore, rather than explain, the actual content of Mr. Buck's proffered opinions, it is also not surprising that Defendants chose not to address any of the principal case authority in the Fifth Circuit prohibiting experts from offering legal conclusions, which were raised in Plaintiff's moving papers. Indeed, doing so would reveal that Mr. Buck's opinions fall squarely within the types of opinions found to be legally inadmissible.

For example, in Askanse v. Fatjo, the Fifth Circuit upheld the exclusion of an attorney expert who sought to testify about whether the officers and directors in the case had breached their fiduciary duties. 130 F.3d 657, 672-73 (5th Cir. 1997). In reaching this conclusion, the Court explained: "there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of

**Page 3**

the law, who of course is the judge." Id. at 673 (quoting Specht v. Jensen, 853 F.2d 805, 807 (10th Cir. 1988)). The Court continued: "if an expert were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions on what the law is would only confuse the jury." Id. The Court thus identified the precise danger of permitting Mr. Buck, a legal advocate from the witness stand for the defense adorned with the deceptive cloak of a disinterested (and credentialed) scientific or technical expert. See Sparton Corp. v. United States, 77 Fed. Cl. 1 (2007) ("Expert testimony is an improper mechanism for offering legal arguments to the [c]ourt . . . [because it] would be unfair to [one party] for the [c]ourt to award [the opposing party]'s legal arguments the elevated stamp of expert."). Defendants do not discuss Askanse in their opposition.

Defendants similarly avoid any discussion of the Fifth Circuit's decision in Estate of Sowell v. United States, 198 F.3d 169 (5th Cir. 1999). The Court there held a law school dean was properly precluded from opining on whether an estate was "acting reasonably" in failing to pay estate taxes in a timely manner and thus whether an estate executor's actions constituted "reasonable cause"—even though he offered testimony based on purported "hypothetical" facts. Id. at 172. The Court held "the district court did not abuse its discretion in excluding Dean Galvin's testimony as an inadmissible legal opinion on the issue of 'reasonable cause.'" Id. This was a question reserved to the finder of fact. Similarly (although Defendants have been more blatant about it than the defendant in Sowell), Defendants also propose an attorney expert who seeks to analyze the facts of the case and provide a legal opinion on how those facts should be interpreted—namely, how what the Term Sheet means, what the parties intended, and that Outdoor did not breach the Term Sheet. These are inadmissible legal conclusions.

Defendants also remarkably offer no response to Plaintiff's contention that David Buck's opinions seek to usurp the role of both the judge and the jury in this case. As noted in Plaintiff's motion, "[a]n expert who usurps either the role of the judge by instructing the jury on the applicable law or the role of the jury by applying the law to the facts at issue 'by definition does not aid the jury in making a decision.'" Nagle v. Sheriff Marlin Gusman, No. CV 12-1910, 2016

Page 4

WL 541436, at *5 (E.D. La. Feb. 11, 2016) (quoting <u>Nimely v. City of New York</u>, 414 F.3d 381, 397 (2d Cir. 2005)).  Rather, such an expert "undertakes to tell the jury what result to reach and thus attempts to substitute the expert's judgment for the jury's [judgment]." <u>Id.</u> (internal quotations omitted).  Here, Mr. Buck clearly offers opinions that go well beyond advising about any purported industry practice or custom.  He openly instructs what conclusion should be reached in the case, namely, that there was no violation of the Term Sheet that occurred under the facts of the case.  [<u>See</u>, <u>e.g.</u>, Report at 19-20, 24-26.]   And further, he instructs the Court throughout his Report how the Term Sheet and various terms such as "sale," and "directly or indirectly," should be interpreted under the facts of the case.  [<u>See</u>, <u>e.g.</u>, Report at 19-23.]  The Court must not allow Mr. Buck to usurp its role and the role of the jury from the witness stand.

> **B.     The Contention that Mr. Buck is an "Industry" Expert Whose Opinions Are Relevant to "Industry" Custom and Practice Should Be Rejected.**

Defendants argue David Buck has merely been offered as an "industry" expert.  His supposed relevance to the case is described in various vague and amorphous terms in the opposition as a person who will opine on "industry usage," "helpful context regarding industry custom and practice," explanation of unspecified "ambiguous" contract terms based on "industry experience and expertise," analysis of "trade and industry-specific terms," and testimony related to "industry customs, norms, and usage."  [Dkt 258 at 1-2, 4, 6.]  Defendants' frequent use of the word "industry" in an attempt to legitimize Mr. Buck's proposed opinions as anything more than legal conclusions, however, is not enough to save his opinions from being stricken.

