**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| NIC SALOMON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **3:15-CV-666-M** |
| KROENKE SPORTS & ENTERTAINMENT, | § | |
| LLC, OUTDOOR CHANNEL HOLDINGS, | § | |
| INC., and PACIFIC NORTHERN CAPITAL LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS KROENKE SPORTS & ENTERTAINMENT,
LLC AND OUTDOOR CHANNEL HOLDINGS, INC'S REPLY IN
SUPPORT OF THEIR MOTION PURSUANT TO FED. R. EVID. 702 TO
EXCLUDE TESTIMONY OF KEVIN KREITZMAN AND REQUEST FOR HEARING**

TO THE HONORABLE BARBARA M. G. LYNN, UNITED STATES DISTRICT COURT
CHIEF JUDGE

By:

Paul C. Watler                         Kevin D. Evans
State Bar No. 00784334                 *Admitted pro hac vice*
Shannon Zmud Teicher                   Nicholas W. Dowd
State Bar No. 24047169                 *Admitted pro hac vice*
JACKSON WALKER L.L.P.                  ARMSTRONG TEASDALE LLP
2323 Ross Avenue, Suite 600            4643 South Ulster Street, Suite 800
Dallas, Texas 75201                    Denver, CO 80237
Telephone:  214.953.6000               Telephone:  720.200.0676
Facsimile:  214.953.5822               Facsimile:  720.200.0679
Email: pwatler@jw.com                  Email: kdevans@armstrongteasdale.com
    steicher@jw.com                        ndowd@armstrongteasdale.com

Attorneys for Defendants KROENKE SPORTS & ENTERTAINMENT, LLC and
OUTDOOR CHANNEL HOLDINGS, INC.

December 21, 2018

# I. INTRODUCTION

Mr. Kreitzman's report "calculates" four categories of damages—lost compensation, benefit of the bargain, disgorgement of profits, and legal expenses—which cumulatively total up to $60.90 million.  (*See* ECF No. 248, App. 009–12, Ex. 1-A, Expert Report of Kevin Kreitzman ("Kreitzman Report"), at 3–6 ¶¶ 5–13).   In response to Defendants' Motion to exclude Mr. Kreitzman's opinions (*see* ECF No. 247, "Motion"), Plaintiff utterly fails even to attempt to address Defendants' argument as to the exclusion of Mr. Kreitzman's largest damages category, disgorgement of profits, in which Mr. Kreitzman asserted Plaintiff could recover up to $58.14 million.   Similarly, Plaintiff does not address Defendants' argument that Mr. Kreitzman's opinions as to lost compensation and legal expenses, consisting of a simple recital of figures provided by Plaintiff, are not helpful to the jury.   And while Plaintiff maintains that Mr. Kreitzman's opinions on these categories of damages are needed to calculate prejudgment interest, this is a task a layperson with a calculator can easily accomplish.

Thus, the only issue truly remaining has to do with Mr. Kreitzman's alleged benefit of the bargain opinions.  Mr. Kreitzman calculates the value of these damages to be no more than $1.2 million (roughly two percent of the damages he calculates in his opinion), and perhaps as low as $475,501 (less than 0.7 percent of the total damages).  It is truly remarkable, after all the effort and resources Defendants were forced to expend in defense of this case, how little now is at stake.  And again, as explained in Defendants' motion for summary judgment and supporting reply, Plaintiff's claims are predicated on a baseless theory rejected by both Fifth Circuit and Texas precedent.

Plaintiff fails to carry his burden of showing that Mr. Kreitzman's opinions are reliable or admissible.  Mr. Kreitzman's opinions therefore should be excluded in their entirety.

## II. ARGUMENT

### A.   DEFENDANT DOES NOT DISPUTE THE MOTION TO EXCLUDE MR. KREITZMAN'S OPINIONS ON DISGORGEMENT OF PROFITS

By far, the largest component of Mr. Kreitzman's damages calculations is his opinion on disgorgement of profits, in which he opines that Plaintiff is entitled to disgorgement damages in the amount of $58.14 million.  (*See* ECF No. 248, App. 045, Ex. 1-A, Kreitzman Report at 39 ¶ 81).  But as shown in the Motion, disgorgement of profits is unavailable as a remedy under Plaintiff's theories of liability, and in any event, Mr. Kreitzman ignores important evidence undermining his calculations of the profits to be disgorged.  *See* Motion at 19–24.