Defendants' after-the-fact *characterizations* of David Buck as a witness who merely opines on "industry" related topics simply do not square with Mr. Buck's own actual description of his opinions as reflected in the text of his expert report.  Indeed, the word "industry" does not even appear once in Mr. Buck's expert report.  Nor can any discussion of industry "custom," "usage," or trade or practice be found in the Report.  It simply does not exist.  This explains why Defendants avoid quoting from any portion of Mr. Buck's report in their opposition.  Simply put, if Defendants wanted Mr. Buck to opine on one of these topics, then they should have instructed

him to do so in his report instead of doing it for him in their opposition brief.

But even were the Court to entertain the flawed assumption that Mr. Buck has somehow offered opinions on industry practice, custom, or usage (he has not), it is unclear how he has done so, and how he would be qualified to do so, in this case.  The only industry Mr. Buck is qualified to provide any opinions about is the legal industry given he is a corporate transactional attorney. But the legal industry or how lawyers operate is not on trial in this case.  This is not, for example, a legal malpractice case about a failed merger or acquisition transaction.

Nor is Mr. Buck alleged to be a subject-matter expert on the particular industries at issue here—i.e., aerial camera technology or, even more generally, mass media and entertainment. Rather, as described in his curriculum vitae, Mr. Buck claims to have "particular industry experience with domestic and international energy (including oil and gas exploration & production (E&P), midstream, offshore drilling, seismic and other energy services, and oilfield equipment manufacturing and supply businesses), retail electric and natural gas, power transmission and distribution, maritime transportation, restaurant, aviation and death care companies."  [Report at Ex. B (Dkt 250-1 at App.32).]

But even if the Court assumed Defendants overcame all of these hurdles to admissibility and strained to find a basis to conclude that Mr. Buck has been put forward as an industry expert, the following question remains unanswered:  an industry expert on what?  Although unclear, Defendants appear to argue that Mr. Buck is an industry expert on the meaning of the words "sale," "agreement to sell," and "directly or indirectly" as those terms are used in the Term Sheet. Setting aside the fact that this is clearly not, as shown above and in his actual report, what Mr. Buck is proposing to provide opinions about in this case, Defendants fail to explain why the Court requires any expert opinion about the meaning of these terms.  Defendants do not contend that these terms are ambiguous.[1]  Moreover, neither do Defendants or Mr. Buck even argue that

---

[1] Indeed, Defendants fail to explain why these terms are ambiguous to begin with.  "[T]he interpretation of an unambiguous contract is a question of law for the court to decide."  Gonzalez v. Denning, 394 F.3d 388, 392 (5th Cir. 2004).

any of these terms have specialized or technical meanings unique to the industry or industries in which Plaintiff and Defendants operated.  "Unless there is a need to employ specific, technical, or other specialized knowledge to clarify terms of art, science, trade, or other industry-specific language, expert opinion testimony offered to interpret contract language is inadmissible." Cunningham v. Bienfang, No. CIV.A.3:00-CV-0448-L, 2002 WL 31553976, at *2–3 (N.D. Tex. Nov. 15, 2002).  And even if they did persuade the Court that the terms at issues *did* have special or technical meanings based on industry or trade custom or usage, nothing in Mr. Buck's background as a lawyer qualifies him to offer any such opinion.  See Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade, No. 3:06CV714-DPJ-LRA, 2011 WL 765555, at *5 (S.D. Miss. Feb. 25, 2011) (because the plaintiffs failed to demonstrate their expert was "qualified to opine about industry custom and practices as they relate to obligations under a force-majeure clause[,]" court found the testimony "limited" and that expert "may not offer opinions regarding Dynegy's contractual duties or the Ergon Plaintiffs' specific expectations in drafting the document.")..

### C.    Defendants' Cited Authority Is Inapplicable.

While Defendants ignore the principal authority Plaintiff cited for the Court, they themselves rely on inapposite authority.