In his Opposition to the Motion (ECF No. 260-1) ("Opposition"), Plaintiff makes no effort to and does not defend Mr. Kreitzman's disgorgement opinion at all.  In fact, the word "disgorgement" or any variation thereof does not appear anywhere in the Opposition.  By failing to respond to Defendants' argument on this point, Plaintiff has abandoned the issue and Mr. Kreitzman's opinion regarding disgorgement should be excluded.  *See Kellam v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014).

### B.   THE LOST COMPENSATION OPINIONS ARE UNHELPFUL AND BASELESS

#### 1.   Plaintiff Concedes Defendants' Arguments That Mr. Kreitzman's Lost Compensation Opinions Are Unhelpful

Mr. Kreitzman's opinion on lost compensation consists of a mere recitation of Plaintiff's own calculations, with no independent analysis of his own.  *See* Motion at 4.  As Defendants noted in their Motion, such opinions add nothing of use to the trier of fact and should be excluded as unhelpful.  *Id.*; *see also U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, No. 3:06-CV-1792-O, 2010 WL 8367619, at *4 (N.D. Tex. Oct. 8, 2010) ("An expert must do more

than merely repeat a damages estimate provided by the party on whose behalf he is to testify, especially where he did not attempt to verify the information presented to him.").[1]

### 2. There Is No Basis For Mr. Kreitzman's Lost Compensation Opinions

Though Plaintiff concedes the Motion as to Mr. Kreitzman's lost compensation opinions due to his failure to respond to Defendants' argument that the opinions are unhelpful, the problem is not just that an expert is unnecessary to present the calculations. The calculations themselves are deeply flawed, being premised on rank speculation and baseless assumptions.

Most fundamentally, Mr. Kreitzman simply assumes the transaction would have closed but for the alleged breach and interference. This is a fundamentally different assumption than an assumption of liability (i.e., an assumption of breach or interference). This is a purported factual assumption on which Mr. Kreitzman's entire opinion is based. However, as noted in the Motion, Mr. Holowaty testified that at the end of the day, PNC was not going to fund the entire purchase price of the Aerial Camera Business, and that PNC and Plaintiff had found no other potential investors to help fund the purchase. (*See* ECF No. 248, App. 143–46, Ex. 1-D, Deposition of Jeff Dean Holowaty, dated July 17, 2017 at 51:2–52:23; 74:14–20; 111:8–17). Plaintiff himself acknowledged as much. (*See id.*, App. 149, Ex. 1-E, Deposition of Nicolas Salomon, dated May 16, 2018, at 270:5–21). Notably, while Plaintiff levies various supposed assertions of fact regarding what Outdoor/KSE understood to be PNC's ability to close the deal (*see* Opposition at 8–9), he provides none which address the consequences of Mr. Holowaty's testimony. In light of Mr. Holowaty's deposition testimony, the assumption by Mr. Kreitzman that the transaction

---

[1] Plaintiff claims that Mr. Kreitzman evaluated the claims of lost wages by comparing Plaintiff's interrogatory responses to Plaintiff's historic earnings. *See* Opposition at 14. Not so: Mr. Kreitzman claimed only to have "reviewed [Plaintiff's] calculations" and declared that "they appear to be accurate based on the assumptions made therein." (*See* ECF No. 248, App. 023, Ex. 1-A, Kreitzman Report at 17 ¶ 47).

would have occurred is speculative at best.  Accordingly, it was incumbent on Mr. Kreitzman to explain why he believed he simply could ignore this dispositive fact in forming his opinion (we now know he ignored this critical fact because Plaintiff concealed it from him).

Plaintiff retorts that these points go to the merits and the weight of Mr. Kreitzman's opinions, rather than their admissibility.  *See* Opposition at 12–13.  But the lack of a sufficient factual basis in fact goes to admissibility, not just weight.  "Federal Rule of Evidence 702(b) explicitly requires expert testimony to be based on sufficient facts or data."  *De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd*, No. 3:12-CV-01462-L, 2015 WL 12698060, at *2 (N.D. Tex. Jan. 21, 2015); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("the existence of sufficient facts . . . is in all instances mandatory").  "The *Daubert* reliability analysis applies to, among other things, the facts underlying the expert's opinion," and "***an opinion based on insufficient, erroneous information fails the reliability standard***."  *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (emphasis added; citations and quotation marks omitted).  In such cases, an expert's opinion "is of such little weight that the jury should not be permitted to receive that opinion."  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).  "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403."  *Id.*