To begin with, Toren v. Braniff, Inc., 893, F.2d 763 (5th Cir. 1990), cited by Defendants, is distinguishable.  The expert witnesses relied upon were experts in the *airline industry* who could therefore properly opine on industry custom and practice.  Further, the disputed question was one where industry custom was helpful to the trier of fact—namely, whether a lease contract barred the defendant airline from lending out "rotables" (which has a very specific meaning relative to the aviation industry).  Id. at 765-66.  Here, in contrast, Defendants do not offer Mr. Buck as an industry expert, but instead as a practicing lawyer who has drafted contracts and been involved in corporate transactional negotiations.  Further, they make no case for why "directly or indirectly" and "sale" have a specialized technical meaning requiring an industry expert.

Defendants also cite Willowood Condominium Assoc. v. HNC Realty Co., 531 F.2d 1249 (5th Cir. 1976), to support the proposition that the "Fifth Circuit upholds the use of expert

testimony . . . to determine or explain ambiguous contracts or contract terms." [Dkt 258 at 1 (internal quotation omitted).] <u>Willowood</u>, however, did not deal with any issue concerning the admissibility of expert opinions.

Defendants' reliance on <u>Ergon-West Virginia, Inc. v. Dynergy Mktg. & Trade</u>, 706 F.3d 419 (5th Cir. 2013), is also misplaced.  The Court there made no ruling on the propriety of a party offering an attorney expert to opine on the meaning of particular terms of a contract or to provide context.  Rather, according to the Court, there was nothing improper about admitting expert opinion on *true industry custom and practice* which, in that case, took the form of witness testimony on the "'universal practice' *in the gas industry*" on when a downstream gas supplier declares force majeure.  <u>Id.</u> at 423 (emphasis added).  The Court found the district court "properly looked to extrinsic evidence of standards used by the gas industry to determine what was 'reasonable dispatch,'" under the contract at issue in the case.  <u>Id.</u> at 425.  This case is different.  Mr. Buck is not being offered as an expert in the aerial camera industry, or even in the media or entertainment industry.  Nor is there any issue in the case that would even require such industry expertise.  Instead, he is being offered as an expert as a lawyer on how the Court should construe the contract and whether the particular facts of the case constitute a breach of the contract.  There is no need for a "legal industry" expert in this case.

Finally, Defendants' reliance on <u>ProtoComm Corp. v. Novell Advanced Services, Inc.</u>, 171 F.Supp.2d 473 (E.D. Pa. 2001), is also misplaced.  None of the three expert witnesses at issue in the case proffered opinions remotely similar to those proposed here by David Buck.  Specifically, nothing in the district court's opinion demonstrates that any of the three witnesses offered interpretations of any contract, opinions on whether any contract had been breached, or opinions on what law should be applied by the court.  Their opinions were offered in the context of fraudulent conveyances and wrongful liquidation issues.  <u>Id.</u> at 477 n.2, 479, 481.  There was no challenge to any of their opinions on the basis that they constituted legal conclusions.  Nor did any of the three experts claim they were providing expertise on "industry" custom or practice, or trade usage, as Defendants argue here with Mr. Buck.  Moreover, the only lawyer expert in the

**Page 8**

group was also an "investment banker" with extensive experience appraising and valuing companies, and indeed, his opinions were limited to matters construing the impact of the defendant's actions on the value of assets and liabilities in the context of the fraudulent conveyance claim at issue in the case.  See id. at 482 (summarizing Mr. Nagy's opinions).  This case, as repeatedly shown in this reply and in Plaintiff's motion, involves completely different opinions and a completely different basis for challenging those opinions.[2]

> **D.      Mr. Buck Should Not Be Permitted to Speculate About the Parties' Intent With Regards to the Term Sheet.**

Mr. Buck repeatedly speculates about what the parties intended in connection with the Term Sheet.  This includes speculation about what the parties supposedly did and did not intend as reflected by the language of the Term Sheet [Report at 16, 18-19, 24], what the parties could or should have done by way of adding language or other agreements if they intended a particular outcome [Report at 16-17, 21-23], and what the parties must have meant when using certain phrases such as "sell" and "directly or indirectly."  [Report at 20-23.]  The problem with these opinions is that an expert's evaluation of a defendant's mental state is not helpful to the finder of fact.  See Marlin v. Moody Nat'l Bank, N.A., 248 F. App'x 534, 541 (5th Cir. 2007).  "An expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind."  Id.  In Cunningham, for example, the court found "[e]xpert testimony to show the parties' intent in drafting the Settlement Agreement is . . . inadmissible." 2002 WL 31553976, at *2–3.  In CEATS, Inc. v. TicketNetwork, Inc., the court found that an expert witness "has no helpful knowledge of the meaning of contract terms . . . *or*