Plaintiff also attempts to defend Mr. Kreitzman's assumptions by contending that an expert may base an opinion on facts or data of which he has been made aware, even if those facts or data are not themselves admissible.  *See* Opposition at 13.  But that is exactly the problem: Mr. Kreitzman was ***not*** made aware of these all important facts and data.  Plaintiff attaches and cites a series of documents he claims suggest it was reasonable to assume PNC and Plaintiff

would have purchased the Aerial Camera Business and that he would have continued to receive similar compensation but for the alleged breach. *See* Opposition at 15. Yet a review of the control numbers on these documents reveals that Mr. Kreitzman did not review any of them in preparing his report. (*See* ECF No. 248, App. 053, Ex. 1-A, Kreitzman Report at 47–54). Nor did he read the depositions of Mr. Holowaty or Plaintiff (or any deposition other than that of Defendants' employee Scott Long). (*See* ECF No. 248, App. 064–65, 088–89, 100, Ex. 1-B, Deposition of Kevin Kreitzman, dated October 25, 2018 ("Kreitzman Dep.") at 65:1–5, 71:10–12; 168:24–169:10; 239:9–24). If he had, he would have known that, as Mr. Holowaty testified, PNC did not plan to fund the entire purchase price of the Aerial Camera Business, or that as Mr. Holowaty and Plaintiff testified, no other investors had stepped forward to make up the difference. *See* Motion at 5–6. Instead, Plaintiff deliberately failed to inform Mr. Kreitzman about these critical facts.

Mr. Kreitzman's "opinion simply lacks the foundation and reliability necessary to support expert testimony." *Viterbo*, 826 F.2d at 424.

## C.   NO EXPERT TESTIMONY IS NECESSARY OR EVEN HELPFUL TO DISCUSS LEGAL EXPENSES OR TO CALCULATE INTEREST

As Defendants noted in their Motion, Mr. Kreitzman's opinion on legal expenses, like his opinion on lost compensation, simply recited information Plaintiff gave him—thus, his opinion used no "scientific, technical, or other specialized knowledge" and is unhelpful to the trier of fact. (*See* Motion at 24–25 (quoting FED. R. EVID. 702(a)). But even as to the calculation of interest, whether for lost compensation or legal fees, no "specialized knowledge" is necessary. Calculating interest is a matter of simple mathematics; even a layperson, armed with a cheap calculator, can perform this task without an expert's assistance. *See Crawford v. Franklin Credit Mgmt. Corp.*, No. 08-CV-6293 (KMW), 2015 WL 13703301, at *6 (S.D.N.Y. Jan. 22, 2015)

(precluding expert testimony on damages where "[t]he jury here is fully capable of performing the same simple mathematical calculation that [the expert] performs in his report").

**D.      MR. KREITZMAN'S BENEFIT OF THE BARGAIN CALCULATIONS ARE SPECULATIVE**

As noted in the Motion, Mr. Kreitzman attempted to calculate "benefit of the bargain" damages by measuring "the value Plaintiff would have received—meaning the value of the Aerial Camera Business—had the purchase been completed and had he then become a part owner of the business with PNC."  Motion at 9–10 (quoting ECF No. 248, App. 024, Ex. 1-A, Kreitzman Report at 18 ¶ 49).  But " 'a hypothetical, speculative bargain that was never struck and would not have been consummated' cannot serve as a baseline for benefit-of-the-bargain damages."  *Hoffman v. L & M Arts*, 838 F.3d 568, 584 (5th Cir. 2016) (quoting *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998)).  Mr. Kreitzman's disregard of the obstacles that would have prevented Plaintiff and PNC from acquiring the Aerial Camera Business, including the lack of investors and the failure to form the acquisition entity, erode away any reliable basis for his benefit of the bargain damages calculations.  Furthermore, Plaintiff fails to address the deficiencies in Mr. Kreitzman's various attempts to measure the value of the company.

**1.      Plaintiff's May 2013 Projections (Scenario 1)**

Plaintiff claims the memorandum underlying Mr. Kreitzman's first attempt to calculate the value of the business "lays out a business plan and approach that Mr. Salomon would have pursued if he and PNC ended up owning the Aerial Camera Business," purportedly making the projections "more relevant than any other one because they demonstrate the business plan that would have been put in place had Plaintiff and PNC bought the company."  Opposition at 20.  But in relying on this memorandum, Mr. Kreitzman ignored at least two critical points.