---

[2] Defendants also cite Fluorine On Call, Ltd. v. Fluorogas Ltd., No. A-01-CA-186-JN, 2002 WL 34443530 (W.D. Tex. Sept. 27, 2002), where a lawyer was permitted to testify as an expert on the meaning of the terms of an "MOU." This order, however, should not be followed.  The rationale for the court's determination is unclear.  The court did not cite any authority to justify its decision.  The defendants appeared to rely on Toren and Willowood which, as shown above, are not authority for what Defendants propose to do here with Mr. Buck's testimony.  The essential background facts concerning the parties' dispute over the "MOU" were not recited in the order.  The case can only be described as an outlier and, as between a magistrate judge's decision from the Western District and Fifth Circuit authority, this Court is bound by the latter.

**Plaintiff Nic Salomon's Reply in Support of**
**Motion to Exclude Testimony of David Buck**

*what the parties intended thereby.*"   No. 215CV01470JRGRSP, 2018 WL 457791, at *3 (E.D. Tex. Jan. 17, 2018) (emphasis added).

Defendants' response to these arguments is that he merely wishes to offer his views on industry custom and practice.  As shown above, however, the reality of Mr. Buck's opinions as reflected by the text of his report tells a very different story.  While on the one hand there is no reference to industry custom, practice, or usage in his report, on the other hand, the word "intent" or variations thereof is mentioned at least 15 times.  Presenting Mr. Buck to the jury to speak about the parties' intent in relation to the Term Sheet is simply improper and must be prevented.

**E.      Mr. Buck's Opinions Do Not "Fit" the Facts and Legal Theory of this Case and Any Arguments to the Contrary, if Relevant, May Be Asserted by Defendants' Attorneys.**

As noted in his motion, Mr. Buck's opinions do not "fit" with the facts and legal theory of the case because his discussion about the proposed InterMedia merger and whether public trading of the stock violated the Term Sheet have no relevance to this case.  Defendants contend these topics are relevant because they supposedly demonstrate the unreasonable outcome associated with Plaintiff's interpretation of the Term Sheet.  However, even accepting this premise for the sake of argument, Defendants have no need for an expert to make these points.  They are legal arguments that can be made by Defendants' lawyers.  The law is clear that an expert may not offer opinions that simply reiterate what "the lawyer can offer in argument."  Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1986); In re Air Crash at New Orleans, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.")

**III.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion to exclude the testimony and opinions of David Buck. In the alternative, Plaintiff respectfully requests that the Court exclude portions of Mr. Buck's testimony and opinions which the Court deems inadmissible.

Respectfully submitted,


Dated:  December 21, 2018                    /s/ Keith Wier
                                             Keith Wier, Esq.
                                             State Bar No. 21436100
                                             MAURICE WUTSCHER LLP
                                             6136 Frisco Square Blvd., Suite 400
                                             Frisco, Texas 75035
                                             Tel: (469) 375-6792
                                             Email: kwier@mauricewutscher.com

                                             /s/ Ahmed Ibrahim
                                             Michael J. Avenatti (admitted *Pro Hac Vice)*
                                             CA Bar Number 206929
                                             Ahmed Ibrahim (admitted *Pro Hac Vice*)
                                             CA Bar Number:  238739
                                             AVENATTI LLP
                                             520 Newport Center Drive, Suite 1400
                                             Newport Beach, CA 92660
                                             Tel:  (949) 706-7000
                                             Email: mavenatti@eaganavenatti.com
                                                     aibrahim@eaganavenatti.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this filed pleading is being served upon all counsel of record through the Court's ECF delivery system, as provided by the Local Rules at or shortly after the time and date of filing.

DATED:  December 21, 2018

/s/ Ahmed Ibrahim
Michael J. Avenatti (admitted *Pro Hac Vice)*
CA Bar Number 206929
Ahmed Ibrahim (admitted *Pro Hac Vice*)
CA Bar Number:  238739
AVENATTI LLP
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel:  (949) 706-7000
Email: mavenatti@eaganavenatti.com
          aibrahim@eaganavenatti.com