Defendants KROENKE SPORTS & ENTERTAINMENT, LLC And OUTDOOR CHANNEL
HOLDINGS, INC.'s Reply In Support Of Their Motion Pursuant To FED. R. EVID. 702
To Exclude Testimony Of Kevin Kreitzman And Request For Hearing          6

First, these projections were prepared—by Plaintiff himself—after KSE had already acquired Outdoor.  (*See* ECF No. 248, App. 022, Ex. 1-A, Kreitzman Report at 16 ¶ 46; App. 076–77, 090, Ex. 1-B, Kreitzman Dep. at 97:17–98:10, 188:15–20).  The projections were thus made under the assumption that the business would have all the advantages of its affiliation with the KSE sports and sports-related companies, such as investment capital and significant relationships.  Plaintiff baldly asserts that the projections follow the business plan he would have pursued had he and PNC acquired the Aerial Camera Business (*see* Opposition at 20), but he offers no support for this declaration other than his self-serving say-so.  There is no reason to think the standalone entity, lacking affiliation with KSE, could have kept pace with the projections designed with these advantages in mind, if it could have functioned at all.

Second, and more fundamentally, the projections themselves, following the plan Plaintiff claims he would have followed, never translated into reality.  To any reasonable and honest observer, the fact that actual revenues fell well short of the projections would naturally call the reliability of the projections into question.  Not to Mr. Kreitzman, who gave reality no consideration at all.  (*See* ECF No. 248, App. 081, Ex. 1-B, Kreitzman Dep. at 115:11–21) (financial results of Aerial Camera Business between 2013 and time of Mr. Kreitzman's report were "not relevant to the valuation," and so not relevant to the ultimate benefit of the bargain damage analysis).

Plaintiff attempts to defend Mr. Kreitzman's use of the projections and disregard of historical performance by claiming that Texas courts "routinely uphold the use of projections as a means of proving damages."  Opposition at 20.  Notably, not one of the cases he cites in support of this claim involved a *Daubert* motion.  And in these cases, actual historical

performance in fact played a fundamental role in the experts' analyses (a point Plaintiff neglects to mention).

For example, in *VingCard A.S. v. Merrimac Hosp. Sys., Inc.*, 59 S.W.3d 847, 863 (Tex. App. 2001), the expert found support for his estimate of the number of units that would be purchased in a year by looking to the number of units that were actually purchased.  Likewise, in *Baker v. Habeeb*, No. 05-16-01209-CV, 2018 WL 1835566, at *6 (Tex. App. Apr. 18, 2018), the expert "used the historical sales, sales histories of other like programming, and other information he had access to through his experience in the business to formulate the valuation."  And in *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 708 (Tex. App. 2015), "[a]s a 'reality check' to test the validity of his 2005 forecast, [the expert] compared his 2005 but-for sales projection to the actual sales achieved."  By contrast, in *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 281 (Tex. 2015), the court criticized an expert's projections as "completely conjectural" and "demonstrably unrealistic" where they had not translated into reality:  a 2007 report "indicated that total reserves were only a fraction of what he had projected in 2004," while "the costs of completing the [project] greatly exceeded [the expert's] expectations."

Plaintiff nevertheless contends that Mr. Kreitzman need not have looked to the actual performance of the Aerial Camera Business because benefit of the bargain damages are measured "at the time of breach, not the time of trial."  Opposition at 21 (citing *O.C.T.G., L.L.P. v. Laguna Tubular Prod. Corp.*, 557 S.W.3d 175, 191 (Tex. App. 2018)).  But "[t]he objective in awarding damages for a breach of contract is to provide just compensation for the loss ***actually sustained*** by the complaining party."  *O.C.T.G.*, 557 S.W.3d at 191 (emphasis added).  The ***actual performance*** of the company seriously weakens (nay guts) the foundation for Mr. Kreitzman's opinion and the case for its admissibility.  *See Viterbo*, 826 F.2d at 423.

### 2. The Lazard Fréres Valuation (Scenario 2)

Mr. Kreitzman's second scenario attempts to calculate the value of the Aerial Camera Business based on a valuation by Lazard Fréres, an investment bank financial advisor to Outdoor. (*See* ECF No. 248, App. 039, Ex. 1-A, Kreitzman Report at 33 ¶ 72). Whatever else can be said about the Lazard report, the fact remains, as Plaintiff admits, that Mr. Kreitzman has never seen it. *See* Opposition at 23 n.4. Thus, he could not possibly assess the assumptions made in that report or responsibly rely on it to determine the value of the business. *See GWTP Investments, L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383-L, 2007 WL 7630459, at *10 (N.D. Tex. Aug. 3, 2007) ("Although evidence relied upon by an expert need not be admissible if of a type reasonably relied upon by experts in that particular field, it seems apparent that an expert in the area of valuation may not reasonably rely upon unseen and unverified data.").

As was true of the calculations in his first scenario, moreover, the Lazard report could not have taken into account the actual performance of the company in the years for which the revenues on which its valuation was based were forecasted; indeed, as the relevant Proxy statement reflects, the Lazard report was not intended as a calculation of fair market value at all; it was a discounted cash flow valuation. Mr. Kreitzman, by contrast, had this actual performance information at his disposal, yet he chose to ignore it.

### 3. Purchase Price of Company (Scenario 3)

Mr. Kreitzman's third scenario simply assumes that the value of the company was equal to the maximum purchase price proposed by Plaintiff and PNC, $4.05 million. (*See* App. 042–43, Ex. 1-A, Kreitzman Report at 36–37 ¶ 77). But Plaintiff goes too far when he suggests that Defendants do not in fact challenge Mr. Kreitzman's third scenario. *See* Opposition at 23. As detailed in the Motion, the calculations in the third scenario suffer from still other fundamental

defects, which ultimately undermine any effort to translate the value of the company into damages recoverable by Plaintiff.

In the third scenario, as with the others, Mr. Kreitzman takes the assumed value of the Aerial Camera Business and allocates a portion of that value to what he assumes would have been Plaintiff's equity stake in the business. (*See* ECF No. 248, App. 044, Ex. 1-A, Kreitzman Report at 38 ¶ 79). As Mr. Kreitzman knew, however, PNC and Plaintiff never agreed on the equity structure for the purchase of the Aerial Camera Business, let alone what shares and options might have been allocated in the future. (*See id.*, App. 072–73, Ex. 1-B, Kreitzman Dep. at 92:17–93:14). Though Plaintiff had proposed an equity structure to PNC, Mr. Kreitzman admits this structure was not agreed to by PNC and could have been modified or changed, even assuming some agreement would ultimately be reached. (*See id.*, App. 074, Ex. 1-B, Kreitzman Dep. at 94:10–16). Yet Mr. Kreitzman accepts as certain Plaintiff's speculative interest in the company.

Given these failings, Mr. Kreitzman cannot state Plaintiff's benefit of the bargain damages with reasonable certainty under any scenario. For these reasons, his opinions regarding benefit of the bargain damages, along with his opinions on the other categories of damages, must be excluded.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and exclude the testimony of Kevin Kreitzman in its entirety.

Respectfully submitted,

Date:  December 21, 2018          By:     */s/Kevin D. Evans*_____
                                          Kevin D. Evans
                                          *Admitted pro hac vice*
                                          Nicholas W. Dowd
                                          *Admitted pro hac vice*
                                          ARMSTRONG TEASDALE LLP
                                          4643 South Ulster Street, Suite 800
                                          Denver, CO 80237
                                          Telephone:  720.200.0676
                                          Facsimile:  720.200.0679
                                          Email: kdevans@armstrongteasdale.com
                                                  ndowd@armstrongteasdale.com

                                          and

                                          Paul C. Watler
                                          State Bar No. 00784334
                                          Shannon Zmud Teicher
                                          State Bar No. 24047169
                                          JACKSON WALKER L.L.P.
                                          2323 Ross Avenue, Suite 600
                                          Dallas, Texas 75201
                                          Telephone:  214.953.6000
                                          Facsimile:  214.953.5822
                                          Email:  pwatler@jw.com
                                                  steicher@jw.com

                                          Attorneys for Defendants KROENKE SPORTS
                                          & ENTERTAINMENT, LLC and
                                          OUTDOOR CHANNEL HOLDINGS, INC.

## CERTIFICATE OF SERVICE

This is to certify that on this 21st day of December, 2018, I caused the foregoing **DEFENDANTS KROENKE SPORTS & ENTERTAINMENT, LLC AND OUTDOOR CHANNEL HOLDINGS, INC.'S REPLY IN SUPPORT OF THEIR MOTION PURSUANT TO FED. R. EVID. 702 TO EXCLUDE TESTIMONY OF KEVIN KREITZMAN AND REQUEST FOR HEARING** to be electronically submitted with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.

*/s/Kevin D. Evans*
Kevin D. Evans